UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS (HOUSTON)

HICHEM CHIHI, et al,              .   Case No. 4:18-cv-00123
                                 .
               Plaintiffs,       .
                                 .
     v.                          .
                                 .   515 Rusk Street
CATHOLIC HEALTH INITIATIVES,     .   Houston, TX 77002
et al,                           .
                                 .   Wednesday, December 4, 2019
               Defendants.       .   2:34 p.m.
. . . . . . . . . . . . . . . .   .

TRANSCRIPT OF SCHEDULING CONFERENCE
**BEFORE THE HONORABLE CHARLES ESKRIDGE**
**UNITED STATES DISTRICT COURT JUDGE**

APPEARANCES:

For Hichem Chihi:          Loevy & Loevy
                           BY:  RUTH BROWN, ESQ.
                           311 North Aberdeen Street, 3rd Floor
                           Chicago, IL 60607
                           (312) 243-5900


For Baylor College of      Reed Smith LLP
Medicine, Medicare         By:  SARA ANN BRINKMAN, ESQ.
Baylor, Marcia Katz,       811 Main Street, Suite 1700
and Ramachandra Sista:     Houston, TX 77002
                           (713) 469-3647


APPEARANCES CONTINUED.



Audio Operator:            Claudia Gutierrez, ECR


Transcription Company:     Access Transcripts, LLC
                           10110 Youngwood Lane
                           Fishers, IN 46038
                           (855) 873-2223
                           www.accesstranscripts.com



Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

```
TELEPHONIC APPEARANCES (Continued):

For Catholic Health        Polsinelli P.C.
Initiatives and            By:  ASHER DOREN FUNK, ESQ.
CHI-St. Luke's:                  KEVIN M. COFFEY, ESQ.
                           150 North Riverside Plaza, Suite 3000
                           Chicago, IL 60606
                           (312) 819-1900


For Apnix:                 Baker Donelson et al
                           By:  MICHAEL E. CLARK, ESQ.
                           1301 McKinney Street, Suite 3700
                           Houston, TX 77010
                           (713) 286-7169


For Bone and Joint         Seyfath Shaw LLP
Clinic of Houston:         By:  KAY J. HAZELWOOD, ESQ.
                           700 Milam Street, Suite 1400
                           Houston, TX 77002
                           (713) 225-2300


For Surgical               Scott, Clowater & Houston LLP
Associates of Texas        By:  DEBRA ELMORE, ESQ.
and James Livesay:         2727 Allen Parkway, Suite 500
                           Houston, TX 77019
                           (713) 650-6600


For Pulmonary Critical     Scott, Clowater & Houston LLP
Care & Sleep Medicine      By:  JOHN P. SCOTT, ESQ.
Consultants,               2727 Allen Parkway, Suite 500
Alberto Colamar,           Houston, TX 77019
Carl Dahlberg,             (713) 650-6600
Fernando Santacruz,
and Andres Mesa:


For Leachman               Geisler Gertz et al
Cardiology Associates,     By:  RICHARD CHAD GEISLER, JR., ESQ.
Alberto Lopez,             301 Congress Avenue, Suite 1700
Dewitt Leachman, and       Austin, TX 78701
Zvonimir Krajcer:          (512) 472-0288


For Houston Thyroid        Quintairos Prieto et al
& Endocrine Specialists,   By:  RYAN DOUGLAS WOZNY, ESQ.
Lazaro Cherem,             1700 Pacific Avenue, Suite 4545
Brian Douglas,             Dallas, TX 75201
Fareed Elhaj, and          (214) 754-8755
Medhavi Jogi:
```

3

TELEPHONIC APPEARANCES (Continued):

For Greater Houston          Luccia Evans LLP
Gastroenterology,            By:  LAUREN M. VIRENE, ESQ.
Kidney Associates,           8 Greenway Plaza, Suite 1450
Kidney and Hypertension      Houston, TX 77046
Consultants,                 (713) 629-0002
Isaac Rajiman, and
Navneet Singh:

For Texas Endocrinology      Houston Northwest Medical Center
Group, The Center for        VIRGINIA BARRY, ESQ.
ENT, Irving Fishman,         710 Cypress Creek Parkway
Cristina Boccalandro,        Houston, TX 77090
Alan Hoffman, Ron Moses,     (281) 440-2143
and Richard Hung:

4

1      (Proceedings commence at 2:34 p.m.)

2           THE COURT:  Last, we have -- is it Chihi?  <u>Chihi v.</u>

3  <u>Catholic Health Initiatives</u>, 4:18-cv-123.

4           And we have multiple, multiple attorneys and parties

5  here, which is fine.  Is it going to make more sense?  I -- I'm

6  not sure that I need everybody.  You're welcome to all come

7  gather here.  I don't know how -- if that's really going to

8  work.  Do y'all want to array yourselves, come into the wall as

9  much as you can, or sit wherever you need to.  But I'll let

10 people have time to approach if they need to make individual

11 positions.  Why don't y'all organize yourselves however you

12 need to be, but I don't think I need -- unless there's a

13 designated lead for the defendants' side and a designated lead

14 for the relator side, why don't we all just proceed from

15 counsel table.  Does that make sense?

16          MS. BROWN:  Okay.  Are you on your -- are you -- I'm

17 counsel for relator.

18          THE COURT:  Relator.  And are you here on your own?

19 On your own?  Okay.  Why don't you take this side?  And if

20 there -- if y'all want to share half the table with your

21 opponent, that's fine with me.  If you prefer not, that's also

22 fine with me, but I -- just letting as many people down here as

23 possible.

24          Okay.  We ready to go?  Do I need appearances from

25 everyone?  Happy to take it if we think we're all going to be

1  on the record.

2          MS. BROWN:  Ruth Brown for the relator.

3          MS. BRINKMAN:  And Sarah Brinkman on behalf of Baylor

4  College of Medicine, Baylor Medicare, Dr. Sista, and Dr. Katz.

5          MR. FUNK:  Asher Funk on behalf of Catholic Health

6  Initiatives and CHI-St. Luke's.

7          MR. COFFEY:  Kevin Coffey for Catholic Health

8  Initiatives and CHI-St. Luke's.

9          MR. CLARK:  Michael Clark for Apnix.

10          THE COURT:  Okay.  Anyone else need to appear?

11          UNIDENTIFIED:  The rest of us may just join in, but

12  we -- can be introduce ourselves if we need to speak?

13          THE COURT:  Why don't we just go -- we'll go ahead

14  and get the appearance.  And then I'll also ask you to

15  reintroduce yourself -- and throughout this portion, if each of

16  you, when you start, after a pause, re-introduce so that we

17  make sure we know who's on the record.  Okay, please.

18          MS. HAZELWOOD:  Kay Hazelwood for Bone and Joint

19  Clinic of Houston.

20          MS. ELMORE:  Debbie Elmore for Surgical Associates of

21  Texas and Dr. James Livesay.

22          MR. SCOTT:  I'm John Scott, Your Honor, for

23  Defendants Pulmonary Critical Care and Sleep Medicine

24  Consultants, Carl Dahlberg, Alberto Colamar, Jose Santacruz,

25  and Andres Mesa.

1        THE COURT:  Okay.

2        MR. GEISLER:  Good afternoon, Judge.  Chuck Geisler

3  here on behalf of Leachman Cardiology Associates and Drs.

4  Leachman, Lopez and Krajcer.

5        MR. WOZNY:  Ryan Wozny here for Houston Thyroid and

6  Endocrine, Dr. Elhaj, Dr. Jogi, Dr. Cherem, and Dr. Douglas.

7        MS. VIRENE:  Lauren Virene here for Dr. Singh, Kidney

8  and Hypertension Consultants, Kidney Associates, Greater

9  Houston Gastroenterology, and Dr. Rajiman.

10        MS. BARRY:  Virginia Barry here for Center for

11  Entity, Texas Endocrinology Group, Dr. Fishman, Hoffman, Moses,

12  Hung, and Boccalandro.

13        THE COURT:  Okay.  How many -- I haven't counted it

14  up.  Give or take a couple, how many defendants do we have in

15  this action altogether?  Anybody done the math?

