IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, the STATE OF TEXAS, the STATE OF COLORADO, the STATE OF INDIANA, the STATE OF IOWA, the STATE OF MINNESOTA, the STATE OF NEW MEXICO, the STATE OF TENNESSEE, the STATE OF WASHINGTON, *ex rel.* HICHEM CHIHI, | ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Plaintiff-Relator, | ) ) | Civil Action No. 4:18-cv-00123 |
| v. | ) ) ) | |
| CATHOLIC HEALTH INITIATIVES; CHI-ST. LUKE'S HEALTH; BAYLOR COLLEGE OF MEDICINE; MEDCARE BAYLOR; BONE AND JOINT CLINIC OF HOUSTON; GREATER HOUSTON GASTROENTEROLOGY; HOUSTON THYROID & ENDOCRINE SPECIALISTS; KIDNEY ASSOCIATES; KIDNEY AND HYPERTENSION CONSULTANTS; LEACHMAN CARDIOLOGY ASSOCIATES; PULMONARY CRITICAL CARE & SLEEP MEDICINE CONSULTANTS; SURGICAL ASSOCIATES OF TEXAS; TEXAS ENDOCRINOLOGY GROUP; THE CENTER FOR ENT; CRISTINA BOCCALANDRO, M.D.; LAZARO CHEREM, M.D.; ALBERTO COLAMAR, M.D.; CARL DAHLBERG, M.D.; BRIAN DOUGLAS, M.D.;  FAREED ELHAJ, M.D.; IRVING FISHMAN, M.D.; ALAN HOFFMAN, M.D.; RICHARD HUNG, M.D.; MEDHAVI JOGI, M.D.; MARCIA KATZ, M.D.; ZVONIMIR KRAJCER, M.D.; DEWITT LEACHMAN, M.D.; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

JAMES                                        )
LIVESAY, M.D.; ALBERTO LOPEZ,                )
M.D.;                                        )
ANDRES MESA, M.D.; RON MOSES,                )
M.D.; ISAAC RAIJMAN, M.D.; JOSE              )
FERNANDO SANTACRUZ, M.D.;                    )
NAVNEET SINGH, M.D.;                         )
RAMACHANDRA SISTA, M.D.; OTHER               )
UNKNOWN DEFENDANT DOCTORS,                   )

       Defendants.


## PROVIDER DEFENDANTS' CONSOLIDATED MOTION TO DISMISS RELATOR'S SECOND AMENDED COMPLAINT

# <u>TABLE OF CONTENTS</u>

**Page**

I.    STATEMENT OF FACTS AND SUMMARY OF ARGUMENT ........................... 2

II.   NATURE AND STAGE OF THE PROCEEDING ................................................ 9

III.  STATEMENT OF ISSUES ................................................................................ 10

IV.   STANDARD OF REVIEW ............................................................................... 11

    A. Federal Rule of Civil Procedure 12(b)(6) ................................................. 11

    B. Federal Rule of Civil Procedure 9(b) ........................................................ 11

V.    APPLICABLE LAW ........................................................................................ 12

    A. The False Claims Act ................................................................................ 12

    B. The Stark Law ........................................................................................... 13

    C. The Anti-Kickback Statute ........................................................................ 13

VI.   ARGUMENT .................................................................................................... 14

    A. Relator Fails to Plead an FCA Claim under 31 U.S.C. § 3729(a)(1)(A)
       or (B). ......................................................................................................... 16

        1. The SAC Fails to Show that Any Provider Defendant Had
           Knowledge about the Alleged Scheme. ......................................... 17

           *a.*     The SAC fails to assert facts that show that the Provider
           Defendants had actual knowledge of a purported scheme. .................... 18

           *b.*     The SAC fails to assert facts to show that the Provider
           Defendants were deliberately ignorant of or recklessly disregarded
           information about the purported scheme. ................................................... 21

           2. Relator Fails to Plead that Any False Claims Were Submitted. ........... 25

           *a.*     Relator fails to plead facts sufficient to show that the Provider
           Defendants violated the Stark Law. ........................................................... 27

           *b.*     Relator fails to plead facts sufficient to show that Provider
           Defendants violated the AKS. .................................................................... 30

           (1)    Relator fails to allege that any of the Provider Defendants had a
           *quid pro quo* relationship. ........................................................................ 31

(2)     Relator fails to allege that the Provider Defendants had the requisite intent to violate the AKS............................................................. 34

B. The SAC Fails to Plead the Elements of a Conspiracy Claim...................... 36

C. Baylor College of Medicine Has Immunity from Relator's FCA Claims. .................................................................................................... 40

1. State Statutes and Case Law Classify BCM as an Arm of the State.......................................................................................... 41

2. Funds for BCM are Sourced from the State................................. 42

3. BCM's De Minimis Autonomy Favors Arm-of-the-State Status............ 44

4. BCM Addresses State-Wide Concerns......................................... 44

5. The Ability to Sue or Be Sued Bears Little Weight in the Fifth Circuit. ........................................................................................ 45

6. The Limited Ability to Hold Property also Bears Little Weight............ 46

D. Because Relator's Federal FCA Claims Fail, his State Law Claims Fail As Well and Should Be Dismissed or, Alternatively, The Court Should Decline to Exercise Supplemental Jurisdiction over Relator's State Law Claims ........................................................................................ 48

E. Dismissal of the Claims Should Be with Prejudice........................................ 50

VII.   CONCLUSION ............................................................................................... 50

Appendix A

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aguocha-Ohakweh v. Harris County Hospital District*,
    731 F. App'x 312 (5th Cir. 2018) .......................................................... 42, 47

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................ 11; App'x A, p. 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................ 11; App'x A, p. 7

*Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*,
    554 F.3d 595 (5th Cir. 2009) ...................................................................... 8, 49

*Campbell v. City of San Antonio*,
    43 F. 3d 973 (5th Cir. 1995) ........................................................................... 11

*Delahoussaye v. City of New Iberia*,
    937 F.2d 144 (5th Cir. 1991) ......................................................................... 43

*Daniel v. Univ. of Tex. SW Health Med. Ctr.*,
    No. 19-10834, 2020 WL 2843511 (5th Cir. June 2, 2020) .............. 42, 43, 44

*Doctors Hosp. at Renaissance, Ltd. v. Andrade*,
    493 S.W.3d 545 (Tex. 2016) ...................................................... App'x A, p. 4

*Encalarde v. New Orleans Ctr. for Creative Arts/Riverfronts*,
    No. 09-4129, 2010 WL 2854275 (E.D. La. Jul. 19, 2010) ............................ 46

*Flaherty & Crumrine Preferred Income Fund Inc. v. TXU Corp.*,
    565 F.3d 200, 213 (5th Cir. 2009) .............................................. App'x A, p. 13

*Gentilello v. Univ. of Texas Sw. Health Sys.*,
    No. 05-13-00149-CV, 2014 WL 1225160 (Tex. App.—Dallas,
    Mar. 24, 2014, pet. denied) ........................................................................... 47

*Health Educ. Auth. of La. v. APCOA LaSalle Parking Co, LLC*,
    991 F. Supp. 2d 762 (E.D. La. 2013) .......................................................... 46

*Heggemeier v. Caldwell Cnty, Tex.*,
  826 F.3d 861 (5th Cir. 2016)............................................................. 8, 49, 50

*In re Capstead Mortg. Corp. Sec. Litig.*,
  258 F. Supp. 2d 533 (N.D. Tex. 2003) ........................................................ 19

*Jagnandan v. Giles*,
  538 F.2d 1166 (5th Cir. 1976)....................................................................... 43

*Klein v. Hernandez*,
  315 S.W.3d 1 (Tex. 2010) ..................................................................*passim*

*Methodist Hosp. v. German*,
  369 S.W.3d 333 (Tex. App.—Houston [1st Dist.] 2011, pet.
  denied) ........................................................................... App'x A, p. 4

*Richardson v. S. Univ.*,
  118 F.3d 450 (5th Cir. 1997)............................................................. 7, 40, 46

*Unimobil 84, Inc. v. Spurney*,
  797 F.2d 214 (5th Cir. 1986)....................................................................... 12

*United States ex rel. Adrian v. Regents of Univ. of Cal.*,
  363 F.3d 398 (5th Cir. 2004).................................................................. 41, 45

*United Carolina Bank v. Bd. of Regents of Stephen F. Austin
  State Univ.*,
  665 F.2d 553 (5th Cir. Unit A 1982) ......................................................... 43

*United States ex rel. Bennett v. Medtronic, Inc.*,
  747 F. Supp. 2d 745 (S.D. Tex. 2010)......................................................... 14

*United States ex rel. Capshaw v. White*,
  No. 3:12-CV-4457-N, 2017 WL 3841611 (N.D. Tex. Jan. 23,
  2017), *appeal docketed*, No. 19-11309 (5th Cir. Dec. 9, 2019) ........ 30, 31, 37

*United States ex rel. Colquitt v. Abbott Labs.*,
  864 F. Supp. 2d 499 (N.D. Tex. 2012) ........................................................ 48

*United States ex rel. Dekort v. Integrated Coast Guard Sys.*,
  705 F. Supp. 2d 519 (N.D. Tex. 2010) ........................................................ 38

*United States ex rel. Edgett v. Kimberly-Clark Corp.*,
  No. 3:15-CV-0434-B, 2017 WL 4222697 (N.D. Tex. Sept. 22,
  2017) ..................................................................................................... 8, 49

*United States ex rel. Farmer v. City of Hous.*,
  523 F.3d 333 (5th Cir. 2008)........................................................... 6, 12, 36

*United States ex rel. Foster v. Bristol-Meyers Squibb Co.*,
  587 F. Supp. 2d 805 (E.D. Tex. 2008) ........................................................ 48

*United States ex rel. Freedman v. Suarez-Hoyos*,
  No. 8:04-cv-933-T-24 EAJ, 2012 WL 4344199 (M.D. Fla. Sept.
  21, 2012) ..................................................................................................... 26

*United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy,
  Inc.*, 772 F.3d 1102 (7th Cir. 2014), *cert. denied,* 136 S.Ct 49
  (2015) .......................................................................................................... 31

*United States ex rel. Grubbs v. Kanneganti*,
  565 F.3d 180 (5th Cir. 2009)................................................................*passim*

*United States ex rel. Guth v. Roedel Parsons Koch Blache Balhoff
  & McCollister*, No. CIV.A. 13-6000, 2014 WL 7274913 (E.D.
  La. Dec. 18, 2014), *aff'd*, 626 F. App'x 528 (5th Cir. 2015)......................... 37

*United States ex rel. Integra Med Analytics, LLC v. Baylor Scott
  & White Health* (*Integra Med I*), No. 5:17-cv-886-DAE, 2019
  WL 3713756 (W.D. Tex. Aug. 5, 2019), *aff'd*, 2020 WL 2787652
  (5th Cir. May 28, 2020)........................................................ 12, 18, 20, 21, 24

*United States ex rel. Integra Med Analytics, LLC v. Baylor Scott
  & White Health* (*Integra Med II*), No. 19-50818, 2020 WL
  2787652 (5th Cir. May 28, 2020)........................................................... 13, 24

*United States ex rel. Johnson v. Shell Oil Co.*,
  183 F.R.D. 204 (E.D. Tex. 1998)........................................................... 36, 37

*United States ex rel. King v. University of Tex. Health Sci. Ctr.—
  Hous.*, 544 F. App'x 490 (5th Cir. 2013).......................................... 41, 45, 46

*United States ex rel. Longhi v. United States*,
  575 F.3d 458 (5th Cir. 2009)................................................................. 12, 18

*United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*,
519 F. App'x 890 (5th Cir. 2013) .......................................... 14, 30, 31, 34, 35

*United States ex rel. Parikh v. Citizens Med. Ctr.*,
977 F. Supp. 2d 654 (S.D. Tex. 2013), *aff'd sub nom United States ex rel. Parikh v. Brown*,762 F.3d 461 (5th Cir. 2014), *opinion withdrawn and superseded on reh'g,* 587 Fed. App'x. 123 (5th Cir. 2014), *withdrawn from bound volume* (Oct. 1, 2014) *and aff'd sub nom. United States ex rel. Parikh v. Brown*, 587 Fed. App'x. 123 (5th Cir. 2014) ....... 26, 28, 30, 34; App'x A, p. 8

*United States ex rel. Patel v. Catholic Health Initiatives*,
312 F. Supp. 3d 584 (S.D. Tex. 2018), *appeal docketed*, No. 18-20395 (5th Cir. June 21, 2018) ..................................................... 49

*United States ex rel. Raymer v. Univ. of Chicago Hosp.*,
No. 03C806, 2006 WL 516577 (N.D. Ill. Feb. 28, 2006) ............................ 20

*United States ex rel. Reagan v. East Tex. Med. Ctr. Reg. Healthcare Sys.*,
274 F. Supp. 2d 824 (S.D. Tex. 2003) ........................................... 37

*United States ex rel. Ruscher v. Omnicare, Inc., et al.* (*Ruscher I*),
No. 4:08-cv-3396, 2014 WL 2618158 (S.D. Tex. June 12, 2014)................ 33

*United States ex rel. Ruscher v. Omnicare, Inc.* (*Ruscher II*),
No. 4:08-CV-3396, 2015 WL 5178074 (S.D. Tex. Sept. 3, 2015), *aff'd sub nom. United States ex rel. Ruscher v. Omnicare, Inc.*, 663 F. App'x 368 (5th Cir. 2016) ................................................. 14

*United States ex rel. Ruscher v. Omnicare, Inc., et al.* (*Ruscher III*), 663 F. App'x 368 (5th Cir. 2016).................................... 14, 24

*United States ex rel. Stewart v. The La. Clinic*,
No. 99-1767, 2002 WL 257690 (E.D. La. Feb. 22, 2002) ........................... 20

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899 (5th Cir. 1997) .................................... 12; App'x A, p. 12

*United States ex rel. Westbrook v. Navistar, Inc.*,
No. 3:10-CV-1578-O, 2012 WL 10649207 (N.D. Tex. July 11, 2012) ........................................................ 37, 38

*United States ex rel. Willard v. Humana Health Plan of Tex., Inc.,*
  336 F.3d 375 (5th Cir. 2003)........................................................ 50

*United States v. Abundant Life Therapeutics Servs. Texas, LLC,*
  No. 18-773, 2019 WL 1930274 (S.D. Tex. Apr. 30, 2019) .................... 48, 49

*United States v. McClatchey,*
  217 F.3d 823 (10th Cir. 2000)...................................................... 14

*Universal Health Servs., Inc. v. United States ex rel. Escobar,*
  136 S. Ct. 1989 (2016)............................................................ 12, 13

*Vermont Agency of Nat. Resources v. United States ex rel. Stevens,*
  529 U.S. 765 (2000)................................................................ 7, 40

*Williams v. WMX Tech., Inc.,*
  112 F.3d 175 (5th Cir. 1997)......................................................... 12

## Statutes

28 U.S.C. § 1367(c)(3) ............................................................ 8, 49

31 U.S.C. § 3729 ...................................................................... 9

31 U.S.C. § 3729(a)(1)(A) ............................................ 3, 16, 26; App'x A, p. 15

31 U.S.C. § 3729(a)(1)(B) ........................................................ 3, 16

31 U.S.C. § 3729(a)(1)(G) .......................................... 26; App'x A, p. 15

31 U.S.C. § 3729(a)(3) ........................................................... 37, 38

31 U.S.C. § 3729(b)(1) .............................................................. 18

42 U.S.C. § 1320a–7b ................................................................. 9

42 U.S.C. § 1320a–7b(b) .................................................... App'x A, p. 8

42 U.S.C. § 1320a–7b(b)(1) ......................................................... 35

42 U.S.C. § 1320a–7b(b)(2) .................................................. 13, 30, 35

42 U.S.C. § 1395nn .............................................................. 9, 27

42 U.S.C. § 1395nn(a) ........................................................... 13, 29

42 U.S.C. § 1395nn(a)(1)...................................................... App'x A, p. 8

42 U.S.C. § 1395nn(a)(2) ......................................................... 28

42 U.S.C. § 1395nn(h)(6) ......................................................... 13

42 U.S.C. § 1395nn(h)(1)(A) .................................................... 28

22 Tex. Admin. Code § 177.17 .................................................. 23

25 Tex. Admin Code § 133.2 .............................................. App'x A, p. 4

25 Tex. Admin. Code § 133.41 ........................................... App'x A, p. 4

Tex. Educ. Code § 61.092 ........................................... 40, 42, 43, 44

Tex. Educ. Code § 61.002 ......................................................... 45

Tex. Health & Safety Code § 312.002(6) .................................. 42, 44

Tex. Health & Safety Code § 312.003 ........................................ 44

Tex. Health & Safety Code § 312.007(a) ................................... 7, 40

Tex. Hum. Resource Code § 36.116 .......................................... 47

Tex. Occ. Code §§ 155.001, 155.003, 157.001, 164.052(a)(8), (13), 165.156 ....................................................................... 24

Tex. Occ. Code §§ 155.002 ............................................. App'x A, p. 4

**Rules**

Fed. R. Civ. P. 8(a)(2) ............................................................. 11

Fed. R. Civ. P. 9(b) ........................................................... *passim*

Fed. R. Civ. P. 12(b)(1) .................................................... 1, 7, 41

Fed. R. Civ. P. 12(b)(6) ....................... 1, 7, 8, 11, 16, 25, 26, 32, 41

**Regulations**

42 C.F.R. § 411.351 ............................................................... 27

42 C.F.R. § 411.353 ........................................................... 13, 29

**Other Authorities**

Medicare and Medicaid Programs: Fraud and Abuse OIG Anti-
Kickback Provisions, 54 Fed. Reg. 3088-01, 3089, 3093 (Jan.
23, 1989) ....................................................................... 14

THECB's report of Contracts Executed by the Agency Over $1
Million, http://www.thecb.state.tx.us/DocID/PDF/12730.PDF
(July 19, 2019 – September 17, 2019).................................... 43, 44

## PROVIDER DEFENDANTS' CONSOLIDATED MOTION TO DISMISS RELATOR'S SECOND AMENDED COMPLAINT

The Provider Defendants request that the Court dismiss all of Relator's claims under Rule 12(b)(6) and 12(b)(1) and Rule 9 of the Federal Rules of Civil Procedure.  Relator fails to state a claim upon which relief may be granted under Rule 12(b)(6) and fails to plead fraud with a sufficient level of particularity as required by Rule 9(b).