16        MS. BROWN:  I believe we have 36 remaining.  They

17  were initially 39, but we reached a resolution with three of

18  those.

19        THE COURT:  All right.

20        MS. BROWN:  Defendants may correct me if I'm wrong.

21        MR. FUNK:  Thirty-five or thirty-six sounds about

22  right.

23        THE COURT:  Thirty-five or thirty-six?  Okay.

24        Okay.  There are a number of different motions that

25  are pending and have been pending in this qui tam action.  I'm

1  going to do what I can to start to understand an order in which

2  to take them up and resolve them.  I'll start with -- and these

3  are -- it's going to be somewhat out of order.  And I will tell

4  you, please, there's so many of you, everyone, please be

5  seated.  And at your option, if you -- when you're speaking,

6  you can stand if you want to.  For purposes of this when

7  there's so many, you don't have to.  Just make sure you're

8  close enough to a mic, I guess, so that our court reporter can

9  hear you.

10         The motion to strike, Paragraphs 114 through 120 from

11  the first amended complaint.  I'm going to take these out of

12  order.  This one is, like, deeply related into other things.

13  But this is Docket Number 172.

14         Just a question for -- I mean, for relator, you all

15  have not seen it because it's sealed and has not been served.

16  Is that right?

17         MS. BROWN:  That's correct.

18         THE COURT:  Okay.  So on the CM/ECF system, you see

19  that it's been filed, but you can't get ahold of the PDF.

20         MS. BROWN:  That's correct.

21         THE COURT:  Okay.

22         For defendants, so you haven't served it on relator,

23  so they can't respond to it.  What's your position on how I'm

24  supposed to proceed?

25         MR. FUNK:  So, Your Honor, we have a couple options.

1 Out of an abundance of caution, because we did ask that the

2 document be sealed, we didn't want to just serve it absent some

3 instruction from the Court.  One of the options we had

4 considered -- and Ms. Brown can indicate if she's okay with

5 that -- would be to modify the proposed order with a motion to

6 seal that would explicitly give us permission to serve it on

7 relator, so they can have a copy.  And then, Your Honor can

8 rule as you see fit on the motion.

9          THE COURT:  I think that the local rules provide --

10 once sealed, once a seal is granted, that it's -- the local

11 rules state because it goes on the CM/ECF and it's not

12 available to opponent, that you then have to serve it.  So I

13 don't know that we need an order for that.

14          MR. FUNK:  Okay.  And I don't believe it has been

15 sealed, Your Honor.  At this point, I think we filed a motion

16 to seal, but I don't believe there had been an actual ruling

17 sealing it, I don't think.

18          THE COURT:  You did file it under seal --

19          MR. FUNK:  Yeah.

20          THE COURT:  -- because Docket 172 is indicated as

21 under seal.  If -- I will say if that motion -- I guess

22 actually I had that question as to whether it had been so

23 ordered, which was Docket 173, the motion for leave to file it

24 under seal.  You think that hasn't been ruled on yet?

25          MR. FUNK:  Our saying, Your Honor, is it has not.

1  Certainly, if the local rules so provide and you grant the

2  motion to seal, we'd have no issue serving the motion on the

3  relator.

4           THE COURT:  Okay.  It has been -- the underlying

5  document has been filed under seal.  I'm going to grant --

6           MS. BROWN:  Your Honor, if I could be heard on that.

7           THE COURT:  Sure.

8           MS. BROWN:  We contest the motion to seal, at least

9  in part.  And we can't respond to the motion to seal in

10  substance until we see the motion to strike.  This is why we've

11  asked for it.  The basis on which we contest the motion to seal

12  is that, you know, the allegations in our complaint that were -

13  - that we proposed to be filed under seal for adjudication on

14  this privilege dispute, you know, we have no objection to those

15  being sealed.  But some of the legal argumentation has already

16  been placed on the record by the CHI defendants, and so we

17  don't see any reason why that -- a redacted version of the

18  motion to strike shouldn't be filed on the public record.

19           THE COURT:  How about this?  I mean, here's -- I

20  think that I'm inclined right now to grant the motion to seal.

21  That doesn't preclude you from -- after you see it, to move to

22  lift the seal.  But we've got --  have to do something so that

23  you can get it into your hands so that you can respond to it on

24  the merits.  It does -- I mean, the assertion about it is that

25  the paragraphs are attorney-client privileged material, which

1  this Court is sensitive to.  I understand that you may not

2  agree that that is, and I'll receive argument on that in the

3  future.  But right now and on the face of it, it's referencing

4  a law firm giving advice.  At least on that basis, it's enough

5  for me to say that I'm going to grant the motion to place it

6  under seal.

7          Is there anything about that filing -- my rules, if

8  you haven't looked at my procedures yet, unlike some of the

9  other judges, I've put -- and I know that it was -- you filed

10 all this months --

11          MS. BROWN:  With Judge Ellison, yeah.

12          THE COURT:  Yeah.  That I have a provision that if

13 something is going under seal that a proposed redacted version

14 be made available to file that's not under seal.  And I know

15 that you've got concerns about those paragraphs themselves.

16 Most everything else about it, I don't think -- there's a lot

17 in it that it's not privileged.  It's just your argument at

18 citing law, citing whatever.  You're going to get it.  I would

19 ask you all to work out -- you're going to have your response

20 ultimately to their motion, but I would ask you all to work

21 cooperatively on what a redacted version would be that we can

22 put on the public record.  Look at my court procedures in that

23 regard.

24          And so let's have a proposal on that within two weeks

25 for a redacted version.  Okay.  And please work cooperatively

1  on that.  Okay.  Don't parse it too fine on how far the

2  privilege goes.  Don't be too hard on, oh, that's not

3  privileged at all.  You're going to have the ability to try to

4  move to lift under seal.  I'm going to try to get something

5  that's on the public record right now while you litigate the

6  bigger thing, but don't try to fight it all the way one way or

7  the other on just the redacted version.  Okay.

8              MS. BROWN:  Yes, sir.

9              THE COURT:  All right.

10             We've got -- where are we -- we have a motion to --

11  well, I say "motion," there's various motions -- to stay

12  discovery.  Relator has a motion for leave to amend the

13  complaint.  And we also have a lot of motions to dismiss.

14  Those are sort of the big tranches that we have.

15             On staying discovery, let's look at staying discovery

16  first.  On -- what have the parties accomplished in terms of

17  any discovery today?  It seems to me none at all, but correct

18  me to the extent I'm wrong.

19             MS. BROWN:  That's correct.

20             THE COURT:  And have there been -- and we still have

21  motions to dismiss.  Do we have initial disclosures that have

22  been done in this case?

23             MS. BROWN:  No, Your Honor.

24             THE COURT:  So -- is that correct?

25             MR. FUNK:  That's correct, Your Honor.

12

1      THE COURT:  All right.  And give me brief argument on

2  the reason to stay discovery.  Five minutes each side, if you'd

3  like that, if you need as much.

4      And we'll start with defendant since it's your

5  motion.  Are you speaking for everyone or --

6      MR. FUNK:  So I believe, Your Honor, the initial

7  motion to stay discovery was brought by my clients, CHI,

8  CHI-St. Luke's, and I believe a number of the other defendants

9  have signed on to agree to those -- that motion to stay

10  discovery.

11      THE COURT:  Okay.

12      MS. BRINKMAN:  And, Your Honor, I can address why the

13  referring physicians or the referring practice groups, as

14  relator has characterized us, why it's especially important for

15  the stay of discovery to be in place for us specifically.