This motion to dismiss is brought by the Defendants who are either physicians, physician groups, or a medical school and its affiliates. Specifically, the movants here (collectively referred to as the "Provider Defendants") include:

1.     Baylor College of Medicine and Baylor Medcare (referred to in the SAC as Medcare Baylor) (together "BCM"), Bone and Joint Clinic of Houston, Greater Houston Gastroenterology, Houston Thyroid & Endocrine Specialists, Kidney Associates, Kidney and Hypertension Consultants, Leachman Cardiology Associates, Pulmonary Critical Care & Sleep Medicine Consultants, Surgical Associates of Texas, Texas Endocrinology Group, and The Center for ENT (together, the "Physician Group Defendants"); and

2.     Cristina Boccalandro, M.D., Lazaro Cherem, M.D., Alberto Colamar, M.D., Carl Dahlberg, M.D., Brian Douglas, M.D., Fareed Elhaj, M.D., Irving Fishman, M.D., Alan Hoffman, M.D., Richard Hung, M.D., Medhavi

Jogi, M.D., Marcia Katz, M.D., Zvonimir Krajcer, M.D., Dewitt Leachman, M.D., James Livesay, M.D., Alberto Lopez, M.D., Andres Mesa, M.D., Ron Moses, M.D., Isaac Raijman, M.D., Jose Fernando Santacruz, M.D., Navneet Singh, M.D., and Ramachandra Sista, M.D. (together, the "Physician Defendants").

Defendants Catholic Health Initiatives ("CHI") and Catholic Health Initiatives St. Luke's Health ("CHI-St. Luke's") (together, the "CHI Defendants") are filing a separate Motion to Dismiss and do not join here.

If granted, this motion will dispose of all claims Relator asserts against these Provider Defendants in his Second Amended Complaint ("SAC"). Dkt. 271.

## I.  STATEMENT OF FACTS AND SUMMARY OF ARGUMENT

Relator's rambling narrative of alleged wrongs is completely devoid of the typical allegations in a False Claims Act qui tam case—details of actual claims, facts demonstrating defendants' actual participation in a fraudulent scheme, and the "who, what, when, where, and how" of the alleged fraud. Instead, Relator's Complaint is hopelessly vague, unclear, and imprecise. Relator's claims against the Provider Defendants are precisely the type that the Federal Rules bar:  thin and contradictory factual allegations combined with a formulaic recitation of legal requirements.  *See generally* SAC ¶¶ 268-302.  Relator's FCA claims against the Provider Defendants must be dismissed

because the SAC does not allege any facts which plausibly demonstrate that any of the Provider Defendants submitted or caused to be submitted any false claims to the Government or participated in a scheme to defraud the Government.

Relator opaquely asserts that the Provider Defendants were involved in a fraudulent scheme where the CHI Defendants, through the International Services Department ("ISD") at Baylor St. Luke's Medical Center ("BSLMC"), which is not a defendant in this case, referred wealthy international patients and provided certain administrative support services for those patients to a number of physicians, including to some of the Provider Defendants.  Relator then alleges that, after receiving those referrals, the Provider Defendants referred their Medicare and Medicaid patients to BSLMC, in violation of the Stark Law and Anti-Kickback Statute ("AKS"), causing false claims to be submitted to the Government, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A) or (B), (the "FCA").  SAC ¶¶ 3, 184-191.

Relator has not adequately pleaded the essential elements of an FCA claim under 31 U.S.C. § 3729(a)(1)(A) or (B).  Most obviously, Relator has failed to allege facts establishing that any Provider Defendant had the requisite ***knowledge*** of a purported scheme to defraud the Government.  He generally alleges that the CHI Defendants instructed their own employees in the ISD to refer international patients to the Provider Defendants based on the volume of

Medicare and Medicaid patients they referred back to BSLMC, and that the ISD kept referral records and rosters.  But Relator fails to allege that any of the Provider Defendants knew about these instructions or records.

Relator claims that the Provider Defendants should have known they were expected to refer their Medicare and Medicaid patients to BSLMC merely because of the volume of international patients and other services the ISD sent to the Provider Defendants.  But Relator fails to plead that any Provider Defendant was aware of the total volume of international patients or accompanying services or that the frequency, volume, or value of benefits flowing from the CHI Defendants to the Provider Defendants was so large that the scheme must have been obvious.  And Relator fails to explain how a referral of an international patient from the ISD standing alone would have notified the Provider Defendants of any expectation that they would refer Medicare and Medicaid patients back to the CHI Defendants or BSLMC.  Notably, in Texas, the Corporate Practice of Medicine Doctrine prohibits the CHI Defendants and BSLMC from employing physician specialists or physician groups, like the Provider Defendants, so the CHI Defendants and BSLMC must refer patients to physicians like Provider Defendants in order for those patients to receive health care services—which is precisely what the ISD did.  Relator's failure to plead any facts showing the Provider Defendants had knowledge of this

purported scheme is fatal to his allegations that the Provider Defendants submitted or caused to be submitted any ***false*** claims.

In addition, Relator's FCA claims are predicated on an alleged Stark Law and AKS violation, yet he does not and cannot plead facts to support that the Provider Defendants violated either statute.  First, Relator fails to plead that any of the named Provider Defendants is a physician who had a financial relationship with any entity providing designated health services, a fundamental element required by the Stark Law.  In particular, as a matter of law, the Physician Group Defendants cannot violate the Stark Law based on the conduct Relator has alleged, because they do not refer patients, as they are not physicians.  Likewise, Relator has failed to allege an improper financial relationship between any of the Physician Defendants and any of the CHI Defendants or BSLMC, and he has failed to allege any facts showing that any Physician Defendant made even one prohibited referral to the CHI Defendants or BSLMC that was then paid for by Medicare or Medicaid.

Second, Relator fails to allege that any of the Provider Defendants accepted any purported remuneration in exchange for or as an inducement for referrals back to the CHI Defendants.  There are no facts to support any *quid pro quo* arrangement between any Provider Defendant and the CHI Defendants in violation of the AKS.

Additionally, Relator fails to plead facts sufficient to support a conspiracy claim under the FCA, because he fails to plead the essential elements of a conspiracy claim:  (1) that there was an unlawful agreement between the Defendants to get the government to pay a false or fraudulent claim; and (2) that there was at least one act in furtherance of the conspiracy. *See United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (quoting *United States ex rel. Farmer v. City of Hous.*, 523 F.3d 333, 343 (5th Cir. 2008)).  As noted, Relator fails to plead that any Provider Defendant had knowledge of this purported scheme.  This failure also undercuts his allegations that any Provider Defendant conspired to defraud the government. In other words, the Provider Defendants could not have agreed to join a scheme of which they were not even aware.  The SAC is devoid of facts about meetings, phone calls, emails, or any other communications evincing that any Provider Defendant entered into an unlawful agreement.

Likewise, the Relator fails to allege that any particular Provider Defendant acted to carry out a conspiracy.  He only references a single physician calling and asking the ISD to schedule an international patient for blood tests.  But because Relator has wholly failed to allege that this physician or any other Provider Defendant had any knowledge about any scheme or conspiracy, this single phone call cannot be viewed as an act in furtherance. Because Relator has wholly failed to plead facts to support a claim that any

Provider Defendant conspired to or participated in a scheme to defraud the government, these vague allegations must be dismissed for failing to specifically link any Provider Defendant to the alleged conspiracy.

Relator's allegations as to BCM fail for an additional, independent reason: BCM has immunity from the FCA claims as an arm of the state. *See* TEX. HEALTH & SAFETY CODE § 312.007(a) (a "medical and dental unit, *supported medical or dental school, or coordinating entity is a state agency*") (emphasis added); *Klein v. Hernandez*, 315 S.W.3d at 5, 7 (Tex. 2010) (stating that *"[u]nder this section, a supported medical school, like Baylor, is a state agency*") (emphasis added). Thus, Relator's FCA claims cannot proceed against BCM and are subject to dismissal under both Rules 12(b)(6) and 12(b)(1). *See Vermont Agency of Nat. Resources v. United States ex rel. Stevens,* 529 U.S. 765, 787-88 (2000); *see also Richardson v. S. Univ.*, 118 F.3d 450, 452 (5th Cir. 1997) ("A plaintiff cannot avoid the sovereign immunity bar by suing a state agency or an arm of a State rather than the State itself.").

Finally, none of Relator's claims under the Texas Medicaid Fraud Prevention Act ("TMFPA") are pled with the degree of particularity required by Rule 9(b) or 12(b)(6). The TMFPA is modeled after the federal statute; consequently, when a relator fails to state a claim under the federal statute, courts often dismiss the TMFPA state law claims. Here, Relator failed to adequately plead a TMFPA violation, because, like her FCA claims, Relator

failed to allege with particularity that, *inter alia*, the defendants knowingly submitted or caused to be submitted a false claim to the Texas Medicaid program.  *See* Tex. Hum. Res. Code § 36.002.  Thus, her TMFPA claims fail under Rules 12(b)(6) and 9(b).  Alternatively, the Provider Defendants request that the Court decline to exercise supplemental jurisdiction over Relator's remaining TMFPA state law claims.  *See, e.g.*, *Heggemeier v. Caldwell Cnty, Tex.*, 826 F.3d 861, 872-73 (5th Cir. 2016) (quoting *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.,* 554 F.3d 595, 599 (5th Cir. 2009)) (affirming dismissal of pendant state-law claims under 28 U.S.C. § 1367(c)(3) and acknowledging the Fifth Circuit's general rule that "a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial"); *see also United States ex rel. Edgett v. Kimberly-Clark Corp.*, No. 3:15-CV-0434-B, 2017 WL 4222697, at *5 (N.D. Tex. Sept. 22, 2017) (declining to exercise jurisdiction over state FCA claims after dismissing all federal FCA claims).  Should this Court decline to dismiss or exercise supplemental jurisdiction over Relator's claims under the TMFPA, and dismiss them without prejudice, Relator would have the opportunity to pursue his TMFPA claims against Provider Defendants in Texas state court.

Relator has had three opportunities to adequately plead his claims, and has failed each time.  Any further amendment would be futile.  Accordingly, his FCA claims should be dismissed with prejudice.

## II.     <u>NATURE AND STAGE OF THE PROCEEDING</u>

On January 12, 2018, Relator, a former International Patient Representative at BSLMC, filed this lawsuit against the Provider Defendants and the CHI Defendants under the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.*, alleging that the Provider Defendants and the CHI Defendants carried out a scheme to violate the federal physician self-referral law known as the Stark Law, 42 U.S.C. § 1395nn, and the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b ("AKS"), which purportedly resulted in the submission of false claims to government programs.

Relator generally alleges that Defendants collectively executed and participated in a scheme to defraud the federal government and Plaintiff-States whereby the CHI Defendants would purportedly refer wealthy international patients and provide administrative services – such as free scheduling, billing, collection, and translation services – to private medical practices and practitioners in exchange for those private physicians' referral of Medicare and Medicaid patients to CHI St. Luke's for designated health services under the Stark Law.  SAC ¶ 3.

On August 15, 2018, after eight months of investigation, the federal government declined to intervene, and Relator's Original Complaint was unsealed.  Dkt. 3.  Relator filed his Amended Complaint on January 9, 2019, and the Defendants were subsequently served on January 18, 2019.  After the

Defendants filed Motions to Dismiss the Amended Complaint, Relator filed a Motion to Amend the Pleadings, Dkt. 191, attaching his Proposed SAC, Dkt. 191-1.  At the Status Conference held on December 4, 2019, the Court granted Relator's Motion to Amend the Pleadings, making the Proposed SAC the operative Complaint.  *See* Text Order (Dec. 4, 2019).  Relator filed the SAC on July 8, 2020.  Dkt. 273.

## III.   **STATEMENT OF ISSUES**

1.      Whether the SAC should be dismissed as to the Provider Defendants because the SAC alleges no facts or details to show that they knew or should have known about the purported scheme to submit false claims or defraud the Government.

2.      Whether the SAC should be dismissed as to the Provider Defendants because the SAC alleges no facts or details to show that they violated the Stark Law or the AKS, which then resulted in the submission of false claims to the government in violation of the FCA.

3.      Whether the SAC should be dismissed as to the Provider Defendants because the SAC alleges no facts sufficient to show that any Provider Defendant conspired to defraud the Government.

4.      Whether Defendant BCM, as an arm of the state, has immunity from Relator's FCA claims.

5.     Whether the Court should dismiss the state law claims or, alternatively, decline to exercise supplemental jurisdiction over the state law claims.

6.     Whether dismissal should be with prejudice, because this is Relator's third failed attempt to adequately plead an FCA violation, and amendment would be futile.

## IV.   <u>STANDARD OF REVIEW</u>

### A.   **Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Dismissal is appropriate where a complaint lacks an allegation regarding a required element necessary to obtain relief.  *See Campbell v. City of San Antonio*, 43 F. 3d 973, 975 (5th Cir. 1995) (internal quotations omitted).

### B.   **Federal Rule of Civil Procedure 9(b)**

In general, a complaint need only state "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). But, under Rule 9(b), the circumstance constituting fraud or mistake must be stated with particularity.  Fed. R. Civ. P. 9(b).  Because FCA claims involve

fraudulent conduct, Rule 9(b)'s heightened pleading requirements apply. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2004 n.6 (2016); s*ee, e.g., Grubbs*, 565 F.3d at 185; *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997). The heightened standard applies equally to conspiracy charges brought under the FCA. *Grubbs*, 565 F.3d at 193 (quoting *Farmer*, 523 F.3d at 343). Therefore, at a minimum, a relator must plead the "who, what, when, where, and how" of the alleged fraud. *Thompson*, 125 F.3d at 903; *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997). Moreover, a relator must satisfy Rule 9(b)'s requirements with respect to **each individual** defendant. *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986).

## V.   <u>APPLICABLE LAW</u>

### A.   The False Claims Act

In the Fifth Circuit, the necessary elements of an FCA action are: "(1) [that] 'there was a *false* statement or *fraudulent* course of conduct; (2) made or carried out with the *requisite scienter*; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim).'" *United States ex rel. Longhi v. United States*, 575 F.3d 458, 467 (5th Cir. 2009) (internal citation omitted); *see also United States ex rel. Integra Med Analytics, LLC v. Baylor Scott & White Health*, No. 5:17-cv-886-DAE, 2019 WL 3713756, at \*3 (W.D. Tex. Aug. 5, 2019) (*Integra Med I*),

*aff'd*, No. 19-50818, 2020 WL 2787652 (5th Cir. May 28, 2020) (*Integra Med II*) (citing same).  The FCA is not "an all-purpose antifraud statute" nor "a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Escobar*, 136 S. Ct. at 2002-03.