16      THE COURT:  So why don't we start with that then, if

17  you want to.

18      MS. BRINKMAN:  Thanks, Judge.

19      So reading the complaint, Your Honor, relator has

20  broad, ambiguous claims out of Stark law and anti-kickback

21  statute violations that relator then suggests violated the

22  False Claims Act.  The problem with the complaint, Your Honor,

23  is that there is no allegation that any of the referring

24  physicians or the practice group had any knowledge about any

25  sort of scheme to defraud.  And, Your Honor, I'd like the Court

1  to take notice of a case that just recently came out from the

2  Western District on a False Claims Act case.  It's United

3  States ex rel Integra Med Analytics v. Baylor, Scott & White.

4  And the court acknowledged and was very detailed about why it's

5  so important for the specific complaint to allege facts

6  establishing the knowledge of the defendants of this scheme.

7          And what would happen here, Judge, if we're exposed

8  to full discovery in this case at this point, first, we don't

9  know which claims are going to exist after the motion to

10  dismiss are ruled on.  We don't know which defendants are going

11  to be in or out.  There are a lot of allegations that lump all

12  of the defendant referring physicians is together.  There's no

13  particularity described about our specific conduct that would

14  relate to each of the defendants.  You can't lump all of the

15  defendants into one group under the False Claims Act, under a

16  fraud case.

17          And so we're looking for -- we don't have notice.

18  That's our problem.  We don't know what the relator is

19  complaining that we did in this case.  And she -- and the

20  allegations don't include any specifics about knowledge that we

21  would have had to have engaged in this conspiracy to defraud

22  the government.  So that's our concern about opening this into

23  discovery at this point is that we think it would really unduly

24  burden and cause huge expense for all of our clients, private

25  physicians, to undergo this type of discovery.

1          THE COURT:  Okay.  Okay.

2          MR. FUNK:  Did you want to come back to me, Your

3    Honor?

4          THE COURT:  Do you have sort of different discovery

5    issue or arguments that you want to raise?

6          MR. FUNK:  I do, Your Honor.  Just from the

7    hospital's perspective, let me touch on a number of issues.

8          THE COURT:  Okay.  So let's -- let me hear a

9    response.  I don't want to --

10          MR. FUNK:  That's no problem.

11          THE COURT:  -- double up on her when -- let me take

12    it one at a time.  So based on that, what's your counter?

13          MS. BROWN:  We obviously disagree.  The relator is

14    pleading a single unitary scheme by which the hospital was

15    providing remuneration to the defendant, referring physicians

16    through this international services department and then getting

17    Medicaid and Medicare referrals back and billing the government

18    for those.  And the scope of the discovery is not going to

19    change.  Even if my opposing counsel is right that the

20    referring physicians are -- you know, that we didn't plead

21    knowledge and they're no longer -- they're going to be

22    dismissed from the case, they will still be subject to

23    subpoenas for the same body of information because the scheme

24    will still involve them.

25          You know, we disagree that the claims are going to

1   change and that a meaningful witness could impact discovery.

2   And that is because we've already streamlined the case in

3   response to the motion to dismiss, and what is left is -- as I

4   described to you, it's false claims and Texas Medicare Fraud

5   Prevention Act claims that are of only about those four

6   categories of remuneration from the hospital defendants to

7   referring physicians.  And so if a conspiracy claim or a False

8   Claims Act is dismissed or one of the -- you know, one of the

9   Texas state law claims is dismissed, the body of discoverable

10   information is going to remain the same.

11          Similarly -- well, I guess I can stop there.  I guess

12   I can -- you know, I can also add one point, which is that we

13   disagree with the characterization that we haven't alleged

14   knowledge or participation by the defendants or any physicians.

15   We did that at length in the initial complaint, and then we

16   also supplemented.  The defendants said they wanted more

17   notice, and so we made it even more clear in the proposed

18   second amended complaint.  And that is before the Court.

19          This is not a frivolous case.  This is a case where

20   the State of Texas has filed a statement of interest.  The

21   allegations are robust and, you know, relator and the State of

22   Texas and the federal government and the public are all -- you

23   know, have interest in the case progressing.

24          THE COURT:  On that, I know the second amendment

25   complaint is not the operative complaint now.  The motion to

1 stay discovery is as to the first amended complaint, and your

2 argument, which is well stated as to what's in the first

3 amended complaint, is it -- do you have the same argument under

4 the second amended complaint?

5          MS. BRINKMAN:  Same argument, Your Honor.

6          THE COURT:  Okay.

7          MS. BRINKMAN:  If you compare the first amended

8 complaint with the second amended complaint, there's not much

9 else that is put in the first amended complaint, except for

10 some exhibits to the first amended complaint are then

11 incorporated into the body of the second amended complaint.

12          THE COURT:  Right.

13          MS. BRINKMAN:  There isn't very much substance that's

14 added.  She relies on -- relator's counsel relies on an

15 argument that the volume of patients and referrals would have

16 given the physician's knowledge of this purported scheme.  Your

17 Honor, that's simply not enough.  That's not enough under the

18 rules to give us notice as to what knowledge or participation

19 we had in this case.  And the complaint is completely devoid of

20 any particularity on a specific referral that then resulted in

21 a false claim that was submitted to the government.  So that

22 alone, Judge -- we don't have any specifics here.  It truly is

23 (indiscernible) of --

24          THE COURT:  I hear that working as to -- that that's,

25 you know, carrying the load towards the motion to dismiss.  I

1   don't know why it would stay discovery, but let me hear the

2   other argument, just in terms of overall policy on -- in this

3   type of qui tam action.  There's always a lot of defendants.

4   There's always a lot of motions to dismiss, and what the

5   typical practice is in the courts, whether or not to stay

6   discovery while a very complicated set of briefs is sorted out.

7   That may be what you're planning to address.  Include something

8   along those lines if it's not.

9         MR. FUNK:  So, Your Honor, I think the critical

10  factor that you want the Court to not lose sight of is even if

11  you do allow leave to amend the complaint.  Our core

12  allegations in the motion to dismiss would also have effect on

13  the proposed second amended complaint.  And here, because it is

14  a False Claims Act case governed by Rule 9(b), we believe we

15  have an entitlement to test the legal sufficiency both as to

16  does it state a cause of action under 12(b)(6) and does it mean

17  Rule 9(b) before we are forced to engage in extremely

18  complicated, extremely costly discovery.  So even if you look

19  at the second -- proposed second amended complaint and say,

20  well, we streamlined certain things, we've modified things, the

21  core issue of testing the sufficiency of the complaint remains

22  top of mind for us.  So I think that that's one factor that the

23  Court should consider.

24        Second, I think the case management report is a good

25  example of the unfortunate level of burden that all parties

1  will face.  We're talking about hundreds of interrogatories,

2  dozens of depositions, collection off ESI.  I mean, I don't

3  pretend to speak for the other physician defendants.  It's

4  going to be costly and difficult.  It's not in the interest of

5  the parties or any judicial economy for us to darken your

6  doorstep with discovery disputes, especially because, Your

7  Honor, the motion to dismiss is fully briefed.  The only motion

8  that's outstanding is the motion to strike at this point.

9  Everything else is before the Court.

10           And I would say significantly too, there needs to be

11  a burden demonstrated by relator in this action for you to, you

12  know, not stay discovery.  Here, there is no burden.

13  Department of Justice, they took a long hard look at this case

14  and they declined to intervene.  They are not here, Your Honor.

15  I would disagree with relator that the fact that the State of

16  Texas filed a statement of interest has any bearing on the

17  merits.  There are other qui tam cases that I've litigated here

18  where they file it to preserve their rights under their

19  statute, and that's fine.

20           THE COURT:  That is not persuasive based on the

21  statement of interest that the State of Texas filed.  That was

22  a statement of, you know, declination, but it was not a

23  statement that your -- the claims were subject to being

24  stricken.