## B.     The Stark Law

The federal Physician Self-Referral Law (commonly known as the "Stark Law") prohibits a "physician" who has a "financial relationship" with an entity from referring Medicare patients to that entity for "designated health services" ("DHS"), which includes both inpatient and outpatient services, paid for by Medicare, and prohibits that entity from billing Medicare for DHS provided as a result of the forbidden referrals, unless the financial relationship meets one of the recognized Stark Law exceptions.  *See* 42 U.S.C. § 1395nn(a), (h)(6); 42 C.F.R. § 411.353.

## C.     The Anti-Kickback Statute

The AKS prohibits "knowingly and willfully solicit[ing] or receiv[ing] any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person . . . to refer an individual to a person for the furnishing . . . of any item or service for which payment may be made in whole or in part under a Federal health care program."  42 U.S.C. § 1320a-7b(b)(2).  "The elements of the AKS violation must also be pleaded with particularity under Rule 9(b), because they are

brought as a FCA claim." *United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 894 (5th Cir. 2013) (citing *United States ex rel. Bennett v. Medtronic, Inc.*, 747 F. Supp. 2d 745, 762–63 (S.D. Tex. 2010)).

The AKS is not intended to prevent health care businesses from "freely engag[ing] in business practices and arrangements that encourage competition, innovation and economy." Medicare and Medicaid Programs: Fraud and Abuse OIG Anti-Kickback Provisions, 54 Fed. Reg. 3088-01, 3089, 3093 (Jan. 23, 1989).  And there is a difference between showing a "bad purpose" as opposed to a "business-minded[] desire to maintain good customer relations." *United States ex rel. Ruscher v. Omnicare, Inc.*, (*Ruscher II*) No. 4:08-CV-3396, 2015 WL 5178074, at *23 (S.D. Tex. Sept. 3, 2015) (Ellison, J.), *aff'd sub nom. United States ex rel. Ruscher v. Omnicare, Inc.*, (*Ruscher III*) 663 F. App'x 368 (5th Cir. 2016).  Moreover, "[t]here is no AKS violation . . . where the defendant merely hopes or expects referrals from benefits that were designed wholly for other purposes." *See Ruscher III*, 663 F. App'x at 374 (citing *United States v. McClatchey*, 217 F.3d 823, 834 (10th Cir. 2000)).

## VI.   <u>ARGUMENT</u>

The SAC should be dismissed in its entirety for multiple, independent reasons.

First, Relator fails to allege any facts to establish that any Provider Defendant had knowledge of a purported scheme to defraud the Government.

Second, Relator fails to plead with particularity facts to support the allegation that any Provider Defendant violated the Stark Law or the AKS, resulting in the submission of false claims to the Government. The Complaint is devoid of any facts to show that any Provider Defendant had a financial relationship with the CHI Defendants which resulted in an unlawful self-referral in violation of the Stark Law or received international patients and accompanying services as a form of kickbacks in exchange for referring Medicare patients to the CHI Defendants. Falling well-short of the Rule 9(b) pleading standard, Relator fails to plead even one instance of a false claim that was submitted by any Provider Defendant as a result of the alleged fraudulent scheme or the "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Grubbs*, 565 F.3d at 190. Relator does not describe with particularity "the who, what, when, where, and how" of the alleged fraudulent scheme, let alone link any of the Provider Defendants to it, and instead simply lumps the Provider Defendants in, summarily describing them as the "referring physicians and practices that participated in this kickback scheme[.]" SAC ¶ 7.

Third, Relator fails to plead facts sufficient to support an allegation that any Provider Defendant conspired to defraud the government, because he has

not pleaded facts relating to either of the two essential elements of an FCA conspiracy claim.

Fourth, Defendant BCM has immunity from Relator's claims, since BCM is an arm of the state, and, therefore, the claims against BCM should be dismissed on that basis as well.

Finally, the Court should dismiss Relator's TMFPA claims because, like Relator's allegations under the FCA, Relator's allegations under the TMFPA do not meet the requirements under Rules 12(b)(6) and 9(b).  Because Relator has made three attempts to plead his claims and been unsuccessful, any further amendment would be futile.  Accordingly, all of Relator's claims should be dismissed with prejudice.

### A. Relator Fails to Plead an FCA Claim under 31 U.S.C. § 3729(a)(1)(A) or (B).

Relator's SAC should be dismissed for failure to plead an FCA claim under 31 U.S.C. § 3729(a)(1)(A) or (B), because it does not plausibly plead that any Provider Defendant had knowledge of a scheme to defraud the government and does not identify any false claim actually submitted to the government. Relator also fails to plead with particularity the "the who, what, when, where, and how" of the alleged fraudulent scheme or false claim, as required by Rule 9(b).  *Grubbs*, 565 F.3d at 190-91 (requiring that an FCA complaint identify either "an actually submitted false claim" or "both an alleged scheme to submit false claims and details leading to a strong inference that those claims were

submitted."). Relator falls far short of satisfying either of the *Grubbs* tests. At most, the SAC describes the existence of a program intended to ensure international patients seeking services from a hospital also receive medically necessary health care services from physician specialists in the Houston community.

Relator's allegations that the Defendants violated the FCA by participating in a fraudulent scheme to submit false claims are predicated on an allegation that the Defendants violated the Stark Law and AKS but falsely certified that they were compliant on a claim for payment submitted to the Government. But Relator fails to allege facts showing that any Provider Defendant (1) had knowledge about the purported scheme to defraud the government, or (2) violated the Stark Law or AKS or submitted any false claims.

> 1. The SAC Fails to Show that Any Provider Defendant Had Knowledge about the Alleged Scheme.

Fatal to Relator's claims against the Provider Defendants is his failure to allege any facts to support that any of the Provider Defendants knew or should have known they were participating in a purported scheme to defraud the government—that they were receiving referrals of international patients in exchange for a return promise to refer Medicare and Medicaid patients to the hospital in violation of the Stark Law, the AKS, and the FCA. *See* SAC ¶ 180.

To allege the requisite scienter for an FCA claim, a relator must adequately plead that a defendant:  "(1) had actual knowledge of falsity; (2) acted with deliberate ignorance of the truth or falsity of the information provided; or (3) acted with reckless disregard of the truth or falsity of the information provided." *Longhi*, 575 F.3d at 468 (5th Cir. 2009); *see also* 31 U.S.C. § 3729(b)(1) (defining "knowingly" as actual knowledge, deliberate ignorance, or reckless disregard).  Thus, to support an FCA violation, it is insufficient for a complaint merely to allege a scheme.  It must allege that the "scheme was to submit *false* claims," which requires that the Provider Defendants have the requisite scienter to participate in the scheme to submit those claims.  *Integra Med I*, 2019 WL 3713756, at *4 (emphasis in original).  The SAC fails to do so.

> *a.*   The SAC fails to assert facts that show that the Provider Defendants had actual knowledge of a purported scheme.

Relator offers nothing more than conclusory statements and opinions to support his accusation that any Provider Defendant had actual knowledge of any purported scheme.  For example, Relator asserts that the Provider Defendants "knowingly and willfully received and accepted remuneration [including the referrals and additional services] from the [CHI] Defendants that they understood was provided to induce referrals of their Medicare and Medicaid patients to BSLMC[,]" SAC ¶ 271, and that they "had and expected

to continue to receive illegal remuneration through the ISD in violation of the AKS and the Stark laws," SAC ¶ 180; *see also* SAC ¶¶ 23-39.  But Relator does not allege any specific facts to show that the Provider Defendants did know about the alleged scheme or had any expectations of receiving "illegal remuneration"—including what the alleged remuneration was.

Relator's only allegations regarding knowledge and conduct are specific to the CHI Defendants.  Relator alleges that the CHI Defendants "rate and remunerate physicians based on the number of Medicare and Medicaid referrals they provide," and provides some additional scant information regarding instructions he and other ISD staff received (1) to refer international patients to those physicians who referred high numbers of Medicare and Medicaid patients to BSLMC and (2) to steer away from referring international patients to those physicians who referred low numbers or who referred their Medicare and Medicaid patients elsewhere.  *See generally*, SAC ¶¶ 150-163.  Yet, Relator never ties the CHI Defendants' alleged conduct and knowledge to any of the Provider Defendants' conduct or knowledge.

Relator does not identify a single actor or instance where any Provider Defendant was told about the alleged scheme or even that they were aware of facts that should have put them on notice of the alleged scheme.  A company's scienter for FCA purposes can be proven only by demonstrating that a ***particular employee or officer acted knowingly***.  *See In re Capstead*

*Mortg. Corp. Sec. Litig.*, 258 F. Supp. 2d 533, 561-62 (N.D. Tex. 2003) (emphasis added) (holding that plaintiffs failed to satisfy Rule 9(b) where they attributed false statements to a corporation without identifying a particular officer or director responsible for making the statement); *United States ex rel. Stewart v. The La. Clinic*, No. 99-1767, 2002 WL 257690, at *5 (E.D. La. Feb. 22, 2002) (dismissing a complaint with a "blanket allegation" of fraud without identifying specific participants as required by Rule 9(b)); *see also United States ex rel. Raymer v. Univ. of Chicago Hosp.*, No. 03C806, 2006 WL 516577, at *6 (N.D. Ill. Feb. 28, 2006) (noting that relator, who had worked with defendants, "should be capable, at a minimum, of identifying the titles or positions of those responsible superiors and perhaps others" who participated in the alleged fraud).

Relator alleges that each Provider Defendant was a "referring . . . practice[]," a "referring physician[]," or on CHI's "referral roster," SAC ¶¶ 7, 23-39. But these are not facts about the Provider Defendants' supposed knowledge of the scheme, and Relator never provides any facts or details to suggest that the CHI Defendants communicated with any Provider Defendant about the rating system, referral roster, or instructions to ISD staff.

In *Integra Med I*, the court granted a motion to dismiss, finding that although the relator described a scheme, his claims failed because he did not describe a scheme to defraud the Government.  *Id.* at *3, 4, 6.  The Court

specifically noted that the relator did not allege that any doctors were told to provide treatment that was not justified by the doctors' independent opinions. *Id.* at \*5, 6. Thus, the relator alleged no facts that would impute knowledge to the doctors that they were participating in a fraudulent scheme. Likewise here, Relator fails to assert any facts to show that the Provider Defendants had any knowledge about the purported scheme.

Like the *Integra Med I* complaint, the SAC may at best describe a purported but unilateral plan by the CHI Defendants to refer "lucrative" international patients to the Provider Defendants and sometimes provide accompanying services, but it falls short of describing a scheme in which the Provider Defendants knowingly participated.

> *b.* The SAC fails to assert facts to show that the Provider Defendants were deliberately ignorant of or recklessly disregarded information about the purported scheme.

Relator also fails to adequately allege that any Provider Defendant acted in deliberate ignorance or reckless disregard of the truth or falsity of any alleged claims. Relator alleges that the "extensive volume, high frequency, and significant value of remuneration coming from the ISD made it obvious and apparent" to the Provider Defendants that the CHI Defendants referred international patients to the Provider Defendants, and sometimes provided accompanying services, in exchange for the Provider Defendants referring their Medicare and Medicaid patients to BSLMC. SAC ¶ 282.

- 21 -

But besides this conclusory allegation, which the Court does not need to credit, *Iqbal*, 556 U.S. at 678, Relator does not plead that there was a large frequency, volume, or value of benefits flowing from the CHI Defendants to the Provider Defendants.  In fact, for the five-year period at issue, Relator alleges only a handful of "perks" for each of the Provider Defendants (except for Dr. Sista and Dr. Leachman, for whom he alleges none).  *See* SAC ¶¶ 23-39, 201, 250, 259-267; Dkt. Nos. 273-5, 273-7, and 273-14, SAC Exs. 5, 7 and 13; Chart of SAC References to Provider Defendants, Appendix A.  Such de minimis benefits can hardly be seen as putting any or all of the Provider Defendants on notice that they were receiving these benefits in return for referring their Medicare and Medicaid patients to the CHI Defendants and BSLMC.

Even assuming that the frequency, volume, and value of referrals could substitute for evidence of such knowledge, Relator fails to allege specific facts to show that the Provider Defendants were aware of the volume or otherwise understood that the frequency and volume of international patient referrals or provision of services from BSLMC were tied to reciprocal referrals of Medicare and Medicaid patients from the Provider Defendants.  Relator states that BSLMC kept rosters of this information for referral purposes, *see* SAC ¶ 39, but, as explained above, nowhere does he allege that the Provider Defendants were aware of these rosters.  Relator thus fails to allege the Provider

Defendants even had general knowledge of any alleged scheme to induce them to refer their patients to BSLMC.

Relator suggests that the Provider Defendants should have known about this scheme, because BSLMC could have—and should have—instead referred its ISD patients to "in-house physicians." SAC ¶ 194. But that is impossible in Texas, because BSLMC does not employ in-house physicians, and it is not legally permitted to do so. The Texas Corporate Practice of Medicine Doctrine prohibits Texas hospitals like BSLMC from employing physician specialists and physician groups like the Provider Defendants. *See* TEX. OCC. CODE §§ 155.001, 155.003, 157.001, 164.052(a)(8), (13), 165.156; 22 TEX. ADMIN. CODE § 177.17 (listing exceptions to the Corporate Practice of Medicine Doctrine, none of which is applicable to the CHI Defendant hospitals or BSLMC). Thus, Relator's own theory of constructive notice falls apart. Simply receiving referrals of international patients from the ISD would never have put the Provider Defendants on notice that they were expected to refer their Medicare and Medicaid patients back to BSLMC.

Relator does not even attempt to explain how the referral of international patients standing on its own was an indicator to any Provider Defendant that he or she was required to refer Medicare or Medicaid patients to the CHI Defendants in return. And, under the facts alleged, it is equally plausible that the CHI Defendants provided the services to the Provider

- 23 -

Defendants in the hopes of receiving referrals without ever discussing their intentions with the Provider Defendants. A mere hope or expectation for referrals is not a violation of the AKS.  *See Ruscher III*, 663 F. App'x at 375 ("There is no AKS violation, however, where the defendant merely hopes or expects referrals from benefits that were designed wholly for other purposes.") (internal citation omitted).   Relator cannot rely on mere speculation to establish that the Provider Defendants knew or understood that referrals of a few international patients and provisions of a handful of other services were intended to induce the Provider Defendants to refer Medicare or Medicaid patients to the CHI Defendants. He must assert facts to support these allegations. *Ruscher III*, 663 F. App'x at 375 (affirming the district court's order granting a motion for summary judgment, and finding that, although the pharmacy provider may have hoped for referrals from the skilled nursing facilities, there was no evidence that the skilled nursing facilities were told they were getting any special benefits, "let alone that any benefits were tied to Medicare and Medicaid referrals."); *Integra Med I*, 2019 WL 3713756, at *4-5 (granting motion to dismiss where the alleged scheme was equally consistent with legal conduct); *see also Integra Med II*, 2020 WL 2787652, at *5-6 (affirming the lower court's dismissal and holding that Integra Med failed "to plead particular details of a scheme to defraud Medicare" and that the allegations were "also consistent with a legal and 'obvious alternative

explanation.'") (citation omitted).  With no plausible or particular allegations that the Provider Defendants knew of any purported connection between the international patients the ISD referred to them and the Provider Defendants' referrals of Medicare and Medicaid patients to BSLMC, Relator fails to plead the Provider Defendants participated in or had knowledge of a scheme to submit false claims or defraud the government.

Since the SAC is devoid of any facts alleging that the Provider Defendants knew or should have known the referrals of international patients were in return for the Provider Defendants' referrals of Medicare and Medicaid patients to BSLMC, and since it is devoid of any facts alleging the Provider Defendants even knew the purported scheme existed, Relator cannot support his FCA claims against them.