25           MR. FUNK:  I don't disagree with that

1  characterization, Your Honor.

2          THE COURT:  Okay.

3          MR. FUNK:  They were -- the State of Texas has a very

4  strong interest -- and we've seen it in other FCA cases here --

5  in protecting their statute because they believe that there are

6  certain differences between the federal False Claims Act and

7  the TMFPA.  So I don't -- I wasn't saying that they weight it

8  either way on the merits.  I would say that they didn't weigh

9  in either way on the merits.

10          And again, it's a decline case.  It's a case where

11  the delays in this case have been out of a lot of the parties'

12  control.  I mean, the time the government took to investigate,

13  the -- you know, you're lucky third for a judge in this matter,

14  unfortunately.  Those factors, I don't think, would counsel in

15  favor of any kind of not denying the stay.

16          And then finally, two, spoliation is not an issue.  I

17  can say on behalf of my clients, as an officer of the court,

18  that we've taken our obligation to preserve seriously, that we

19  are preserving documents.  I just -- I don't think that the

20  arguments about the burden or the interest of justice are what

21  you drive today when you balance those against the enormous

22  burden on the litigants and the court.

23          THE COURT:  Okay.

24          MS. BRINKMAN:  And, Your Honor, if I may just address

25  one other thing.  In many of our cases, the relator will agree

1  to a stay of discovery during the pendency of motions to

2  dismiss because they also don't want the burden of their

3  spending money on discovery.

4          THE COURT:  I understand.

5          MS. BRINKMAN:  In this case, it's a little bit

6  unusual.  And I guess the only other thing that I would point

7  out is that here, we have -- if we start discovery, Your Honor,

8  it's truly going to affect the lives of all the physicians.

9          THE COURT:  I understand.  I understand.

10         Final thoughts on that.

11         MS. BROWN:  Yes.  So if I could just take opposing

12 counsels' thoughts in order -- or (audio interference) order

13 here.

14         You know, the False Claims Act statute purposely does

15 not include a stay of discovery pending motions to dismiss,

16 unlike other federal statutes, and I think that's indicative of

17 the fact that Congress intended for these cases to be pursued

18 expeditiously.  And in this case, that is very appropriate.

19 You know, opposing counsel said there's no harm to us without

20 going forward.  But, you know, to the contrary, the delays in

21 this case are going to be enormous.  You know, if the -- if we

22 have to wait until the Court adjudicates 11 motions to dismiss,

23 there may be another, you know, leave to amend.  You know,

24 there are -- that's going to be -- that's a lengthy period of

25 time.  And you know, the --

1          THE COURT:  Can I just interrupt you?  If --did I

2   just hear you say that if I grant your ability to amend so that

3   you can file your second amended complaint, when they move to

4   dismiss again, are you saying that you're going to be back

5   seeking leave to amend again?

6          MS. BROWN:  No, Your Honor.

7          THE COURT:  Okay.  Because I want to make sure of

8   that.

9          MS. BROWN:  No, Your Honor.

10          THE COURT:  We're going to be turning to that next.

11   Okay.  Continue.

12          MS. BROWN:  Yes.  And so, you know, the process is

13   going to be lengthy.  And in that lengthy period of time,

14   memories are going to fade.  And there is a concern about

15   spoliation, and that is because we haven't received the initial

16   disclosures from the defendants yet, so we don't know who are

17   the persons with knowledge.  We don't know who has ESI that

18   hasn't been preserved and, you know, what other entities they

19   say may have knowledge.  And so there certainly is a concern

20   about spoliation and also just the delay of litigation.

21          THE COURT:  Are you counsel on other qui tam actions

22   --

23          MS. BROWN:  I am, yes.

24          THE COURT:  -- for relator?  Is the representation

25   correct that a lot of courts grant stay of discovery while

1  motions to dismiss are pending?

2         MS. BROWN:  Well, I don't know if I can speak to --

3  you know, I can only say that --

4         THE COURT:  I don't need percentages, but, I mean,

5  tell me your experience or what your survey of the case law is.

6         MS. BROWN:  I mean, that is -- my survey of the case

7  law is that that is -- sometimes the case -- that is typically

8  the case when the complaint is facially invalid.  And just a

9  preliminary review indicates that this is not going to be a

10 successful case.  And the Court has to do a preliminary

11 investigation to see whether or not this is a case that is

12 frivolous and is just a fishing expedition into misconduct.

13 And we invite you to look at, you know, the paragraphs that we

14 cited in our second amended complaint.  We have specifically

15 identified the conduct at issue.  We have provided

16 particularized examples of it.

17        And, you know, the opposing counsel suggested that

18 the proposed second amended complaint doesn't make substantive

19 differences, but we disagree with that.  You know, the

20 defendants asked for a lot of additional information, and

21 whether or not we felt it was required by the rules, we

22 provided it.  And so that second amendment complaint is, you

23 know, even more so a basis to deny a stay of discovery.

24        THE COURT:  Okay.

25        MS. BROWN:  We would like to move forward.

1          MR. FUNK:  Your Honor, could I just add one point, if

2  I may.

3          THE COURT:  You can.

4          MR. FUNK:  I think part of the concern here is we got

5  a first amended complaint.  It was just, you know, they filed

6  the original complaint.  We got the amended complaint.  We

7  moved to dismiss, and we see, as to the claims, substantively,

8  a seismic shift in the parties and the claims and some of what

9  was there.  Okay.  That may be a good thing as far as

10  streamlining the case.  We don't disagree with that.

11          THE COURT:  It should make you happy.

12          MR. FUNK:  But it does make me somewhat happy, but we

13  don't believe it goes far enough.  And our concern is that

14  under Rule 9(b), what happens, Your Honor, if you permit

15  discovery.  They obtain discovery on claims that weren't

16  sufficiently pled, even in this proposed second amended

17  complaint, and then that forms the basis for them to try and

18  amend again or refine claims.  It just -- the function to pause

19  for a moment, given where we are in this case, we just -- we

20  feel strongly about that, Your Honor.  So --

21          THE COURT:  I hear an argument -- arguments about

22  burden of costs, that if I allow discovery, that's a burdensome

23  cost, so I should stay discovery.  I also hear that you spent a

24  lot of time briefing your motions to dismiss, and if I grant

25  that, there's a burden and a cost that you have to go do that.

1  So it's don't grant discovery and don't let them amend because

2  y'all shouldn't be incurring any costs.  I think you can hear

3  where I'm sort of thinking about this.  We're going to turn to

4  the motion to amend in just a second, but as we go forward, I'm

5  inclined to say that discovery is going to pause while we

6  consider what will be the motions to dismiss that need to be

7  resolved.  But I do think that I have some questions that I

8  want to ask about the leave to amend, but I think -- obviously

9  I'm thinking of granting the leave to amend so that we're -- I

10 mean, we have a second amended complaint that's out there.

11 It's not operative yet.  And that we have one and only one

12 target that we're shooting at, and that would be the only

13 target.  I'm not going to be hearing another leave to amend if

14 I'm understanding prior representation of counsel.  Correct?

15          MS. BROWN:  Yes.  There was only one small issue on

16 that.

17          THE COURT:  Okay.

18          MS. BROWN:  And that is that as of November of this

19 year, there was a potential retaliation claim that has just

20 accrued.  We are evaluating that.  It's very recent, and it's

21 really too early to see what are the damages and whether it's

22 something that's going to be brought.  But with that -- setting

23 that aside --

24          THE COURT:  But that's bringing a whole new claim

25 based on a new set of occurrences.  It's not trying to plead

1  better into claims that have already been made.  Correct?

2         MS. BROWN:  That's correct, yes.

3         THE COURT:  Okay.  I note that, and I wouldn't have a

4  problem with that if it -- if that exists.