2. <u>Relator Fails to Plead that Any False Claims Were Submitted.</u>

A second, independent reason that Relator's FCA claims fail is because he fails to allege that any of the Provider Defendants violated the Stark Law or AKS, leading to the submission of false claims, which is the *sine non qua* of an FCA case.  Rather than alleging facts to show that even one false claim was submitted as a result of the purported scheme, Relator relies on pure speculation and belief, which are insufficient to state a claim upon which relief can be granted under Rule 12(b)(6).

Relator's claims against the Provider Defendants are based on the tenuous assertion that these defendants caused the CHI Defendants to violate § 3729(a)(1)(A) and § 3729(a)(1)(G) through referrals to BSLMC.   In order to defeat a 12(b)(6) challenge, however, the relator must plead reliable indicia that claims were actually submitted pursuant to the overarching fraudulent scheme. *United States ex rel. Parikh v. Citizens Med. Ctr.*, 977 F. Supp. 2d 654, 665 (S.D. Tex. 2013), *aff'd sub nom United States ex rel. Parikh v. Brown,* 762 F.3d 461 (5th Cir. 2014), *opinion withdrawn and superseded on reh'g,* 587 Fed. App'x. 123 (5th Cir. 2014), *withdrawn from bound volume* (Oct. 1, 2014) *and aff'd sub nom. United States ex rel. Parikh v. Brown,* 587 Fed. App'x. 123 (5th Cir. 2014). A relator must allege that a physician's referral would not have occurred ***but for*** the alleged remuneration and the parties ***must have foreseen*** at the time the remuneration was offered, solicited, paid or received, that such referral would result. *See United States ex rel. Freedman v. Suarez-Hoyos*, No. 8:04-cv-933-T-24 EAJ, 2012 WL 4344199, at *[pincite] (M.D. Fla. Sept. 21, 2012) (referencing the "foreseeability test"). Layered over the top of the substantial factor and foreseeability requirements is the predicate mental state of knowledge. *See* § 3729(a)(1)(A). Thus, Relator must allege that the physician making a referral knew about the scheme, knew the referral was substantially caused by the scheme, and knew at the time the scheme developed that a claim to Medicare was foreseeable.

Relator fails to allege that any referring physician knew about a scheme to exchange Medicare/Medicaid referrals for office services or knowingly made the referral as part of such a scheme.

> a.  Relator fails to plead facts sufficient to show that the Provider Defendants violated the Stark Law.

Relator's claims do not support his conclusory allegations of a Stark Law violation as to any Provider Defendant.  To establish that the Stark Law has been violated, Relator must allege facts with particularity that: (1) *a physician*, (2) made a referral, (3) of a Medicare or Medicaid beneficiary, (4) to an entity, (5) with which *the physician* (or an immediate family member) has a "financial relationship," (6) for "designated health services," (7) unless an exception applies, and (8) that the entity then submitted a claim for payment to a federal healthcare program.  42 U.S.C. § 1395nn (emphasis added).  Relator has failed to allege these essential facts to support his allegations that any Provider Defendant has violated the Stark Law.

First, neither BCM nor any of the Physician Group Defendants is a "physician," and, thus, Relator fails to allege any facts indicating how BCM or any Physician Group Defendant could take any actions, including referring patients, that could violate the Stark Law.  Centers for Medicare & Medicaid Services ("CMS") regulations implementing the Stark Law make clear that a referral is a "request" for goods or services "by a physician."  42 C.F.R. § 411.351.  Relator, however, cannot establish that BCM or any Physician

Group Defendant "referred" any patients to the CHI Defendants under the Stark Law, because neither BCM nor any Physician Group Defendant itself is a physician.

In addition, Relator fails to assert that there was a financial relationship between any Provider Defendant and the CHI Defendants. The Stark Law defines a "financial relationship" as either: (1) an ownership or investment interest in the entity; or (2) a compensation arrangement between the physician and the entity. 42 U.S.C. § 1395nn(a)(2). A "compensation arrangement" is defined as "any arrangement involving any remuneration between a physician (or immediate family member of such physician) and an entity other than an arrangement involving only remuneration described in subparagraph (C)." 42 U.S.C. § 1395nn(h)(1)(A); *Parikh*, 977 F. Supp. 2d at 668 (holding that to allege a Stark Law violation, relators must plead facts to support the existence of "financial relationships and referrals giving rise to Stark liability.").

Relator has not alleged any ownership interest by any Provider Defendant in the CHI Defendants. His only attempt to allege this is his statement that BCM is a part-owner, along with CHI-St. Luke's, of BSLMC, a separate, non-party entity. SAC ¶ 39. This is insufficient to establish an ownership interest under the Stark Law. Likewise, Relator cannot establish that there is a "compensation arrangement" between any Physician Group

Defendant and the CHI Defendants, again because none of the Physician Group Defendants is a physician. Relator's allegations lack any semblance of detail or facts regarding how any of the Physician Group Defendants, which are not themselves physicians, would be covered by the Stark Law.

Finally, Relator fails to allege facts sufficient to suggest that any Physician Defendant made any prohibited referrals to the CHI Defendants which were paid for by Medicare or Medicaid as required to establish a Stark Law violation. *See* 42 U.S.C. § 1395nn(a); 42 C.F.R. § 411.353. In fact, throughout his 481-page Second Amended Complaint, Relator only identifies one specific referral to CHI-St. Luke's and BSLMC, from Dr. William Watters of Bone and Joint Clinic of Houston ("BJCH"). SAC ¶¶ 42, 183. But the SAC does not allege that Dr. Watters received any remuneration, knew about the scheme, or conspired with BJCH or any other Provider Defendant to submit false claims. Moreover, Relator admittedly does not know that this referral resulted in any patient services that were billed to Medicare, but can only speculate, claiming only that he has "good reason to believe." That one referral does not implicate any of the Provider Defendants nor is it sufficient to adequately plead a scheme to defraud that involved the Provider Defendants.

Accordingly, Relator's barebones claims premised on Stark Law violations should be dismissed.

> ### b.   Relator fails to plead facts sufficient to show that Provider Defendants violated the AKS.

Relator fails to sufficiently plead that any Provider Defendant made referrals to the CHI Defendants for good or services that were paid for "in whole or in part" by a federal health care program, as required under the AKS. *See* 42 U.S.C. § 1320a–7b(b)(2).   Relator must provide specific details explaining how the Provider Defendants engaged in a scheme that violated the AKS.   *Nunnally*, 519 F. App'x at 894 ("[T]he elements of the AKS violation must also be pleaded with particularity under Rule 9(b), because they are brought as a FCA claim."); *Parikh*, 977 F. Supp. 2d at 671 (holding that relators' allegations against hospitalists "fail to satisfy Rule 9(b)'s specific pleading requirements because they do not provide specific details explaining how the hospitalists are engaged in a scheme that violates the AKS and Stark, and thus the FCA."); *see also United States ex rel. Capshaw v. White*, No. 3:12-CV-4457-N, 2017 WL 3841611, at * 9 (N.D. Tex. Jan. 23, 2017), *appeal docketed*, No. 19-11309 (5th Cir. Dec. 9, 2019) (dismissing relators' AKS and Stark-predicated FCA allegations against defendants in their individual capacities because the claims were "devoid of any factual allegations that [defendants] participated, individually, in" the alleged scheme).   Relator fails to allege (i) facts to support a *quid pro quo* relationship between each Provider Defendant and the CHI Defendants, and (ii) facts to support that each Provider Defendant had the requisite intent to break the law.

(1)   Relator fails to allege that any of the Provider
Defendants had a *quid pro quo* relationship.

Even at the pleading stage, the Fifth Circuit has held that alleging an

AKS violation requires that the Relator "provide reliable indicia that there was

a kickback provided ***in return for*** the referral of patients." *Nunnally*, 519 F.

App'x at 894 (emphasis added); *United States ex rel. Grenadyor v. Ukrainian*

*Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1107 (7th Cir. 2014), *cert. denied,* 136 S.Ct

49 (2015) ("To comply with Rule 9(b) [relator] would have had to allege either

that the pharmacy submitted a claim to Medicare (or Medicaid) on behalf of a

specific patient who had received a kickback, or at least name [an individual]

who had received a kickback").   That is, there must be some connection

between kickbacks, referrals, and claims (*e.g.,* the *quid pro quo*).   *Nunnally*,

519 F. App'x at 894.  Moreover, Relator must provide details about how each

Provider Defendant was specifically involved in an alleged kickback scheme.

*See Capshaw*, 2017 WL 3841611, at * 9 (dismissing relators' AKS and Stark-

predicated FCA allegations against defendants in their individual capacities

because the claims were "devoid of any factual allegations that [defendants]

participated, individually, in" the alleged scheme.).   Yet Relator points to no

evidence that any Provider Defendant referred a Medicare or Medicaid patient

to the CHI Defendant as a result of any particular ISD referral, which in turn

led to a false certification of compliance with the AKS.

As described above in Section A.2.a, the single referral the SAC identifies, which Relator merely "has good reason to believe" was billed to the government through the Medicare Program, SAC ¶ 183, does not implicate any improper action by Bone and Joint Clinic of Houston or Dr. Watters, or any action at all by any other Provider Defendant.   Relator's speculation is insufficient to state a claim upon which relief can be granted under Rule 12(b)(6).

Beyond this reference to a single referral, which cannot be imputed to each or all of the Provider Defendants, Relator merely asserts that "The [CHI] Defendants submitted thousands of claims to Medicare and Medicaid in which the claims were the product of referrals from the Referring Physicians . . . who were receiving kickbacks in violation of the AKS, Stark laws, and § 36.002(13) and § 32.039(b)."   SAC ¶ 181.   He makes additional global and conclusory allegations that each of the Provider Defendants "billed and received money from the government for services to Medicare and/or Medicaid beneficiaries" and that they "regularly chose to refer their [Medicare and Medicaid] patients . . . to the [CHI] Defendants, for inpatient or outpatient services at BSLMC." SAC ¶¶ 41-42.   But Relator must plead that each Provider Defendant made an illegal referral, and he fails to do so.   The SAC does not reference any of the following in regards to each of the individual Provider Defendants: (1) any dates of supposed illegal referrals; (2) any referred patient's name or

demographic information; (3) the nature of the healthcare item or service provided; or (4) any details as to when a claim was submitted or to which federal healthcare program.

Relator's SAC also suffers from an abject lack of detail regarding any purported kickbacks linked to any Provider Defendant. This Court has explained that "[t]o allege the particulars of a scheme to offer kickbacks, Relator must sketch how it was that Defendant provided remuneration . . . the form of that remuneration, how and why Defendant believed that remuneration would induce new business, and how Defendant benefitted from the remuneration." *See Ruscher I*, 2014 WL 2618158 at *10. Despite alleging that the "[CHI] Defendants submitted thousands of claims to Medicaid in which the claims were the product of referrals from physicians receiving kickbacks," and despite information regarding alleged scant remuneration to the Provider Defendants, *see* SAC ¶¶ 23-39, Relator fails to link these referrals of international patients and accompanying services to any referrals ***from*** the Provider Defendants ***to*** the CHI Defendants.

Although Relator has attached exhibits to the SAC which purport to demonstrate additional services that the ISD allegedly provided to certain of the Provider Defendants, such exhibits are insufficient to support Relator's allegations that any Provider Defendant is involved in an alleged fraud. *See* SAC ¶¶ 201, 218; Exs. 2, 6, 7, 11, 12, 13 (Dkts. 273-2. 273-6, 273-7, 273-11, 273-

12, 273-13).   And in fact, with respect to Dr. Leachman and Dr. Sista, no purported remuneration was even alleged.   Relator fails to sufficiently connect how these additional services were used to induce any of the Provider Defendants to make referrals or that any Provider Defendant actually made any referrals in connection with these services.   *See generally*, SAC.   It is not enough for Relator to make general allegations that are untethered to any specific conduct and, instead, attach exhibits without providing detail regarding their relevance or how they support Relator's theories.

In summary, although Relator has included additional information in the SAC about the *quid* (alleged remuneration to certain but not all of the Provider Defendants), he has not adequately pled the *quo* (Provider Defendant referrals to the CHI Defendants) or the *pro* (linking the *quid* to the *quo*) in this case.

(2)    <u>Relator fails to allege that the Provider Defendants had the requisite intent to violate the AKS.</u>

As explained above, the SAC does not sufficiently establish that the Provider Defendants understood that the ISD's referrals of international patients to any of the Provider Defendants were for the purpose of inducing referrals of Medicare or Medicaid business to the CHI Defendants.   *See* SAC ¶¶ 178, 180.   "[T]he AKS's inducement element [is] an intent requirement." *Parikh*, 977 F. Supp. 2d at 665; *see Nunnally*, 519 F. App'x at 894 (holding that

an AKS claim under FCA requires knowing or willful conduct and allegations must satisfy Rule 9(b)).  "Actual inducement" is a requirement for pleading an AKS violation. *Nunnally*, 519 F. App'x at 894 (holding that "actual inducement is an element of the AKS violation, *see* 42 U.S.C. § 1320a–7b(b)(1)–(2), and [relator] must provide reliable indicia that there was a kickback provided in turn for the referral of patients.").

Relator's AKS claim fails to satisfy the pleading standards, because there is no allegation of "actual inducement."   Relator fails to allege that any Provider Defendant was aware:

- That there was a purported scheme to induce any Provider Defendant to refer Medicare or Medicaid patients to CHI-St. Luke's in return for referrals of international patients;

- That the volume of international patients referred to any Provider Defendant by BSLMC had *any* relationship to the volume of Medicare or Medicaid referrals Defendants made to CHI-St. Luke's or that CHI-St. Luke's expected patient referrals in return; or

- That there was any connection whatsoever between the international patient referrals to the Provider Defendants and the Provider Defendants' referrals back to CHI-St. Luke's.

Moreover, Relator does not plead a large frequency, volume, or value of benefits flowing from the CHI Defendants to the Provider Defendants that could potentially put them on notice of an attempt to induce them to refer their Medicare and Medicaid patients back to BSLMC and the CHI Defendants.  *See* Chart of SAC References to Provider Defendants, Appendix A.  Relator thus

fails to allege the Provider Defendants even had general knowledge of a kickback scheme, much less that they were actually induced to participate in one.

Because Relator fails to allege that any of the Provider Defendants in the Greater Houston area receiving these international patient referrals would "know" the referrals were intended to induce them to refer patients to the CHI Defendants in return, Relator's claims premised on AKS violations should be dismissed.

## B.    The SAC Fails to Plead the Elements of a Conspiracy Claim.

Relator has failed to plead the elements of an FCA conspiracy. Section 3729(a)(3) of the FCA subjects to civil liability any person who "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid." To allege a conspiracy under the FCA, a relator must plead: "(i) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by [the Government]; and (ii) at least one act performed in furtherance of that agreement." *Grubbs*, 565 at 193 (quoting *Farmer*, 523 F.3d at 343).

The "conspiracy provision of the [FCA]" is "unlike the other [FCA] provisions" because it "seems to require the specific intent to defraud." *United States ex rel. Johnson v. Shell Oil Co.*, 183 F.R.D. 204, 208 (E.D. Tex. 1998). "The requirements of particularity are therefore more compelling" in

conspiracy claims brought under the FCA, which necessitates a more exacting pleading standard. *Id.* The pleadings must allege with particularity "that the alleged conspirators shared a specific intent to defraud the government." *United States ex rel. Reagan v. East Tex. Med. Ctr. Reg. Healthcare Sys.*, 274 F. Supp. 2d 824, 857 (S.D. Tex. 2003) (Gilmore, J.) (internal citations omitted). "[B]arebones allegations will not suffice to plead a conspiracy claim under § 3729(a)(3)." *United States ex rel. Westbrook v. Navistar, Inc.*, No. 3:10-CV-1578-O, 2012 WL 10649207, at *8 (N.D. Tex. July 11, 2012) (citing *Grubbs*, 565 F.3d at 193-94). Even when relators successfully plead the submission of false claims, allegations of ***conspiracy*** to submit those false claims still often fail. *See Johnson*, 183 F.R.D. at 208.

These heightened pleading standards for FCA conspiracy claims are difficult to satisfy. *See Capshaw*, 2017 WL 3841611, at *8-9 (dismissing conspiracy claim because relator merely alleged defendants "had the requisite knowledge and agreed to and/or ratified" the allegedly fraudulent scheme and finding that such allegations were devoid of factual allegations that suggested the existence of an unlawful agreement); *see also United States ex rel. Guth v. Roedel Parsons Koch Blache Balhoff & McCollister*, No. CIV.A. 13-6000, 2014 WL 7274913, at *8 (E.D. La. Dec. 18, 2014), *aff'd*, 626 F. App'x 528 (5th Cir. 2015) (merely discussing the allegations or consultation about ongoing matters "does not support an inference of an unlawful agreement").