5         On the leave to amend the complaint, I hear your

6  argument about having seen your motions and then they've jumped

7  the gun and come up with another complaint, but also in these

8  qui tam cases, and just in procedures generally, I mean, this

9  is the first time -- this is the only time that we're having a

10  leave to amend having seen motions to dismiss -- we didn't get

11  to the first amended complaint via a motion to dismiss prior

12  set of proceedings.  Correct?

13         MS. BROWN:  Correct.

14         THE COURT:  Okay.  It strikes me as not unusual that

15  when the complaint is there's not enough particularity, that

16  it's a matter of what needs to be pleaded, that leave be given

17  to correct those types of issues.  And I understand the burden

18  and expense of needing to re-brief some things.  And so I'm

19  willing to entertain arguments about that, but I'm just letting

20  you know where I'm thinking about this right now.

21         So on the motion for leave to amend.  It's your

22  motion, but I think really I have questions for them unless you

23  want to start and say anything further on the motion.

24         MS. BROWN:  No, Your Honor.

25         THE COURT:  Okay.

1          MS. BRINKMAN:  And I appreciate that, Your Honor.  So
2    we had spoke on behalf of our clients, Baylor College of
3    Medicine, Baylor Medicare, Dr. Sista, and Dr. Katz.  Reached to
4    relator several times to state our concerns about the complaint
5    as it had been pled, the first amendment complaints.  I know
6    other defendants in this courtroom had done the same to say,
7    we're concerned that these are not -- you are not alleging
8    certain things against these defendants in a way that gives us
9    notice or knowledge.  Then, we all go ahead.  The relator
10   declines to dismiss even Baylor Medicare, which is not an
11   actual entity that exists, declines to dismiss them.  We all
12   file our briefing on the motion to dismiss on the first amended
13   complaint, and then relator comes back to us and says, oh, I'd
14   like to amend our complaint, can we -- can I amend it.
15          THE COURT:  But -- and linking back to your prior
16   argument.  And we have it locked in.  The second amended
17   complaint is going to be it, and I think that you argued
18   previously there's still not enough there.
19          MS. BRINKMAN:  Agreed.
20          THE COURT:  And so I would think that you would want
21   to adopt and brief into that situation, knowing that that's
22   going to be the one that the Court really is going to dispose
23   of one way or the other.  So you can continue.
24          MS. BRINKMAN:  And we do do that in Baylor -- the
25   Baylor defendants do do that in the reply and the response to

ACCESS TRANSCRIPTS, LLC          ⚖          1-855-USE-ACCESS (873-2223)

1  the motion to amend in stating why it's futile to allow the

2  second amended complaint to be entered at this point.

3              THE COURT:  Yeah.

4              MS. BRINKMAN:  Because of, again, the lack of

5  particularity as to each of the defendants' conduct that is at

6  issue here.

7              THE COURT:  Okay.

8              MR. FUNK:  So, Your Honor, for us, one of the --

9              THE COURT:  Can I -- I'm sorry, can I get your

10  appearance for the record, just to get the name.

11              MR. FUNK:  Asher Funk on behalf of --

12              THE COURT:  Asher.  Okay.  Thank you.

13              MR. FUNK:  -- CHI and CHI-St. Luke's.

14              I think one of the concerns that we have, Your Honor,

15  I'll tell you from my False Claims Act practice, both here and

16  in the Northern District of Illinois, where I know Ms. Brown

17  also practices, typically when you have an amendment midway

18  through briefing on a motion to dismiss, it's because it's the

19  first amendment as a matter of right.  It is atypical for a

20  party who's already gotten their one freebie to then come back

21  after we've shown the cards and say, no, I'd like to amend.

22  And obviously, that's why we're before, you know, Your Honor on

23  this issue.

24              Part of our concern collectively is while it's good

25  that the case has been streamlined, we have a right and we

1 believe that the <u>Boudreaux</u> (phonetic) and (indiscernible) case,

2 which is Fifth Circuit law, provides that the abandonment

3 voluntarily of these claims provides insufficient certainty for

4 our clients.  Because in theory, she could re-raise those in a

5 later point based on discovery or other issues.  There is, we

6 believe, an entitlement when a party seeks to amend and sort of

7 draw claims midway through briefing a motion that there should

8 be some disposition of those So in other words --

9          THE COURT:  But they will need leave my leave to --

10          MR. FUNK:  Yes.

11          THE COURT:  -- to add that claim in the future.

12 Right?

13          MR. FUNK:  Well, correct.  And I think part of what

14 this goes to, Your Honor, is if -- our position is we opposed

15 leave, certainly.  But if you are inclined to grant it, that

16 there be some parameters around what it is, that it's not just,

17 you know, certain claims that have fallen away sort of that

18 occurs voluntarily, that those could be re-raised, that they

19 could be, you know, subject to discovery.  I think we're

20 looking for some certainty from the Court about those claims

21 that relator's walking away from by virtue of the proposed

22 second amended complaint.

23          THE COURT:  And is that -- I mean, I know that there

24 were the other state law claims that are no longer there.  I

25 certainly haven't looked at all of those different statutes.

1  Do they vary much between Texas, vis-à-vis the states, versus

2  FCA?  I know there's difference between FCA and Texas.

3          MR. FUNK:  Your Honor, part of our, you know,

4  frustration is that there were state law claims that were

5  brought that if any investigation was done initially, they

6  never should have been in the complaint.  They're for disparate

7  states thousands of miles away that were seemingly only brought

8  because the parent entity, Catholic Health Initiatives, which

9  we think shouldn't be a defendant in this action, does business

10  in those jurisdictions.  There are no ticks and ties between

11  the defendants in this case in many of the jurisdictions that

12  relator has, you know, walked away from claims on.

13          So, I mean, they're just -- I think the history here

14  leaves us a little bit concerned, and that's part of why we

15  have asked respectfully for a ruling on the proposed -- sorry,

16  the first amended complaint, our motion to dismiss, to inform

17  what the complexion of any further or future amendment looks

18  like from Your Honor.

19          THE COURT:  On those claims that you've dropped into

20  your second commended amended complaint -- and they were

21  disparate.  I didn't go down the line to see all compare claim

22  to claim, but there are other states.  Do you foresee bringing

23  any of those back?

24          MS. BROWN:  We don't, Your Honor.  If they're not in

25  our proposed second amended complaint -- and, you know, the

30

1  only thing we would ask is based on what the government

2  entities have told us, they should be dismissed without

3  prejudice as to the government entities re-asserting them.

4          THE COURT:  So that the government entities, if they

5  chose to reassert them, they could, but you, on behalf of

6  relator, will bind your client that you will not reassert them.

7          MS. BROWN:  That's correct.

8          THE COURT:  Does that give you the comfort that you

9  need?

10         MR. FUNK:  I mean, I'd want to kind of see what it

11  is.  And again, our position remains the same, but I understand

12  also where you're going, Your Honor, as far as your view of the

13  burden of streamlining the case.

14         THE COURT:  And we're not finished with argument on

15  this, but I mean, as to that concern, which I hadn't thought

16  about -- I don't know that I can do something that's with

17  prejudice vis-à-vis the government entities.

18         MR. FUNK:  You're correct.  Your Honor, we'd also

19  want to look at that.  I believe there are several States that

20  were initially included that don't even have qui tam statutes,

21  where there may be acts that, you know, govern certain conduct

22  against the Medicaid programs, but there isn't a specific qui

23  tam provision that allows for that.

24         THE COURT:  Is anything -- is any -- I don't know

25  that we need anything to say anything about any of the

1  governmental entities.

2          MR. FUNK:  It could just be as to relator, but I

3  mean, I -- there are also defendants that were voluntarily

4  dropped from this.  I mean, there was -- the complexion of the

5  complaint -- this is part of my frustration is it's just -- a

6  lot's changed.