First, to support his FCA conspiracy claim, Relator is required to plead facts supporting a plausible inference that any of the Provider Defendants was a party to an unlawful agreement, and he has not done so.  *See Grubbs*, 565 F.3d at 193 (stating that a conspiracy claim must show the existence of an unlawful agreement).   Where a relator's only allegation in support of a conspiracy claim is that the defendants "all agreed together" to make false statements in claims submitted to the government, a viable conspiracy claim has not been pled.  *Westbrook*, 2012 WL 10649207, at *8.   Moreover, a complaint which simply states that defendants have violated the FCA and the other defendants agreed or acquiesced to the violations is also insufficient to plead conspiracy under § 3729(a)(3).  *United States ex rel. Dekort v. Integrated Coast Guard Sys.*, 705 F. Supp. 2d 519, 548 (N.D. Tex. 2010).

Here, Relator does not allege an agreement to—or even knowledge of—a scheme to make false statements in claims submitted to the government on the part of the Provider Defendants.  He does not allege any facts indicating that any Provider Defendant "agreed to or acquiesced" to any other Defendants' actions or that any of the Provider Defendants or the CHI Defendants "all agreed together" or "developed and coordinated schemes."  The SAC does not contain a single detail regarding any meetings, or other interactions, involving any of the Provider Defendants that would support even a plausible inference that any Provider Defendant was party to an unlawful agreement or had the

specific intent to defraud the government, much less to satisfy the requirements of Rule 9(b).

Second, even assuming that any Provider Defendant entered into an unlawful agreement, Relator must still allege at least one act taken in furtherance of that agreement, *Grubbs*, 565 F.3d at 193, which Relator also fails to do.  Relator may point to the allegation that a representative of Houston Thyroid & Endocrine Specialists emailed ISD staff to convey that Dr. Jogi allegedly wanted ISD staff to schedule an international patient for blood tests, SAC ¶ 240, but this cannot be considered an act in furtherance of a conspiracy when Relator has not alleged that Houston Thyroid & Endocrine Specialists, Dr. Jogi, or any Provider Defendant agreed to or had knowledge of a scheme or conspiracy to defraud the government.  Accordingly, Relator has not named a single act that was allegedly performed by any Provider Defendant in furtherance of any alleged conspiracy.

In *Grubbs*, the Fifth Circuit held that the relator pled facts sufficient to allege an FCA conspiracy because the complaint contained "specific language" attributed to two defendant physicians, two "particular circumstances of the required overt acts," facts about the known location of the meeting between the defendants, and the "temporal circumstances of the meeting."  *Grubbs*, 565 F.3d at 194.  Together, these facts were deemed to plausibly suggest a conspiratorial design. *Id*.  But unlike in *Grubbs*, Relator here has not pled any

overt acts, location of meetings, or specific actions, which the Fifth Circuit has deemed as necessary to survive a motion to dismiss.   Therefore, Relator's conspiracy claims against the Provider Defendants should be dismissed.

### C.   Baylor College of Medicine Has Immunity from Relator's FCA Claims.

Relator's FCA claims against BCM should be dismissed for another, independent reason:   BCM has immunity from Relator's FCA claims as an agency of the State of Texas.   *See Vermont Agency of Nat. Resources v. United States ex rel. Stevens*, 529 U.S. 765, 765, 787-88 (2000) (holding that a "private individual may not bring suit in federal court on behalf of the United States against a State (or state agency) under the FCA."); *see also Richardson v. S. Univ.*, 118 F.3d 450, 452 (5th Cir. 1997) ("A plaintiff cannot avoid the sovereign immunity bar by suing a state agency or an arm of a State rather than the State itself.").

The State of Texas defines a state-supported medical school, like BCM, as a state agency.   *See* TEX. HEALTH & SAFETY CODE § 312.007(a) (a "medical and dental unit, ***supported medical or dental school***, or coordinating entity is a state agency[.]") (emphasis added); *Klein*, 315 S.W.3d at 5, 7 (stating that ***"[u]nder this section, a supported medical school, like Baylor, is a state agency"***) (emphasis added); *see also* TEX. EDUC. CODE § 61.092 (addressing contracts between the Texas Higher Education Coordinating Board ("THECB") with Baylor College of Medicine and restrictions placed on funding).   Thus,

Relator's FCA claims cannot proceed against BCM and are subject to dismissal under both Rules 12(b)(6) and 12(b)(1).

The Fifth Circuit uses a six-factor test to determine whether an entity is an "arm of the state" for federal law claims. *United States ex rel. Adrian v. Regents of Univ. of Cal.*, 363 F.3d 398, 401 (5th Cir. 2004). These factors include: "(1) whether the state statutes and case law characterize the agency as an arm of the state; (2) the source of funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to statewide problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property." *United States ex rel. King v. Univ. of Tex. Health Sci. Ctr.—Hous.*, 544 F. App'x 490, 495 (5th Cir. 2013) (per curiam) (citation omitted). These factors counsel in favor of classifying BCM as an "arm of the state."

      1.   <u>State Statutes and Case Law Classify BCM as an Arm of the State.</u>

Chapter 312 of the Texas Health and Safety Code was designed to remove impediments to the coordination and cooperation between medical schools and public hospitals in clinical education and patient care at public hospitals. BCM is a "supported medical school," which means that it has contracts with the THECB and receives state funding specifically allocated for training physicians who provide medical care at public hospitals. TEX. HEALTH

& SAFETY CODE § 312.002(6); *see also* TEX. EDUC. CODE § 61.092; *Klein*, 315 S.W.3d at 2.  Indeed, *Klein* held that a BCM resident had sovereign immunity based on his employment relationship with BCM under Chapter 312, and it confirmed that Chapter 312 means what it says when it classifies BCM as a "governmental unit of state government" and a "state agency" for certain purposes, including for performing services at Ben Taub.  *Klein*, 315 S.W.3d at 8; *see also Aguocha-Ohakweh v. Harris County Hosp. Dist.*, 731 F. App'x 312, 316 (5th Cir. 2018) (BCM is a state agency and entitled to sovereign immunity from state law claim under Chapter 312) (citing *Klein*, 315 S.W. 3d at 5).

As noted in *Klein*, the purpose of the statute is to give BCM the same protections from lawsuits that would be available to state universities that provide the same type of services for the public.  *See Klein*, 315 S.W. 3d at 8 ("a supported medical school does not need to be a governmental unit—like UT Medical Branch—to be entitled to immunity; the Health and Safety Code bestows such status by its own terms"); see also .

2.   <u>Funds for BCM are Sourced from the State.</u>

This second factor is the "most significant factor," and courts are to analyze "whether a judgment against [BCM] will be paid with state funds." *See Daniel v. Univ. of Tex. Southwestern Med. Ctr.*, No. 19-10834, 2020 WL 2843511, at *3 (5th Cir. June 2, 2020).  BCM receives funding from the state. As noted in *Klein*, BCM receives state funds through its contractual

relationship with the Texas Higher Education Coordinating Board. *See Klein*, 315 S.W.3d at 2; *see also* TEX. EDUC. CODE § 61.092; http://www.thecb.state.tx.us/DocID/PDF/12730.PDF (the THECB's report of Contracts Executed by the Agency Over $1 Million from July 19, 2019 – September 17, 2019).

Payment of any judgment along with litigation costs in this case would directly impact state funding. Whether BCM may have a source of other funds available to satisfy a judgment, besides taxpayer dollars, does not undermine BCM's state status. *See Delahoussaye v. City of New Iberia*, 937 F.2d 144, 148 (5th Cir. 1991) (fact the Board received funding from state and outside sources did not undermine status as arm of the state); *United Carolina Bank v. Bd. of Regents of Stephen F. Austin State Univ.*, 665 F.2d 553, 560 (5th Cir. Unit A 1982) (immunity not limited to "where payment would be directly out of the state treasury"); *Jagnandan v. Giles*, 538 F.2d 1166, 1176 (5th Cir. 1976) (state treasury impacted from refund of tuition payments). To the extent BCM would be obligated to pay any judgment or costs with private funds, it would, in turn, be forced to rely more on state funding to continue providing and facilitating its services to the State.

In *Daniel*, the Fifth Circuit held the Defendant, the University of Texas Southwestern Medical Center was an arm of the State of Texas, in large part based on the source-of-funds factor, because the plaintiff failed to show that

any judgment against the defendant would not be paid with State funds – even where the defendant also had private fund sources – and because the court held that such a judgment "would interfere with Texas's fiscal autonomy." *Daniel*, 2020 WL 2843511, at \*3-4 ("Accordingly, this factor—which is the "most significant"—supports a finding that [the defendant] is an arm of the State of Texas.")  Similarly, BCM receives both private and State funds, but Relator has not shown – and cannot show – that State of Texas funds will not be responsible to pay any judgment against BCM.  Accordingly, this "most significant" factor supports classifying BCM as an arm of the state.

### 3.   BCM's De Minimis Autonomy Favors Arm-of-the-State Status.

BCM has limited autonomy with respect to how it operates since it contracts with the Texas Higher Education Coordinating Board ("THECB") and receives state funding specifically allocated for training physicians who provide medical care at public and nonprofit hospitals.  TEX. HEALTH & SAFETY CODE §§ 312.002(6), .003; *see also* TEX. EDUC. CODE § 61.092 (addressing restrictions on how BCM can use funds from the THECB); http://www.thecb.state.tx.us/DocID/PDF/12730.PDF (the THECB's report of Contracts Executed by the Agency Over $1 Million from July 19, 2019 – September 17, 2019).  As a result, BCM is required to adhere to certain statutory requirements for how they use funds.

### 4.   BCM Addresses State-Wide Concerns.

BCM provides and facilitates activities addressing statewide problems. As part of its mission, BCM coordinates and cooperates with other medical and dental schools in Texas for educational purposes, to enhance patient care, and to save taxpayer money.  *See Klein*, 315 S.W.3d at 7 ("The Legislature has authorized Baylor to coordinate and cooperate with other medical or dental schools and contract to provide medical, dental, or other patient services to public hospitals, the rationale being that such relationships will '(1) enhance the education of students, interns, residents and fellows attending [the schools]; (2) enhance patient care; and (3) avoid any waste of public money.'" (internal citations omitted).  This statewide focus on providing more educated doctors also counsels in favor of it being an "arm of the state." *See also King*, 544 F. App'x at 498 ("Education and research are statewide concerns" and the Texas Higher Education Board was created to "benefit the citizens of the state in terms of the realization of the benefits of an educated populace") (quoting TEX. EDUC. CODE § 61.002)).

5.    The Ability to Sue or Be Sued Bears Little Weight in the Fifth Circuit.

The fifth factor—being able to sue or be sued—can be misleading and has more recently been questioned by the Fifth Circuit. *King*, 544 F. App'x at 498.  As a result, this factor has not been significant in the Fifth Circuit's analysis.  *See Adrian*, 363 F.3d at 401-02 (University of California Regents Corporation was an "arm of the state" even though it was organized as a

corporation with the power to sue and be sued and competed against private companies in the commercial arena); *Richardson*, 118 F.3d at 456 ("[J]ust because Southern's Board can be sued and can hold and use property does not mean that these final two factors weigh against a finding of sovereign immunity."). Other circuits ignore this factor entirely. *King*, 544 F. App'x at 498 n.3 (collecting cases). Regardless, the ability to sue and be sued is only one factor that cannot overcome the weight of the others. *Id.*

> 6. <u>The Limited Ability to Hold Property also Bears Little Weight.</u>

Finally, the ability of the entities to hold property is both limited and non-dispositive in this case. Even though BCM may have a more flexible right to hold and use property, this factor carries little weight in the current context where BCM is operating at the behest of the State to facilitate a statewide goal. *See Encalarde v. New Orleans Ctr. for Creative Arts/Riverfronts*, No. 09-4129, 2010 WL 2854275, at *3 (E.D. La. Jul. 19, 2010) ("[E]ven if NOCCA had unrestricted authority to sue and be sued and to use and dispose of property, which it does not, this would not prevent the Court from finding that NOCCA is an arm of the State[.]"); *see also Richardson*, 118 F.3d at 456 (discounting fact that Southern's Board could hold and use property in the arm-of-the-state analysis).

In sum, when taken together, the factors establish that BCM is an arm of the state for purposes of FCA claims. *See Health Educ. Auth. of La. v.*

*APCOA LaSalle Parking Co, LLC*, 991 F. Supp. 2d 762, 764 (E.D. La. 2013) ("Under the *Tradigrain* framework [on which the factors are based], treatment of an agency by the state court is a factor which subsumes all others in the analysis.") (internal citation omitted).  BCM is thus not a "person" subject to liability under the FCA or suit under the Eleventh Amendment.

The state law immunity analysis is dispositive of Relator's claims brought under the Texas Medicaid Fraud Prevention Act ("TMFPA") (Texas's state corollary to the FCA) against BCM, which should also be dismissed. State agencies retain immunity from suit for state law claims brought in federal court.  Indeed, the Fifth Circuit has specifically held that BCM has immunity from state law claims in federal court under the Texas Tort Claims Act.  *See Aguocha-Ohakweh*, 731 F. App'x at 316 (holding that BCM is a state agency with immunity under the Texas Tort Claims Act).  Since BCM has immunity under the Texas Tort Claims Act, then it should also have immunity under TMFPA.  *See Gentilello v. Univ. of Texas Sw. Health Sys.*, No. 05-13-00149-CV, 2014 WL 1225160, at *3 (Tex. App.—Dallas, Mar. 24, 2014, pet. denied) (holding that the TMFPA does not waive immunity and noting that the Act expressly states that sovereign immunity has *not* been waived) (citing Tex. Hum. Res. Code § 36.116).  Accordingly, the TMFPA claims are barred by sovereign immunity as well.

### D.   Because Relator's Federal FCA Claims Fail, his State Law Claims Fail As Well and Should Be Dismissed or, Alternatively, The Court Should Decline to Exercise Supplemental Jurisdiction over Relator's State Law Claims

In addition to his federal claims, Relator has included five counts related to alleged violations of the Texas Medicaid Fraud Prevention Act ("TMFPA") (Texas's state corollary to the FCA).  SAC ¶¶ 325-348.  These state law claims fail on the same grounds discussed above, as the TMFPA's provisions are largely analogous to the federal FCA.  *See United States ex rel. Headen v. Abundant Life Therapeutic Servs. Tex., LLC*, 2018 WL 6266920, at *13 (S.D. Tex. Nov. 30, 2018). ("If a relator's complaint fails to state a claim under the False Claims Act, it also fails to state a claim under the [TMFPA].").  Accordingly, when a relator fails to state a claim under the federal statute, the Court should dismiss the state claims as well. *See, e.g., United States ex rel. Colquitt v. Abbott Labs.*, 864 F. Supp. 2d 499, 537 (N.D. Tex. 2012) (finding that because relator had failed to state a claim under the FCA based on violations of the Anti-Kickback statute, relator also failed to state claims under state false claims laws); *United States ex rel. Foster v. Bristol-Meyers Squibb Co.*, 587 F. Supp. 2d 805, 827 (E.D. Tex. 2008) (state law FCA claim must be plead with the same particularity under rule 9(b) as a federal claim).  Because Relator has failed to allege FCA claims, his state law claims also fail and should be dismissed.

Alternatively, the Court should decline to exercise supplemental jurisdiction over the state FCA claims brought on behalf of the Plaintiff States, and dismiss those claims without prejudice. *See, e.g.*, *Heggemeier v. Caldwell Cnty, Tex.*, 826 F.3d 861, 872-73 (5th Cir. 2016) (quoting *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.,* 554 F.3d 595, 599 (5th Cir. 2009)) (affirming dismissal of pendant state-law claims under 28 U.S.C. § 1367(c)(3) and acknowledging the Fifth Circuit's general rule that "a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial"); *see also United States ex rel. Edgett v. Kimberly-Clark Corp.*, No. 3:15-CV-0434-B, 2017 WL 4222697, *5 (N.D. Tex. Sept. 22, 2017) (declining to exercise jurisdiction over state FCA claims after dismissing all federal FCA claims). Relator would then have the opportunity to pursue his state law claims against Provider Defendants in Texas state court. *See United States v. Abundant Life Therapeutics Servs. Texas, LLC*, No. 18-773, 2019 WL 1930274, at *10 and n.3 (S.D. Tex. Apr. 30, 2019) (dismissing FCA claims with prejudice while dismissing TMFPA claims without prejudice to allow refiling in state court); *United States ex rel. Patel v. Catholic Health Initiatives*, 312 F. Supp. 3d 584, 607 (S.D. Tex. 2018) (recognizing that "TMFPA's scope can be broader than the FCA's scope"), *appeal docketed*, No. 18-20395 (5th Cir. June 21, 2018).