7          THE COURT:  Right.  I understand.  Go ahead.

8          MS. BROWN:  If I could speak to that.  You know, the

9  only thing that has happened is that there has been

10 streamlining.  There's been nothing new, and we've been very

11 clear in docket entries as to what we were agreeing not to

12 pursue, which is very common among --

13         THE COURT:  Well, I would at least argue that there's

14 something new since it's the second amended complaint.  I mean,

15 there's got to be a reason for it.  I understand that there's

16 no new claims, right?

17         MS. BROWN:  That's what I --

18         THE COURT:  Causes of action.  There's no new causes

19 of action.

20         MS. BROWN:  No new --

21         THE COURT:  You've only dropped causes of action.

22         MS. BROWN:  No new theories and no new causes of

23 action.

24         THE COURT:  Okay.

25         MS. BROWN:  That's correct.  Just more detail that

32

1 the defendants asked for.

2        THE COURT:  As to the causes of action that you have

3 dropped, are you stipulating on behalf of your client that if I

4 grant leave to file the second amendment complaint, you will

5 not seek to reassert them in this action?

6        MS. BROWN:  Yes.  And they're not in the second

7 amended complaint.  We have not tried to, you know, renew

8 something that we agreed to dismiss.

9        THE COURT:  Okay.  All right.  Well, we have that

10 stipulation on the record, so we'll -- we have that for what it

11 is.  And obviously, if anything comes up that wants to be

12 re-added at this point, it's at my discretion, and I'm sure it

13 will be brought to my attention that there was this colloquy.

14        The statement of interest by Texas was filed after

15 the motions to dismiss and perhaps even after the reply, I'm

16 not sure.  I'm not sure.  It goes to my question of, is there a

17 position by the defendants -- you know, we're very early in

18 this case, you know, in it's relative life, but we're up to

19 Docket Number 253, at least.  So it's a lot.  Has there been a

20 position statement by the defendants with respect to what the

21 State of Texas put in?  There might be.  I just didn't locate

22 it.

23        MR. FUNK:  I'm sorry, Your Honor.  I was just talking

24 to --

25        MS. HAZELWOOD:  Yeah.  Kay Hazelwood for Bone and

1   Joint of Houston.  I think that several of the defendants,

2   including Bone and Joint, filed a reply.  The statement of

3   interest by the State of Texas, May 31st at Docket 204.  Our

4   followed shortly after.  I don't have the docket in front of

5   me, Judge.  It looks like --

6         MS. BRINKMAN:  Your Honor, it was on July 1st, 2019,

7   Docket Number 219.

8         MS. HAZELWOOD:  I don't think we were the only ones

9   that filed a response, though.  I believe that other parties

10  did, as well.         MS. BRINKMAN:  There was --

11        MS. BROWN:  There were other ones that -- other

12  responses at Docket 211 and 232.

13        THE COURT:  211, 219, 232 are as to the State of

14  Texas's position?

15        MS. BROWN:  Yes.

16        THE COURT:  Okay.

17        MS. BROWN:  I'm sorry, one more.  226.

18        THE COURT:  I'm sorry?

19        MS. BROWN:  Also, 226.

20        THE COURT:  Okay.  There are also -- the State of

21  Texas's statement refers to two relatively recent cases, Patel

22  v. Catholic Health Initiatives, and -- which is 312 F.Supp.3d

23  580 --

24        MR. FUNK:  Your Honor, I can vouch for the

25  familiarity.  That was one of the cases that myself and Mr.

34

1  Coffey worked on, so --

2         THE COURT:  Yeah.  But that's a different Catholic

3  Health Initiatives case, correct?  It was before Judge Ellison.

4         MR. FUNK:  Correct.

5         THE COURT:  Okay.  And then, the other is -- I think

6  it's Hayden -- is that right?  Yeah.  Hayden v. Abundant Life

7  Therapeutic Services, recent decision from Judge Rosenthal,

8  2019 WL 1930274.

9         Are -- at least with one of the cases, I know that

10 you're familiar.  Are you all familiar with -- are all three of

11 you familiar with both of those cases?

12        MS. BRINKMAN:  I'm familiar with the Catholic Health

13 Initiative case.  I'm not as familiar with the other one that

14 you referenced.

15        THE COURT:  Okay.

16        MS. BROWN:  I'm not so familiar.

17        THE COURT:  Okay.  If -- you know, I have read

18 through these cases, and at the end of the day, it seems like

19 the short reference is that the FCA claims were dismissed.  The

20 Texas claims are dismissed without prejudice to file in state

21 court.  Correct?

22        MR. FUNK:  That's correct.  Your Honor.  That's what

23 occurred at least in the Patel matter.

24        THE COURT:  All right.  Is that where -- I would just

25 like to know before we get into motion to dismiss briefing on -

1   - going to the expense and burden that we're talking about --

2   is that where we're going in this action?  Am I ultimately

3   going to be dismissing the FCA claims and sending the Texas

4   claims to a Texas court?  I'll let you start.

5          MS. BROWN:  We don't believe so.  You know, this

6   scheme of remuneration in exchange for referrals is something

7   that the government has expressly warned.  The government has

8   sent out notices cautioning hospitals and referring physicians

9   that there should be no flow of money or in kind,

10  administrative assistance, or anything like that coming from

11  hospitals to referring physicians who are then providing

12  referrals back to the hospital because that has all sorts of

13  deleterious effects on the Medicaid and Medicare programs and

14  on patient health.  And this scheme that has been alleged here

15  is exactly that, it's that you know, the international services

16  department was providing free interpreters, free administrative

17  assistance.  Basically they had a whole staff of administrative

18  assistants that were doing the work that the physicians

19  themselves and their offices are supposed to provide in

20  exchange.  What they received is, you know, is the loyalty of

21  providing the referral -- you know, the Medicare and Medicaid

22  referrals back to them.  And this, you know, as I said, it was

23  something that the government has warned against.  The

24  relationship was -- fell outside of the scope of any safe

25  harbor that the statute allows for.  And so, you know, we don't

1 think the cases are going to be -- should be dismissed.

2          THE COURT:  In terms of -- I mean, it's not

3 dispositive on what the text of either statute says and whether

4 you've pleaded it correctly, but in terms of remedies at the

5 end of the day, if you only had your Texas claims, are you able

6 to avail yourself of the same or similar remedies that the FCA

7 would provide you?

8          MS. BROWN:  Not at all because the money that would

9 go to the federal government under the Medicare program, we

10 couldn't recoup for any of that.  We can't recoup the civil

11 remedies.

12          THE COURT:  Okay.

13          MS. BROWN:  They don't cover the same damages.

14          THE COURT:  Okay.  All right.  That makes sense.

15          MR. FUNK:  Your Honor, just to make sure I understand

16 your question, are you simply asking if, in the event you grant

17 the motion to dismiss as to the FCA counts, what the

18 disposition should be as to the TMFPA counts?

19          THE COURT:  Basically.  But I mean, I'm looking at --

20          MR. FUNK:  Yeah.

21          THE COURT:  -- Hayden and Patel, and the result was -

22 -

23          MR. FUNK:  My --

24          THE COURT:  -- dismissed without prejudice, refiling

25 in state court.

1          MR. FUNK:  And my understanding based on Judge

2    Ellison's ruling and the relevant Fifth Circuit law is that

3    typically speaking, federal court, when there's both a qui tam

4    case and also state claims, that the court should, if they

5    dismiss the FCA matter, decline to exercise its supplemental

6    jurisdiction over the TMFPA because the state is the expert on

7    adjudicating those claims.

8          THE COURT:  Right.

9          MS. BRINKMAN:  And, Judge, I'm racking my brain to

10   think of one case where a judge has dismissed the federal False

11   Claims Act claims, but then the relator then went into state

12   court to assert those in a state court under the state statute.