### E.   Dismissal of the Claims Should Be with Prejudice.

Relator has already attempted to plead this action three times, but has still failed to plead facts that would give rise to a claim for relief.  There is no reason to believe Relator would have more to offer given a fourth attempt at pleading.  Because Relator has repeatedly failed to adequately plead his case in his first three Complaints, further amendment would be futile.  *See United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (district court's denial of leave to file a third amended complaint was not an abuse of discretion).  Relator's federal claims should be dismissed with prejudice.

## VII.  <u>CONCLUSION</u>

For the foregoing reasons, the Provider Defendants' Motion to Dismiss should be granted with prejudice.  Relator has failed to state a plausible claim for relief or plead fraud with particularity as required by Rule 9(b).  Furthermore, the Court should decline to exercise jurisdiction over remaining state law claims and dismiss them because all federal law claims have been eliminated.  *See, e.g.*, *Heggemeier*, 826 F.3d at 872-73 (noting the Fifth Circuit's general rule that "a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial").

Dated:  November 16, 2020           Respectfully submitted,

By: /s/ *Sara A. Brinkmann*

Sara A. Brinkmann, of counsel
Texas Bar No. 24069919
Reed Smith LLP
811 Main Street, Suite 1700
Houston, Texas 770002
(713) 469-3647
Fax: (713) 469-3899
sbrinkmann@reedsmith.com

Frederick Robinson
District of Columbia Bar No. 367223
*Admitted Pro Hac Vice*
**Attorney-in-Charge**

Reed Smith LLP, of counsel
1301 K Street, N.W
Suite 1000--East Tower
Washington, D.C. 20005-3373
(202) 414-9259
Fax: (202) 414-9299
FRobinson@reedsmith.com

**Counsel for Defendants Baylor College of Medicine and Baylor College of Medicine Healthcare, d/b/a Baylor Medcare, Ramanchandra Sista, M.D., Marcia Katz, M.D.**


By: */s/ Kay J. Hazelwood*
Kay J. Hazelwood
**Attorney-in-Charge**
Texas Bar No. 09310450
S.D. Texas I.D. No. 1002170
khazelwood@seyfarth.com
Christopher D. DeMeo, of counsel

Texas Bar No. 00796456
SEYFARTH SHAW LLP, of counsel
cdemeo@seyfarth.com
700 Milam, Suite 1400
Houston, TX  77002
Telephone:  (713) 225-0292
Facsimile:  (713) 225-2340

**Counsel for Defendant Bone and
Joint Clinic of Houston**


By: */s/ Wayne Clawater*
Wayne Clawater
**Attorney-in-Charge**
SBN 04328500
Federal ID: 10151
Direct Dial: 713-579-1522
wclawater@schlawyers.com
Debra L. Elmore, of counsel
SBN 17531950
Federal ID: 612313
delmore@schlawyers.com
2727 Allen Parkway, Suite 500
Houston, Texas 77019
713.650.6600
713.599-1999 Fax

**Counsel for Defendants Surgical
Associates of Texas, P.A. and
James Livesay, M.D.**


By: */s/ Ryan D. Wozny*
**Ryan Wozny**
**Attorney-in-Charge**
State Bar No. 24045265
**Quintairos, Prieto, Wood and
Boyer, P.A., of counsel**
ryan.wozny@qpwblaw.com
**Megan Nguyen, of counsel**

State Bar No. 24092899
megan.nguyen@qpwblaw.com
1700 Pacific Avenue, Suite 4545
Dallas, Texas 75201
(214) 754-8755 (Telephone)
(214) 754-8744 (Telecopier)

**Counsel for Defendants Houston Thyroid & Endocrine Specialists, Medhavi Jogi, M.D., Fareed Elhaj, M.D., Lazaro Cherem, M.D., and Brian Douglas, M.D.**

By: */s/ R. Chad Geisler*
R. Chad Geisler
**Attorney-in-Charge**
James B. Hicks, of counsel
**Germer Beaman & Brown PLLC, of counsel**
One Barton Skyway
1501 S Mopac Expy, Suite A400
Austin, Texas 78746
(512) 472-0288
(512) 472-0721 Fax
cgeisler@germer-austin.com
jhicks@germer-austin.com

**Counsel for Defendants Leachman Cardiology Associates, Zvonimir Krajcer, M.D., Dewitt Leachman, M.D. and Alberto Lopez, M.D.**

By: */s/ Frank N. Luccia*
Frank N. Luccia
**Attorney-in-Charge**
SBN 12664400
SDBN 10384

**LUCCIA & EVANS, L.L.P., of counsel**
fnluccia@luccia-evans.com
Lauren M. Virene, of counsel
SBN 24087980
SDBN 2166180
lvirene@luccia-evans.com
8 Greenway Plaza, Suite 1450
Houston, Texas 77046
(713) 629-0002 / Fax (713) 629-0004

**Counsel for Defendants Naavneet Singh, M.D., Kidney and Hypertension Consultants, Kidney Associates, Greater Houston Gastroenterology, and Isaac Raijman, M.D.**


By:  */s/ John P. Scott*
John P. Scott
**Attorney-in-Charge**
State Bar No. 17901900
Federal I.D. 1878
Direct telephone no. 713-579-1505
Email:  jscott@schlawyers.com
**SCOTT, CLAWATER & HOUSTON, L.L.P., of counsel**
2727 Allen Parkway, Suite 500
Houston, Texas 77019
(713) 650-6600
(713) 579-1599 Fax

**Counsel for Defendants, Pulmonary Critical Care and Sleep Medicine Consultants, Inc., Carl Dahlberg, M.D., Alberto Colomer, M.D., Jose Santacruz, M.D. and Andres Mesa, M.D.**

By: _/s/ Sam A. Houston_
Sam Houston
**Attorney-in-Charge**
**Scott, Clawater & Houston, L.L.P., of counsel**
2727 Allen Parkway, Suite 500
Houston TX 77019
(713) 650-6600 ext. 117
(713) 579-1517 DIRECT
(713) 822-5262 MOBILE
(713) 579-1599 FAX
shouston@schlawyers.com

**Counsel for Alan Hoffman, M.D., Irving Fishman, M.D., Cristina Boccalandro, M.D., Texas Endocrinology Group, P.A., Ron Moses, M.D., Richard Hung, M.D., and the Center for ENT.**

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that, pursuant to the Honorable Charles R. Eskridge III's Court Procedures § 17(b), prior to the filing of this motion, counsel for Defendants met and conferred in good faith with counsel for Relator to attempt to resolve the issues raised by this Motion but were unsuccessful

*/s/ Sara A. Brinkmann*
Sara A. Brinkmann

## <u>CERTIFICATE OF WORD COUNT</u>

I hereby certify that, pursuant to Judge Eskridge's Court Procedures § 18(c) and according to Microsoft Word's word count, the foregoing document contains 11,816 words, and the Chart of SAC References as to Each Provider Defendant, attached as Appendix A, contains 6,482 words, for a total of 18,298 words, in accordance with the Order on the Briefing Protocol. Dkt. 261 (requiring Provider Defendants' consolidated motion to dismiss to be "no longer than 20,000 words.")

*/s/ Sara A. Brinkmann*
Sara A. Brinkmann

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 16, 2020, pursuant to Local Rule LR 5.3 and Federal Rule of Civil Procedure 5(b), that the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF and served upon counsel of record pursuant to Local Rule LR 5.1.

<u>*/s/ Sara A. Brinkmann*</u>
Sara A. Brinkmann

# APPENDIX A

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
|---|---|---|
| All Provider Defendants | ¶ 7 (all – "referring physicians and practices that participated in this kickback scheme[.]");<br><br>¶¶ 41, 268 (all treated Medicare/Medicaid patients, billed for this, and were paid);<br><br>¶¶ 23-39 (alleging free collection services and interpreters to various Provider Defendants). | • Relator has listed each Provider Defendant as "referring physicians and practices that participated in this kickback scheme" without alleging the "who, what, when, where, and how" for each Provider Defendant, as is required by Rule 9(b). (¶ 7).<br><br>• All Provider Defendants are also listed together with other Defendants as having treated Medicare and Medicaid patients and having received payments, but the SAC gives no specific details about any patients, submitted claims, or payments for each specific Defendant. Relator fails to allege the "who, what, when, where, and how" for each Provider Defendant, as is required by Rule 9(b). (¶¶ 41, 268).<br><br>• Relator does not allege any information about Medicare or Medicaid patients that any of the Provider Defendants referred to the CHI Defendants or BSLMC. In fact, Relator only identifies one referral to CHI-St. Luke's and BSLMC, from Dr. William Watters, who is not a party in this matter, and the SAC does not allege that he received any remuneration. (¶¶ 42, 183) (*see* Bone and Joint Clinic of Houston's section below for additional information regarding Dr. Watters). Moreover, Relator does not tie any of these unnamed alleged Medicare or |

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
|---|---|---|
| | | Medicaid patients to the international patients.  That is, Relator does not alleged that any Provider Defendant billed Medicare or Medicaid for any of the international patients as part of the purported scheme.<br><br>• Relator fails to demonstrate how any of the alleged services provided any value to any Provider Defendant. Rather, the intended beneficiary of these services, such as consolidated billing and interpreters, were offered for the benefit of the patient, not the Provider Defendants.  The consolidation of billing services likewise benefited the embassies who often paid those bills.<br><br>• The allegations of free interpreters and collection services are a red herring.  (¶¶ 23-39).  Relator's position is predicated on the false assumption that the CHI Defendants paid for these items so that the Provider Defendants would not have to. (¶ 210). Relator alleges that these hypothetical patients (hypothetical in the sense that there is not one actual patient alleged to have been referred) are affluent medical tourists subscribing to a concierge-style program provided through the hospital and local embassy.  (*See, e.g.,* ¶¶ 2, 143-144).  Relator also |

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
|---|---|---|
| | | alleges that this program includes interpreters and is a self-contained payment model such that traditional third-party billing to insurance companies is not necessary. Id.  It follows that the patients pay for the services as part of the program; the ISD is simply a middleman in this regard.  And because the patients would be paying for their own interpreters and collection services as part of the program, as Relator alleges, there would be no remuneration for these items from the CHI Defendants to any Provider Defendant. |
| All Physician Group Defendants – Leachman Cardiology; Houston Thyroid and Endocrine Specialists; Texas Endocrinology Group; Bone and Joint Clinic; Pulmonary Critical Care & Sleep Medicine; Greater Houston Gastroenterology; | ¶¶ 23-39, 268 (Listing the Provider Group Defendants as "Defendant Referring Physicians" who all treated Medicare/Medicaid patients, billed for this, and were paid). | • None of the Physician Group Defendants is a physician. They cannot act as an attending physician, diagnose, or treat patients.  Accordingly, none of the Physician Group Defendants can refer patients.  And since Relator does not allege that the Physician Group Defendants (or any Provider Defendant) billed Medicare or Medicaid for the international patients, Relator cannot establish that there is a "compensation arrangement" between any Physician Group Defendant and the CHI Defendants, nor any other Stark violation.<br><br>• Relator's claims are based on the Defendants allegedly admitting Medicare and Medicaid patients to the hospital in exchange for kickbacks.  Only an attending |

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
|---|---|---|
| Kidney Associates; Kidney & Hypertension Consultants; Surgical Associates of Texas; Center for ENT; BCM; Baylor MedCare. | | physician can admit a patient to the hospital; a physician group cannot. *See* 25 TEX. ADMIN. CODE § 133.41 (patients are admitted to the hospital only by members of the medical staff who have been granted admitting privileges). An attending physician must be selected by or assigned to a patient who has primary responsibility for a patient's care and treatment. *See* 25 TEX. ADMIN. CODE § 133.2. Only a licensed doctor can provide medical care. *Doctors Hosp. at Renaissance, Ltd. v. Andrade*, 493 S.W.3d 545, 548 (Tex. 2016); TEX. OCC. CODE § 155.002 (defining "practicing medicine" as the diagnosis, treatment, or offer to treat a physical disease, disorder or injury by a licensed physician or surgeon); *Methodist Hosp. v. German*, 369 S.W.3d 333, 343 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). A physician group cannot serve as a patient's attending physician, legally diagnose a patient, or admit a patient to the hospital. |
| Drs. Krajcer, Leachman, Lopez, Elhaj, Hoffman, Boccalandro, Santacruz, Singh, Colomer, Dahlberg, | (¶¶ 24-39, 163) (Relator alleges the ISD maintained the referral roster for reasons "including that they believed the physicians | • Relator alleges that each of the listed Physician Defendants were on ISD's referral roster, but Relator fails to allege or provide a factual basis that any Physician Defendant knew they were on a referral roster. (¶¶ 24-39, 163). Even assuming they did know this, Relator fails to allege that any Physician Defendant knew the alleged purpose of the roster or |

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
| --- | --- | --- |
| Raijman, Livesay, Hung, Moses, Mesa, Cherem, Douglas, Fishman, Sista, and Katz. | would refer business back to the hospital.") | the ISD's purported belief that the Physician Defendants would refer business to the hospital. This conclusory statement is insufficient to demonstrate that any Physician Defendant was expected to or knew they were expected to refer Medicare or Medicaid patients to the CHI Defendants or BSLMC.<br><br>• The alleged "referral roster" and logs listing physicians (Ex. 7) are undated and there are no factual allegations of international patient referrals. |
| Leachman Cardiology; Pulmonary Critical Care & Sleep Medicine; Texas Endocrinology Group; Greater Houston Gastroenterology; Kidney Associates; Kidney & Hypertension Consultants; Drs. Krajcer, Leachman, Lopez, | ¶ 148 (discounted rent to those with offices in O'Quinn Medical Tower at 6624 Fannin St. – not identified by name, but address identified in ¶¶ 23-26, 28, 35, 37-38) | • The Physician Groups and Physicians listed here are included, not by name but by address, as having received discounted rent and free building maintenance services based on "information and belief." (¶ 148).<br><br>• Relator offers no facts to indicate the amount of the rental space or whether the rent is below market rate. Relator has pleaded nothing about the alleged "building services" provided or the dates the services were provided. He provides no data to show when the Defendants signed leases. Relator does not indicate whether leases were executed before or after the ISD program was created. He offers no facts to support a claim that any defendant knowingly and willfully |

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
| --- | --- | --- |
| Hoffman, Boccalandro, Elhaj, Jogi, Santacruz, Colomer, Dahlberg, Mesa, Douglas, Raijman, Singh and Fishman | | received discounted rental space in exchange for Medicare and Medicaid referrals.<br><br>• These conclusory allegations fail to allege the "who, what, when, where, and how" of any allegedly fraudulent activities as to these Defendants, and fail to plead with particularity these alleged "remunerations" as to each listed Defendant. This is insufficient to satisfy Rule 9(b). |
| Leachman Cardiology, Drs. Krajcer, Leachman, & Lopez | ¶ 24 (alleged free collections for, and patients referred to Leachman Cardiology; interpreters for patients referred to Krajcer, Lopez; travel perks for Krajcer – nothing specific to Dr. Leachman except that he was on the "referral roster" with the other two doctors);<br><br>¶ 147 (Krajcer – alleged vacations, travel stipends, and other related gifts "[o]n | Relator has not alleged sufficient facts to satisfy the requirements of Rule 9(b) or state a claim that Leachman Cardiology Associates or Drs. Krajcer, Lopez or Leachman (collectively, "Leachman Cardiology") participated in or were aware of a kickback or self-referral scheme and fraudulently referred Medicare/Medicaid patients to the CHI Defendants or BSLMC.<br><br>Relator lists the following alleged remunerations to Leachman Cardiology (none specific to Dr. Leachman):<br><br>• Two international patient appointments for evaluations by Dr. Lopez (Ex. 6 pp. 7, 11);<br><br>• Interpreters for two alleged international patient evaluations by Dr. Lopez (Ex. 7 pp. 76, 82); |