13   So obviously, the relator has that right to try under the state

14   statute.  But typically if it's not sufficient under the

15   federal False Claims Act, it's not going to be sufficient under

16   the state (indiscernible).

17         THE COURT:  Okay.

18         MS. BRINKMAN:  Your Honor, I don't necessarily think

19   that would be the case here because as the State of Texas's

20   statement of interest makes clear, the Texas Medicaid Fraud

21   Prevention Act statute is broader in many ways than the federal

22   act --

23         THE COURT:  Right.

24         MS. BRINKMAN:  -- so it's not the case that dismissal

25   of the federal claims necessitates dismissal of the state

ACCESS TRANSCRIPTS, LLC          ⚖          1-855-USE-ACCESS (873-2223)

1 claims.

2          THE COURT:  Well, at least dismissal without

3 prejudice, though.

4          MR. FUNK:  Yeah.

5          THE COURT:  It's dismissal on a jurisdictional ground

6 on the supplemental jurisdiction question that you're noting.

7          And obviously, you know, you were advised to be here

8 prepared to argue directly as to these cases.  I have been

9 thinking about it in terms of -- let me say this.  I'm going to

10 grant the motion for leave to amend, subject to the stipulation

11 that we got on the record about the claims that have been

12 dropped.  And so that is going to be the operative complaint

13 that we're looking at.

14          I'm sensitive to the fact there's a lot of defendants

15 and how voluminous the briefing is.  I'm wondering if you all

16 know enough about these cases that I have in mind, or cases

17 that are similar to them, to let's simply have a round of

18 briefing on those -- these two cases if I was to follow these

19 two cases and look at the second amended complaint.  Is that --

20 it would still, I think, need to be a motion to dismiss.  I'm

21 trying to think of a way that we don't have to do it in quite

22 so voluminous format as motions to dismiss typically are.

23 Because these two cases -- I mean, at some point, you know, the

24 fact patterns are changing, but the law and the result is set.

25 And if this is -- if the FCA claims in this case are on all

1  fours with those types of pleadings that were found to be

2  deficient, I think I would want to know that and that that

3  might streamline the briefing somewhat.

4         Is there comment or thought on how to do that short

5  of having it be part of motions to dismiss that are coming?

6         MR. FUNK:  I mean, are you just asking, Your Honor,

7  for sort of narrow briefing on the issues of the similarity or

8  the similarity between the False Claims Act and the TMFPA?  I

9  mean --

10         THE COURT:  No, no, no, no.  I have a handle on that.

11  I'm talking about between -- and I know that it's different --

12  you know, this is obviously not a cut-and-paste complaint.  I'm

13  not suggesting that, that it's just like, oh, this is exactly

14  the same complaint that we've seen previously.  So maybe we're

15  just going to need to go to motions to dismiss on this.  But I

16  guess I will -- but the parties, obviously I've put you on

17  notice that I'm interested in the applicability of these two

18  cases to the case before me.

19         And I've also expressed that I have read closely the

20  State of Texas's statement of interest, which I've found

21  persuasive, but which I will note I did not know that there

22  were defense briefs that were already filed on that, which I'm

23  going to read again.  I will tell you that I will read those

24  four briefs.  I don't know if the State of Texas is going to

25  put in another statement of interest in response to the second

1  round of motions to dismiss.  They might, they might not, but

2  since it's kind of a statutory construction issue, they might

3  not.  When you're preparing your motions to dismiss, just note.

4          I mean, I think obviously the motions to dismiss that

5  are out there, they're being mooted, they're being terminated

6  because we're going to have to redo it.  I don't know whether

7  it technically terminates the Docket 204 and the responses to

8  that, but I'm going to let you know that I'm going to be

9  looking at those.  I'm going to be looking at the State of

10 Texas's brief when I'm looking at any motions to dismiss.  So

11 bear that in mind because now you have obviously this statement

12 before you to the extent that it impacts what you want to say

13 in your motion to dismiss.  Is that clear enough?  I mean, do

14 you understand what I'm getting at?

15         MR. FUNK:  Yeah, so we could certainly incorporate by

16 reference back to the Texas SOI or our responses to the SOI in

17 a future motion to dismiss the proposed second amended

18 complaint.

19         MS. BRINKMAN:  Judge, I'm more than happy compile a

20 list of all the docket numbers and all of those replies.  I

21 think there were more than four.

22         THE COURT:  Okay.

23         MS. BRINKMAN:  But I don't have the document in front

24 of me, and -- but I'm more than happy to send an email to your

25 case coordinator that lists all of those replies.

1          THE COURT:  That would be great.  If there's -- as to

2  -- so I don't need it as to the form of, like, there were the

3  motions to dismiss, responses and replies, but as to the Texas

4  statement and anything that is responsive to that, that would

5  be very helpful.  Thank you.  If you'll email it to my case

6  manager and also copy counsel of record.

7          MS. BRINKMAN:  Okay.

8          THE COURT:  Okay.  Okay.  So I think I've made

9  everyone sufficiently unhappy today.  Is there other items to

10 enter at this point?  We don't have a -- there wasn't a

11 proposed scheduling order given to me with joint case

12 management because of the outstanding issues.  Is that right?

13 I mean, we don't have a proposed scheduling order right now.

14         MS. BROWN:  We did submit one, but I don't know that

15 it makes sense to look at it (indiscernible) discovery.

16         THE COURT:  Oh, true.  There is one submitted, but no

17 dates were filled out.  Right.

18         MS. BROWN:  These were filled out on our prior --

19         THE COURT:  Okay.  But --

20         MS. BROWN:  -- (indiscernible).

21         THE COURT:  Okay.

22         MS. BROWN:  They were contested.

23         THE COURT:  Very contested.  Okay.  So I'm going to

24 hold off on a scheduling order also at this point.  On -- so

25 the motion for leave to amend the second amended complaint is

42

1  granted, and so the second amendment complaint is out there

2  now.

3          How much time do you think you need to prepare

4  motions to dismiss?  And I'm aware that Christmas and New

5  Year's are coming, so I'm sympathetic to that.  And if you all

6  would like to -- do we want to take a break to, like, figure

7  out any scheduling issues or do y'all want to, you can just

8  discuss among yourselves.  You want to take a five or ten-

9  minute break?

10          MR. FUNK:  That'd probably be fine, Your Honor.

11          THE COURT:  Is that --

12          MS. BROWN:  That's fine.  There's one thing I wanted

13  --

14          THE COURT:  Yes.

15          MS. BROWN:  -- to bring to your attention, you know,

16  regarding the motion to amend.  And I just wanted to make sure

17  that it was clear in my earlier representation.  So you asked

18  me whether after the defendants filed motions to dismiss, we

19  would then seek leave to amend, and I wanted to just make clear

20  that what I meant by that is not before this Court's ruling.

21  But pending -- you know, but based on this Court's ruling, if

22  there was a basis to supplement the allegations, we may indeed

23  seek to amend at that point.  So I just wanted to make sure --

24          THE COURT:  Okay.  I -- That would be your right at

25  that point.  But once they brief, I'm not going to see -- I

43

1   guess I'll say this.  I'm not going to see because you won't

2   give it to me, but if you do, I'm not going to look at it,

3   another amended complaint.

4              MS. BROWN:  That's correct.

5              THE COURT:  Okay.  But after my ruling, you can

6   procedurally, of course, attempt to do whatever you think you

7   need to do.

8              MS. BROWN:  I just wanted to make sure that was

9   clear, but --

10             THE COURT:  I think that that's implicit in what I

11  head said before, but --

12             MR. FUNK:  And certainly Your Honor, we move to

13  dismiss this time.  We'll be again asking the court to dismiss

14  with prejudice without leave to amend given the multiple

15  exercises in briefing and pleading this matter.