6

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
|---|---|---|
| | information and belief" which is not enough for a fraud allegation);<br><br>¶ 148 (discounted rent to those with offices in O'Quinn Medical Tower at 6624 Fannin St. – not identified by name, but address identified in ¶24);<br><br>¶¶ 201, 216 (referred patients to Lopez);<br><br>¶ 214 (interpreter for Krajcer – as referenced in 24);<br><br>¶ 262 (vacations for Krajcer);<br><br>¶ 253 (collections for Leachman Cardiology). | • Interpreters for four alleged international patient evaluations by Dr. Krajcer (Ex. 7 pp. 73, 74, 75, 81);<br><br>• Travel stipends and related remuneration to Dr. Krajcer, "on information and belief" (¶ 147);<br><br>• Discounted rent, "on information and belief," without any facts regarding the alleged rent and whether it was below market rate (¶ 148); and<br><br>• A "refund" check to Leachman Cardiology (Ex. 11 pp. 21-24) and a list of six alleged "charges" for Leachman Cardiology with no explanation to connect these to any alleged scheme.<br><br>Relator's conclusion that these alleged remunerations were to induce or reward Medicare referrals is pure speculation, not a plausible claim. *See Ashcroft v. Iqbal,* 556 U.S. 662, 680 (2009) (holding mere conclusory statements do not establish facial plausibility; *Bell Atl. v. Twombly,* 550 U.S. 544, 555 (2007) (holding a complaint must "raise a right to relief above the speculative level").<br><br>Relator fails to state a claim of a predicate AKS or Stark violation because he does not plausibly or with particularity |

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
|---|---|---|
| | | allege Leachman Cardiology knowingly and willfully received remuneration in return for referrals of Medicare or Medicaid patients, *see* 42 U.S.C. § 1320a–7b(b); *U.S. ex rel. Parikh v. Citizens Med. Ctr.,* 977 F. Supp. 2d 654, 665 (S.D. Tex. 2013), or had a prohibited financial relationship or compensation arrangement with the CHI Defendants. *See* 42 U.S.C. § 1395nn(a)(1).<br><br>The SAC fails to allege any understanding or knowledge of the alleged scheme on the part of any physician of Leachman Cardiology, such as the two who allegedly received benefits. There is no allegation these Defendants were on notice that they were expected to refer Medicare/Medicaid patients to the CHI Defendants or BSLMC in exchange for the benefits they allegedly received.  Further, the SAC fails to identify any Medicare/Medicaid patients these Defendants referred to the CHI Defendants or BSLMC pursuant to the alleged scheme. |
| Houston Thyroid and Endocrine Specialists, Drs. Elhaj & Jogi | ¶ 23 (Free billing for Thyroid; international patients referred TO them by ISD; Free Interpreters to Elhaj and Jogi; patients referred to Elhaj and Jogi; | In addition to lumping these Defendants in with the other Provider Defendants, the SAC specifically references Houston Thyroid, Dr. Elhaj, and Dr. Jogi only six times in the entire SAC, yet none of these references demonstrate knowledge on the part of these Defendants of any scheme to submit false claims or defraud the government.  Moreover, Relator fails to allege any Medicare/Medicaid patients that were referred by these Defendants in exchange for the |

8

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
|---|---|---|
| | scheduling assistance for Jogi);<br><br>¶ 201, 216 (patients referred to Jogi);<br><br>¶ 240 (K. Spence from Thyroid asked ISD to schedule blood tests for Dr. Jogi);<br><br>¶ 253 (ISD collected for Thyroid). | alleged benefits/services. The SAC is insufficient to satisfy the requirements of Rule 12(b)(6) and 9(b).<br><br>Specific references:<br><br>• The SAC alleges collection services, billing services, scheduling services, and interpreters for Houston Thyroid, Dr. Elhaj, and Dr. Jogi, yet there are no allegations of knowledge by these Defendants that such services were provided in exchange for Medicare/Medicaid patient referrals. Further, the SAC does not allege that these Defendants actually referred any Medicare/Medicaid patients in return, and no indication these Defendants were aware receiving such services was part of a scheme to defraud or submit false claims. (¶¶ 23, 253).<br><br>• The SAC references international patients referred to Dr. Jogi, but fails to allege any referral to the CHI Defendants or BSLMC by Dr. Jogi in return. (¶¶ 201, 216).<br><br>• Request made by Houston Thyroid and Dr. Jogi for CHI to schedule patient visits, but fails to connect the request with an impermissible referral made by Houston Thyroid/Dr. Jogi. No allegations made to demonstrate any government payor |

9

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
|---|---|---|
| | | /Medicare/Medicaid referrals made by Houston Thyroid/Dr. Jogi in exchange for scheduling patient visits. (¶ 240).<br><br>Relator has made no specific allegations to state a claim or satisfy the heightened pleading requirement under Rule 9(b). The SAC is insufficient to demonstrate these Defendants received the alleged benefits/services with the understanding and/or knowledge they were expected to refer Medicare/Medicaid patients to the CHI Defendants in return. Furthermore, the SAC fails to allege ***any*** Medicare/Medicaid patients were actually referred by these Defendants in exchange for the benefits/services. |
| Dr. Alan Hoffman | ¶ 25 (collections, billing, interpreters, travel perks, referrals to Hoffman);<br><br>¶ 147 (vacations, travel stipends, and other related gifts "[o]n information and belief" which is not enough for a fraud allegation); | The allegations in the SAC against Dr. Hoffman – even taken all together – are insufficient to satisfy the requirements of Rule 9(b).<br><br>Dr. Hoffman is listed as having received "kickbacks" in the form of international patient referrals, complimentary billing, collection and interpreter services, and free international travel perks. (¶ 25).<br><br>• Dr. Hoffman is listed as having received complimentary scheduling of appointments with international patients. |

10

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
|---|---|---|
|  | ¶¶ 158, 159, and 160 (reference to pressure from ISD to refer to Hoffman);<br><br>¶ 193 (35 pages of scheduling hundreds of international pts referred by ISD);<br><br>¶¶ 201, 216 (referred to Hoffman, Exhibit 6);<br><br>¶ 241 (lots of appointment scheduling services);<br><br>¶¶ 253, 256 (ISD collected for Dr. Hoffman);<br><br>¶¶ 262, 266 (vacations for Hoffman). | • He is listed as having received referrals of patients from United Arab Emirates and Honduras for appointments on 8/23/16 and 11/15/16 with interpreter and appointment reminder services.<br><br>• He is listed as having received bill collection services on six patients with payment disbursed on 2/25/16 and another with payment disbursed on 4/6/16.<br><br>• He is listed as having received billing service to the Embassy of the United Arab Emirates for services billed on behalf of two international patients (undated).<br><br>• He is listed as having received interpreter services on 11/17/16 for an international patient.<br><br>• He is listed with other Defendants as having received international travel perks. (¶¶259-267).<br><br>These limited alleged benefits are insufficient to have put Dr. Hoffman on notice that he was receiving these benefits in exchange for referring Medicare or Medicaid patients to the CHI Defendants and BSLMC.  With regard to the allegation of travel perks, for example, the SAC states that |

11

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
|---|---|---|
| | | the trips were provided by the hospital "knowingly and willfully to ingratiate themselves" with the physicians and "at least in part to induce Medicare and Medicaid referrals." Even assuming this allegation is true, the SAC does not allege or provide factual support that would indicate that Dr. Hoffman knew that BSLMC was trying to "ingratiate themselves" to induce Medicare and Medicaid referrals.<br><br>Relator alleges that Dr. Hoffman received referrals of international patients intended to induce him to make Medicare and Medicaid referrals back to BSLMC. (¶¶ 201, 216.)  Relator fails to allege any facts to show that Dr. Hoffman knew referrals were being made to him to induce Medicare referrals or that Dr. Hoffman was induced to make any Medicare referrals.<br><br>Relator states that it is "on information and belief" that he alleges international travel perks were provided to physicians who referred the most Medicare and Medicaid patients to BSLMC.  Pleading "on information and belief" does not excuse Relator from the heightened pleading standard of Rule 9(b), which requires that a party state with particularity the circumstances constituting fraud.  See, e.g., *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997).  Pleading "on information and belief" does not give |

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
|---|---|---|
| | | the relator "license to base claims of fraud on speculation and conclusory allegations." *Id*. The mere allegation of a motive is not sufficient to establish an inference of fraud under Rule 9(b). *Flaherty & Crumrine Preferred Income Fund Inc. v. TXU Corp.*, 565 F.3d 200, 213 (5th Cir. 2009). Relator fails to identify any facts to show that Dr. Hoffman was expected to or that he was aware that he was expected to make Medicare referrals in exchange for travel.<br><br>Relator alleges that when he tried to make a referral to another physician, he was "pressured" to make a referral to Dr. Hoffman because Dr. Hoffman provided a large volume of Medicare referrals to BSLMC. (¶¶158-160.)  Relator produces an email to support the allegation. (Ex. 3.)  The email shows not only that no referral was made to Dr. Hoffman in that instance, but also that there was a legitimate and innocent motive for making referrals to Dr. Hoffman – i.e., positive patient experience.  Further, Relator fails to allege that Dr. Hoffman had any knowledge of "pressure" to make referrals to him.   The allegation is insufficient to show that Dr. Hoffman had any knowledge of referrals made to him for an unlawful purpose. |
| Texas Endocrinology Group, Dr. Boccalandro | ¶ 26 (interpreters for patients referred to Boccalandro); | The SAC makes only a few specific mentions of Texas Endocrinology Group or Dr. Boccalandro, none of which – even taken all together – is sufficient to satisfy the requirements of Rule 9(b). |

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
|---|---|---|
| | ¶ 148 (discounted rent to those with offices in O'Quinn Medical Tower at 6624 Fannin St. – not identified by name, but address identified in ¶ 26); <br><br> ¶ 219 (listing interpreter services – potentially the same as in ¶ 26). | Texas Endocrinology Group and Dr. Boccalandro are listed as having received "kickbacks" in the form of international patient referrals and complimentary interpreters. (¶ 26). <br><br> • Dr. Boccalandro is listed as having received complimentary interpreters. The interpreter services are listed as having occurred on: <br>    o 7/8/14 for an evaluation with a patient from Qatar; <br>    o 8/8/14 for 2 patients from Saudi Arabia and Oman; <br>    o 3/4/15 for an evaluation of a patient from Kuwait; <br>    o 3/29/16 for an evaluation of a patient from Saudi Arabia; <br>    o 6/9/16 for an evaluation of a patient from Kuwait; <br>    o 8/15/16 for diabetes education of a patient from Kuwait; <br>    o 10/26/16 for an evaluation of a patient from Kuwait; <br>    o 2 undated interpreter services. (¶ 26). <br><br> These few alleged benefits are insufficient to have put Texas Endocrinology Group and Dr. Boccalandro on notice that |

14

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
|---|---|---|
| | | they were receiving these benefits in exchange for referring Medicare or Medicaid patients to the CHI Defendants and BSLMC, and Relator does not allege that they were aware of the total volume of alleged benefits to all Defendants. |
| Bone and Joint Clinic of Houston, ("BJCH") | ¶ 27 (collection for, and patients referred to BJCH, eight of ten drs. were on referral roster, one referral to CHI-St. Luke's through Dr. Watters; no remuneration for Drs.); <br><br> ¶ 182 (BJCH got "vast majority" of ISD's referrals for ortho services; Dr. Watters and 7 other docs were on referral roster); <br><br> ¶¶ 42, 183, 200 (BJCH through Dr. Watters referred a pt to Chi-St. Luke's for testing & surgery, "has good | These anemic and conclusory allegations lack any particularized details to substantiate an inference of fraudulent behavior: <br><br> • There are no allegations that BJCH submitted a claim, much less a false claim, and there are no allegations that BJCH made any statements, much less a false statement. The only "false" claims which are the subject of the SAC are those claims submitted by the CHI Defendants. Relator's claims against BJCH are based on the tenuous assertion that BJCH caused the CHI Defendants to violate § 3729(a)(1)(A) and § 3729(a)(1)(G) through referrals to BSLMC. <br><br> • Relator fails to allege that any BJCH physician making a referral knew about the scheme, knew the referral was substantially caused by the scheme, and knew at the time the scheme developed that a claim to Medicare was foreseeable. Relator makes none of these allegations regarding the solitary referral by Dr. Watters. |

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
|---|---|---|
| | reason to believe" this was billed to Medicare). | • There is no indication of why, much less how, "interpreter and billing services" provided by CHI-St. Luke's ISD to BJCH for an unknown, nameless, faceless international patient, would induce Dr. Watters to perform a surgery on a (non-international) Medicare patient at a hospital in the Texas Medical Center which CHI-St. Luke's operates in a joint venture with the Baylor College of Medicine. In fact, Dr. Watters is not listed on any of the logs attached as Exhibit 7 to the SAC. Likewise, BJCH doctors listed in the logs, e.g., Dr. Siff, are not alleged to have made any referrals to BSLMC.<br><br>• Although Relator alleges BJCH received the "vast majority" of orthopedic patients, SAC ¶ 182, Relator alleges only one referral by Dr. Watters. This asymmetrical relationship is the opposite of quid pro quo and undermines Relator's case. These allegations demonstrate the lack of a financial relationship under Stark or inducement under the AKS. The alleged "referral roster" and logs listing non-referring BJCH physicians (Ex. 7) are undated and there are no factual allegations of international patient referrals; the alleged checks to BJCH occurred on February 25, 2016 (Ex. 11, pp. 29-30) and November 12, 2012 (Ex. 13, p. 4); and the alleged referral of W.P. by Dr. Watters was |

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
|---|---|---|
| | | on October 15 and 17, 2015. These random data points are so disconnected that no "relationship" between them or quid pro quo can be inferred. |
| | | • There is no allegation that Dr. Watters ever treated any international patients associated with CHI-St. Luke's ISD, much less knew about, or more importantly, was in any way influenced by, the alleged provision of patients, interpreters and billers to BJCH when he made the decision to operate on W.P. |
| | | • There are no facts alleged supporting an inference that BJCH caused the submission of any claim, or made any false statement that was material to any claim for services provided to W.P. or any other patient. There is no allegation that Dr. Watters received any remuneration from the CHI Defendants, that he knew whether or not BJCH received any remuneration from the CHI Defendants or that he referred W.P. to BSLMC because of any such remuneration. |
| | | • The Complaint is devoid of any facts suggesting that BJCH treated any international patients or received rent reduction, collection services or interpretation services or any other form of remuneration from CHI-St. Luke's. Relator's Exhibit 11, pp. 29-30 is a "refund" |

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
|---|---|---|
| | | check without any connection to the alleged scheme. Relator's Exhibit 13, p. 4 is a ledger with no amount, explanation, or balance due to connect it with the alleged scheme. |
| Pulmonary Critical Care & Sleep Medicine, Drs. Santacruz, Singh, Colomer, Dahlberg | ¶ 28 (collection, patients referred to PCCSM, interpreter & patient to Santacruz, Singh, Colomer);<br><br>¶ 148 (discounted rent to those with offices in O'Quinn Medical Tower at 6624 Fannin St. – not identified by name, but O'Quinn identified in ¶ 28);<br><br>¶ 198 (Santacruz /PCCSM – lots of referrals to him when could have referred to in-house physician);<br><br>¶¶ 201, 216 (referred to Santacruz); | As an initial matter, Dr. Singh is incorrectly identified as an agent and/or representative of Pulmonary Critical Care & Sleep Medicine ("PCCSM"). He practices with Kidney & Hypertension Consultants and is represented by Luccia & Evans. Please see the section for Kidney & Hypertension Consultants for arguments specific to Dr. Singh.<br><br>The allegations in the SAC against PCCSM and Drs. Santacruz, Colomer, and Dahlberg are insufficient to satisfy the requirements of Rule 9(b).<br><br>They are listed as receiving the following alleged "kickbacks" that included lucrative international patient referrals and free collection services, interpreters, and scheduling services (¶ 28):<br><br>• Billing and collection services for five international patients on behalf of PCCSM (¶ 257);<br><br>• Complimentary interpreters for international patient referrals to Dr. Santacruz on three occasions: 5/20/14 for patient from Saudi Arabia; on 2/17/15 for patient |