16             THE COURT:  I understand.

17             MR. FUNK:  But that's obviously within the Court's

18  purview.

19             THE COURT:  That -- we're at the second amendment

20  complaint, so I definitely understand that, and I think that

21  you understand that too.  But one never knows what happens in

22  litigation.  So we'll take that up if necessary.  Okay.  A ten-

23  minute break, and --

24             MS. BROWN:  Well, and I think we have consensus --

25             THE COURT:  Okay.

44

1          MS. BROWN:  -- that if we can have 60 days, if
2    defendants could have 60 days to file the motions to dismiss.
3          THE COURT:  Okay.  And that would take us to, what,
4    mid-December, mid-February.  If you'll get -- look on a
5    calendar and if you'll propose a date in mid-February, that's
6    fine with the Court.  Is that okay?  I mean, 60 days seems
7    fine.
8          MS. BROWN:  Yes, of course.
9          THE COURT:  Okay.
10          MS. BROWN:  And then, Your Honor, I understand from
11    your rules, each defendant has 5,000 words for --
12          THE COURT:  We're going to need to talk about that.
13    I had another -- I will tell you, I have another qui tam case
14    in the random reassignment of cases to this Court.
15          MS. BROWN:  I'm familiar with that case.  We're also
16    representing --
17          THE COURT:  Are you on that case, as well?
18          MS. BROWN:  Yes, sir, I am.
19          THE COURT:  And you saw my --
20          MS. BROWN:  Yes, sir.
21          THE COURT:  -- order, and you will be before
22    Magistrate Judge Johnson next week --
23          MS. BROWN:  Yes.
24          THE COURT:  -- to discuss the word limit there.  I
25    think cumulatively, that was a request for 90,500 words --

1          MS. BROWN:  There were -- the --

2          THE COURT:  -- with 18 defendants.

3          MS. BROWN:  In range with the response and the reply.

4          THE COURT:  Exactly.  And that was with 18

5   defendants, and here we have 36,000.  So I'm not going to grant

6   180,000 words.

7          MS. BROWN:  Understood.

8          THE COURT:  What, in terms of word limits -- I'll

9   tell you what.  You're going to be before Magistrate Judge

10  Johnson --

11         MS. BROWN:  Yes, Your Honor.

12         THE COURT:  -- next week arguing that.  I assume you

13  all don't have an idea of how many words you need at this

14  point, and I'm not sure that it makes sense to set a word limit

15  right now pending what Magistrate Judge Johnson has to say

16  there.  I'm going to, you know, take some guidance from that.

17  You might -- my procedures are set out as 5,000 words per

18  party, but it's really kind of 5,000 words per side, but I know

19  that that doesn't make sense in a case like this, but it is

20  certainly not license at all to add up every party and say, oh,

21  we each get 5,000 words because there's so much that overlaps.

22         And so let's do this.  There's that hearing is -- do

23  you know what day that is?  Is it Tuesday --

24         MS. BROWN:  It's on Tuesday at two o'clock.

25         THE COURT:  Tuesday next week?  So why don't we do

46

1  this.  Instead of setting now what the briefing deadline's

2  going to be -- and is anybody else here, any of the other

3  lawyers here also involved in that case and going to be at that

4  hearing before Judge Magistrate Johnson [sic]?  Not a reason

5  for you to be, it's completely unrelated parties.  Well, you'll

6  be there.

7            MS. BROWN:  Yes, sir.

8            THE COURT:  Is that correct?  Why don't you report

9  back to your colleagues and why don't you talk with them based

10 on whatever she's ruling, or at least recommending to me.  And

11 on that basis, come up with what your proposal on word limits

12 would be, and we'll see what we can work out at that point.

13           So let's say that by next Friday, you all will put in

14 a submission recommending a briefing schedule and recommending

15 word limits.  And you can have one conversation with your

16 colleagues but have another conversation in good faith with

17 your opponent, agreeing to what those deadlines are going to be

18 in agreeing to what the word limits are.  Whatever word limits

19 they're going to ask fo, you're going to be very happy with

20 whatever number of words it means for you as the one and only

21 party, but get agreement on at least a proposal.  And your

22 colleague here can tell you that I was not happy with the

23 request that went out on that one, and so in terms of coming up

24 with a way to do unified briefing that is targeted will be

25 appreciated by the Court.

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

1          MS. BROWN:  Understood.

2          THE COURT:  Okay.  Okay.  All right.  So by next

3   Friday, we'll have a proposal in on that.  That will hopefully

4   be a joint proposal.

5          MS. BROWN:  Yes, Your Honor.

6          THE COURT:  Okay.  Anything else?  And then I'm going

7   to look at my notes to see if I have anything further.

8   Anything else that anybody wants to raise?  Okay.  Let me look

9   through everything I've got up here.  I think that may be it.

10          MS. BROWN:  Your Honor, are you granting the motion

11   to stay discovery then?

12          THE COURT:  I am.  I am.  Yeah.  The discovery will

13   be stayed until I rule on motions to dismiss.  And when I get

14   those motions, we're going to -- it's going to be long.  It's

15   going to take a while, but we are going to turn to them.  I

16   won't be thinking, oh, these are way back on my six-month list.

17   I'm going to turn to them and try to rule on them.  Okay.

18          MS. BROWN:  Thank you, Judge.

19          THE COURT:  All right.  And let me see if I've got

20   anything else.  And that may be famous last words, but that

21   will be what I intend to do.

22          MS. BRINKMAN:  Your Honor, I have a copy of that page

23   I referred to earlier in the hearing for the Court and for

24   opposing counsel.  Can I hand that up to you?

25          THE COURT:  Yes, please.  And do you have one for

1 relator?

2          MS. BRINKMAN:  I do.  I do.

3          THE COURT:  Thank you.

4          THE COURT:  Okay.  That is all I have.  Do you have

5 some -- it looks like you have something further?

6          MR. FUNK:  Just one procedural question, Your Honor.

7 With the redacted version of the motion to strike, I'm

8 presuming that in addition to Ms. Brown, we should serve that

9 on the other parties as well when we actually provide the

10 unredacted copy -- or the redacted copy.

11          THE COURT:  I think so.  I mean, I think that that's

12 what is -- do we have a protective order in this case?

13          MR. FUNK:  We do not.

14          MS. BROWN:  Not yet.

15          THE COURT:  It's sealed, so obviously you're not

16 supposed to share it on that basis.  It's an -- it's a

17 suggestion that there's attorney-client, so I understand that.

18          MR. FUNK:  Yeah.

19          THE COURT:  I will tell you by serving it, by doing

20 all of this, you're not waiving attorney-client privilege.

21          MR. FUNK:  Yeah.

22          THE COURT:  Do you have any concern about sharing it

23 with the other parties?

24          MR. FUNK:  I don't.  I think we've just been very

25 cautious to avoid any sort of a waiver-related argument, but

49

1  you're recognizing that, so I don't think we're concerned.

2          THE COURT:  Okay.  Okay.  So yes.

3          I think that's all I have.  Okay.  Thank you,

4  everyone.

5          MR. FUNK:  Thank you.

6          MS. BRINKMAN:  Thank you.

7          MS. BROWN:  Thank you.

8          THE COURT:  You're excused.

9      (Proceedings concluded at 3:36 p.m.)

10

11

12

13

14              **C E R T I F I C A T I O N**

15

16          I, Alicia Jarrett, court-approved transcriber, hereby

17  certify that the foregoing is a correct transcript from the

18  official electronic sound recording of the proceedings in the

19  above-entitled matter, and to the best of my ability.

20

21

22

23  _____

24  ALICIA JARRETT, AAERT NO. 428    DATE:  October 22, 2020

25  ACCESS TRANSCRIPTS, LLC

ACCESS TRANSCRIPTS, LLC        ⚖        1-855-USE-ACCESS (873-2223)