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
|---|---|---|
|  | ¶ 257 (Hospital billed patient for Dr. Dahlberg/PCCSM). | from Qatar; and, on 9/27/16 for patient from Venezuela (also includes an appointment reminder) (¶ 216);<br><br>• One complimentary interpreter to Dr. Colomer on 2/15/17 for international patient G.N.;<br><br>• Billing and collection services for one international patient to Dr. Dahlberg and Drs. Manion and Connolly (not named Defendants) (¶ 257);<br><br>• International referrals to Dr. Santacruz (¶¶ 198, 201).<br><br>This fails to demonstrate PCCSM's and Drs. Santacruz, Colomer, and Dahlberg knowing and willful receipt and acceptance of remuneration from CHI Defendants in exchange for referring Medicare or Medicare patients to the CHI Defendants or BSLMC. |
| Greater Houston Gastroenterology, Dr. Raijman | ¶ 29 (two referrals to Raijman, others to "keep him happy,");<br><br>¶ 156 (reference to keeping him happy – no indication that he knew | Relator's allegations are conclusory and fail to allege the "who, what, when, where, and how" of any fraudulent activity by Dr. Raijman or Greater Houston Gastroenterology ("GHG").<br><br>The SAC is devoid of factual support for allegations as to Dr. Raijman and GHG and is insufficient to satisfy the requirements of 9(b). |

19

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
|---|---|---|
| | anything about this discussion). | • Relator's only allegations of "kickbacks" are two patient referrals to Dr. Raijman on 2/13/17 and 2/17/17 (¶ 29). Notably, Relator does not point to *any* underlying documentation, *nor does he attach any documentation* to support these alleged referrals. He has filed hundreds of pages of exhibits, and not one of them mentions or even references Dr. Raijman or GHG.<br><br>• Relator further alleges that the ISD wanted to "keep him happy (¶ 29)." Yet again, Relator does not point to any underlying documentation, *nor does he attach any documentation of* this alleged conversation. There is nothing pled that Dr. Raijman was aware of or participated in any discussion about "keeping him happy" or that he knowingly or willfully participated in any scheme. There are no specific allegations pled as to GHG. There is nothing specifically pled about the alleged kickbacks, and there is nothing to show that Dr. Raijman or GHG was aware of any scheme. There is no indication of when patients were allegedly seen in the practice, whether there was more than one, or what benefits were conferred. |

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
| --- | --- | --- |
| | | Relator does not allege any information about Medicare or Medicaid patients that Dr. Raijman or GHG referred to the CHI Defendants or BSLMC. |
| Kidney Associates | ¶ 30 (free collection for, patient referred to Kidney Associates) | Relator's allegations are conclusory and fail to allege the "who, what, when, where, and how" of any fraudulent activity by Kidney Associates.<br><br>The SAC is devoid of factual support for allegations as to Kidney Associates and is not sufficient to satisfy the requirements of 9(b).<br><br>• Kidney Associates is lumped with all of the other physicians as a "referring physician."<br><br>• Relator's only allegations of "kickbacks" for Kidney Associates are for alleged free collection on *one occasion* dated 2/25/16 (¶ 30). There is nothing specifically plead as to the alleged kickbacks, and there is nothing to show that Kidney Associates was aware. There is no indication of when patients were allegedly seen in the practice, whether there was more than one, which physician saw the patients, what benefits were conferred, or whether the collection was free. |

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
|---|---|---|
| | | Relator does not allege any information about Medicare or Medicaid patients that Kidney Associates referred to the CHI Defendants or BSLMC. |
| Dr. Singh and Kidney & Hypertension Consultants | ¶ 28 (interpreter & patient to Singh); <br><br> ¶ 31 (alleged collection; patient referred to Kidney & Hypertension Consultants); | Relator's allegations are conclusory and fail to allege the "who, what, when, where, and how" of any fraudulent activity by Dr. Singh or Kidney & Hypertension Consultants. <br><br> As an initial matter, Relator's SAC reveals the insincerity of his claims against Dr. Singh, as Relator is unable to identify Dr. Singh's specialty correctly.  He lumps Dr. Singh in with PCCSM as though Dr. Singh were a pulmonologist.  Dr. Singh is a nephrologist.  He is not affiliated with PCCSM or Drs. Colomer, Santacruz, or Dahlberg. <br><br> Moreover, The SAC is devoid of factual support for allegations as to Dr. Singh and is insufficient to satisfy the requirements of 9(b). <br><br> • Relator alleges that Dr. Singh received "kickbacks" for only one interpreter on 10/24/16 and three interpreters on unknown, undated occasions (¶28).  There is nothing specifically pled about the alleged kickbacks nor Dr. Singh's awareness of any scheme. |

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
|---|---|---|
| | | The SAC is devoid of factual support for allegations as to Kidney & Hypertension Consultants, and is not sufficient to satisfy the requirements of 9(b). <br><br> • Kidney & Hypertension Consultants is lumped with all of the other physicians as a "referring physician." <br><br> • Relator's only allegations of "kickbacks" for Kidney & Hypertension Consultants are for alleged free collection on *one occasion* dated 4/6/16 (¶ 31).  There is nothing specifically pled as to the alleged kickbacks, and there is nothing to show that Kidney & Hypertension Consultants was aware.  There is no indication of when patients were allegedly seen in the practice, whether there was more than one, which physician saw the patients, what benefits were conferred, or whether the collection was free. <br><br> Relator does not allege any information about Medicare or Medicaid patients that Dr. Singh or Kidney & Hypertension Consultants referred to the CHI Defendants or BSLMC. |
| Surgical Associates of Texas, Dr. Livesay | ¶ 32 (interpreters, appointment reminders, patients referred to Dr. Livesay – and on the | The allegations in the SAC against SAT and Dr. Livesay are insufficient to satisfy the requirements of Rule 9(b). <br><br> • SAT and Dr. Livesay are included with other Defendants as having received interpreters, |

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
|---|---|---|
| | roster; free collection for Surg. Assocs.);<br><br>¶¶ 201, 216 (referrals to Livesay); | appointment reminders, and patient referrals, and collection services.  (¶¶ 32, 163, 201, 216).<br><br>These conclusory allegations fail to allege the "who, what, when, where, and how" of any allegedly fraudulent activities as to each of these individual Defendants.<br><br>SAT and Dr. Livesay are listed as receiving the following alleged "kickbacks" that included lucrative international patient referrals and free collection services, interpreters, and scheduling services (¶ 28):<br><br>• Collection services for an international patient on behalf of SAT for $70.00 on 2/25/16 (¶ 32);<br><br>• A complimentary interpreter and appointment reminder for an international patient from the UAE for evaluation on 10/4/16 (¶¶ 32, 216);<br><br>• A complimentary interpreter to Dr. Livesay at the Texas Heart Institute for an unidentified international patient (¶ 32);<br><br>• International referrals to Dr. Livesay (¶ 201). |

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
|---|---|---|
| | | These alleged benefits are insufficient to have put Dr. Livesay or SAT on notice that they were receiving these benefits in exchange for referring Medicare or Medicaid patients to the CHI Defendants and BSLMC. This fails to demonstrate SAT's and Dr. Livesay's knowing and willful receipt and acceptance of remuneration from CHI Defendants in exchange for referring Medicare or Medicare patients to the CHI Defendants or BSLMC.<br><br>Relator alleges that Dr. Livesay received referrals of international patients intended to induce him to make Medicare and Medicaid referrals back to BSLMC. (¶¶ 201, 216.) Relator fails to allege any facts to show that Dr. Livesay knew referrals were being made to him to induce Medicare and Medicaid referrals or that Dr. Livesay was induced to make any Medicare and Medicaid referrals. |
| Center for ENT, Drs. Hung and Moses | ¶ 33 (free billing and collection, patients referred to ENT; interpreter to Moses);<br><br>¶ 217 (interpreter to Dr. Hung). | The SAC makes only a few specific mentions of enter for ENT, Dr. Hung, and Dr. Moses, none of which – even taken all together – is sufficient to satisfy the requirements of Rule 9(b).<br><br>• The Center for ENT, Dr. Hung, and Dr. Moses are listed as having received "kickbacks" in the form of international patient referrals and complimentary billing and scheduling services. (¶33). |

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
| --- | --- | --- |
| | | • The Center for ENT is listed as having received billing and collection services as follows:<br><br>    o Collection of bills for an international patient, with payment disbursed on 2/25/16;<br><br>    o Billing and collection services, with payment made on 11/7/12.<br><br>• Dr. Moses is listed as having received a complimentary interpreter on 4/21/17 for patient M.K. from Qatar.<br><br>These few alleged benefits are insufficient to have put The Center for ENT, Dr. Moses, or Dr. Hung on notice that they were receiving these benefits in exchange for referring Medicare or Medicaid patients to the CHI Defendants and BSLMC, and Relator does not allege that they were aware of the total volume of alleged benefits to all Defendants.<br><br>• Relator does not allege any remuneration to Dr. Hung. Without having received remuneration, Dr. Hung could not have had an improper relationship with the CHI Defendants under the Stark Law or have received improper remuneration under the AKS. |

26

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
|---|---|---|
| Dr. Mesa | ¶ 35 (collection, interpreter, appointment reminder, and patients referred TO Mesa);<br><br>¶¶ 201, 216 (referrals to Mesa). | The allegations in the SAC against Dr. Mesa are insufficient to satisfy the requirements of Rule 9(b).<br><br>Dr. Mesa is listed as receiving the following alleged "kickbacks" that included lucrative international patient referrals and complimentary billing and collection services, scheduling services and interpreters (¶ 35):<br><br>• Billing and collection services for two international patients on behalf of Dr. Mesa;<br><br>• One complimentary interpreter and appointment reminder to Dr. Mesa on 8/23/16 for patient from Kuwait (¶ 216);<br><br>• Lucrative international referrals to Dr. Mesa (¶ 201).<br><br>This fails to demonstrate Dr. Mesa's knowing and willful receipt and acceptance of remuneration from CHI Defendants in exchange for referring Medicare or Medicare patients to the CHI Defendants or BSLMC. |
| Dr. Cherem | ¶ 36 (free collection, interpreter, appointment reminders, and patient referred to Cherem); | Dr. Cherem is specifically referenced only four times in the SAC, yet none of these references demonstrate knowledge on his part of any scheme to submit false claims or defraud the government.  None of these allegations demonstrate Dr. |

27

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
|---|---|---|
| | ¶¶ 201, 216 (referrals to Cherem). | Cherem made any Medicare/Medicaid patient referrals in exchange for the alleged benefits/services.  The SAC is insufficient to satisfy the requirements of Rule 12(b)(6) and 9(b).<br><br>Specific references:<br><br>• Collection services, interpretation services, and appointment reminders for Dr. Cherem, yet no allegations demonstrating knowledge or notice by Dr. Cherem that such services were provided in exchange for Medicare/Medicaid patient referrals.  Further, no indication Dr. Cherem was aware receiving such services was part of a scheme to defraud or submit false claims. (¶36).<br><br>• Reference to international patients referred to Dr. Cherem, but again, no allegations of any referral of Medicare/Medicaid patients made by Dr. Cherem in return. (¶¶ 201, 216).<br><br>Relator has made no specific allegations to state a claim or satisfy the heightened pleading requirement under Rule 9(b) as to Dr. Cherem.  There are no allegations to demonstrate Dr. Cherem knew or understood the alleged benefits/services were provided in exchange for referrals of Medicare/Medicaid patients to CHI-Defendants. |

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
| --- | --- | --- |
| | | Furthermore, the SAC completely fails to allege *any* Medicare/Medicaid patients who were actually referred by Dr. Cherem in exchange for the alleged benefits/services. |
| Dr. Douglas | ¶ 37 (interpreter, billing, collection, appointment reminder, patients referred to Douglas);<br><br>¶¶ 201, 216 (referrals to Douglas);<br><br>¶ 257 (Hospital billed for Douglas). | Dr. Douglas is specifically referenced only five times in the SAC, yet none of these allegations demonstrate knowledge on his part of any scheme to submit false claims or defraud the government.  None of allegations pertaining to Dr. Douglas demonstrates he made any Medicare/Medicaid patient referrals in exchange for the alleged benefits/services provided by CHI-Defendants. The SAC is insufficient to satisfy the requirements of Rule 12(b)(6) and 9(b).<br><br>Specific references:<br><br>• Collection services, billing services, interpretation services, and appointment reminders for Dr. Douglas, yet no allegations demonstrating knowledge by Dr. Douglas that such services were provided in exchange for Medicare/Medicaid patient referrals.  Further, no allegations of any Medicare/Medicaid patients who were actually referred by Dr. Douglas in exchange for these services. (¶¶ 37, 257).<br><br>• Reference to international patients referred to Dr. Douglas, but no allegations of any referral of |

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
|---|---|---|
| | | Medicare/Medicaid patients to the CHI Defendants or BSLMC by Dr. Douglas in return. (¶¶ 201, 216). General references: • Dr. Douglas is included, not by name but by address, with other Defendants as having received discounted rent and free building maintenance services. (¶¶ 148). Relator has made no specific allegations to state a claim or satisfy the heightened pleading requirement under Rule 9(b) as to Dr. Douglas.  There is no allegation showing Dr. Douglas knew or understood the alleged benefits/services were provided in exchange for referrals of Medicare/Medicaid patients to the CHI Defendants. Furthermore, the SAC fails to allege **any** Medicare/Medicaid patients who were actually referred by Dr. Douglas in exchange for the alleged benefits/services. |
| Dr. Fishman | ¶ 38 (interpreters, patients referred to Fishman); | The SAC makes only a few specific mentions of Dr. Fishman, none of which – even taken all together – are sufficient to satisfy the requirements of Rule 9(b). • Dr. Fishman is listed as having received "kickbacks" in the form of international patient referrals and complimentary interpreters. (¶38).  The interpreter services are listed as having occurred on: |

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
|---|---|---|
| | | o   9/15/16 for an evaluation with an international patient;<br><br>o   an unknown date for an international patient referred to Dr. Fishman;<br><br>o   4/14/16 for a patient from Saudi Arabia;<br><br>o   9/20/16 for a patient from Kuwait; and<br><br>o   10/19/16 for a patient from Kuwait.<br><br>These few alleged benefits Dr. Fishman are insufficient to have put him on notice that he was receiving these benefits in exchange for referring Medicare or Medicaid patients to the CHI Defendants and BSLMC, and Relator does not allege that Dr. Fishman was aware of the total volume of alleged benefits to all Defendants. |
| BCM, Baylor MedCare, Drs. Katz & Sista | ¶ 39 (interpreters, billing, collection, patients referred to BCM and/or Medcare; one interpreter, patient referred to Dr. Katz; nothing to Dr. Sista); | The SAC makes only a few specific mentions of BCM, Baylor Medcare, and Drs. Sista and Katz, none of which – even taken all together – are sufficient to satisfy the requirements of Rule 9(b).<br><br>•   They are listed as receiving only the following alleged "kickbacks": |

31

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
|---|---|---|
| | ¶ 193 (payment to Baylor MedCare for nine international patients);<br><br>¶ 250 (billing and collection for Baylor Medcare). | o One interpreter to Dr. Katz on June 22, 2016 for an international patient from Qatar (¶ 39);<br><br>o Interpreters to BCM/Baylor Medcare on eleven occasions (two of which appear to be the same as they occurred at the same date and time and involved the same interpreter) (¶ 39);<br><br>o One complimentary interpreter to Dr. Zhang (not a named Defendant) at BCM on September 19, 2016 (¶ 39);<br><br>o Billing services for nine or ten international patients on behalf of Baylor Medcare. (¶¶ 39, 193, 250).<br><br>The paucity of these alleged benefits to BCM, Baylor Medcare, and Dr. Katz is insufficient to have put any of these Defendants on notice that they were receiving these benefits as the quid in return for the quo of referring Medicare or Medicaid patients to the CHI Defendants and BSLMC, and Relator does not allege that these Defendants were aware of the total volume of alleged benefits to all Defendants. |

APPENDIX A – CHART OF SAC REFERENCES TO EACH PROVIDER DEFENDANT

| Provider | SAC References | Specific Arguments |
|---|---|---|
| | | • Relator does not specifically allege any remuneration to Dr. Sista.  Without having received remuneration, Dr. Sista could not have had an improper relationship with the CHI Defendants under the Stark Law or have received improper remuneration under the AKS. |