IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA, the
STATE OF TEXAS, the STATE OF
COLORADO, the STATE OF INDIANA,
the STATE OF IOWA, the STATE OF
MINNESOTA, the STATE OF NEW
MEXICO, the STATE OF TENNESSEE,
the STATE OF WASHINGTON, *ex rel.*
HICHEM CHIHI,

   Plaintiff-Relator,

  v.

CATHOLIC HEALTH INITIATIVES;
CHI-ST. LUKE'S HEALTH; BAYLOR
COLLEGE OF MEDICINE; MEDCARE
BAYLOR; BONE AND JOINT CLINIC
OF HOUSTON; GREATER HOUSTON
GASTROENTEROLOGY; HOUSTON
THYROID & ENDOCRINE
SPECIALISTS; KIDNEY ASSOCIATES;
KIDNEY AND HYPERTENSION
CONSULTANTS; LEACHMAN
CARDIOLOGY ASSOCIATES;
PULMONARY CRITICAL CARE &
SLEEP MEDICINE CONSULTANTS;
SURGICAL ASSOCIATES OF TEXAS;
TEXAS ENDOCRINOLOGY GROUP;
THE CENTER FOR ENT; CRISTINA
BOCCALANDRO, M.D.; LAZARO
CHEREM, M.D.; ALBERTO COLAMAR,
M.D.; CARL DAHLBERG, M.D.; BRIAN
DOUGLAS, M.D.; FAREED ELHAJ,
M.D.; IRVING FISHMAN, M.D.; ALAN
HOFFMAN, M.D.; RICHARD HUNG,
M.D.; MEDHAVI JOGI, M.D.; MARCIA
KATZ, M.D.; ZVONIMIR KRAJCER,
M.D.; DEWITT LEACHMAN, M.D.;

Civil Action No. 4:18-cv-00123

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

JAMES LIVESAY, M.D.; ALBERTO          )
LOPEZ, M.D.; ANDRES MESA, M.D.;       )
RON MOSES, M.D.; ISAAC RAIJMAN,       )
M.D.; JOSE FERNANDO SANTACRUZ,        )
M.D.; NAVNEET SINGH, M.D.;            )
RAMACHANDRA SISTA, M.D.; OTHER        )
UNKNOWN DEFENDANT DOCTORS,            )
                                      )
    Defendants.   )


## PROVIDER DEFENDANTS' CONSOLIDATED REPLY IN SUPPORT OF MOTION TO DISMISS RELATOR'S SECOND AMENDED COMPLAINT

# **TABLE OF CONTENTS**

**Page**

I.     ARGUMENT .......................................................................................... 3

    A.  Relator Fails to Plead a Fraudulent Scheme, because He Fails
        to Plead the Requisite Knowledge. ......................................... 3

        1.  Relator Fails to Plead Actual Knowledge. ...................... 4

        2.  Relator Fails to Plead Deliberate Ignorance or Reckless
            Disregard. ....................................................................... 6

    B.  Relator Fails to Plead that Any Submitted Claims Were False. ....... 8

        1.  Relator fails to plead Provider Defendants' FCA liability due
            to a Stark Law violation. .................................................. 9

        2.  Relator fails to plead Provider Defendants' FCA liability due
            to an AKS violation. ....................................................... 11

    C.  Relator Fails to Satisfy Rule 9(b) ............................................. 14

    D.  The SAC Fails to Plead the Elements of a Conspiracy Claim .......... 15

    E.  Baylor College of Medicine Has Immunity from Relator's FCA
        Claims. ................................................................................... 16

    F.  The Provider Defendants Did not Waive or Concede any
        Arguments or Affirmative Defenses ................................................ 19

    G.  Because Relator's Federal FCA Claims Fail, his State Law
        Claims Fail As Well and Should Be Dismissed or, Alternatively,
        The Court Should Decline to Exercise Supplemental
        Jurisdiction over Relator's State Law Claims .................................. 19

    H.  Dismissal of the Claims Should Be with Prejudice .......................... 20

II.    CONCLUSION ...................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .............................................................................. 3, 6, 15

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ....................................................................................... 6

*Celanese Corp. v. Coastal Water Auth.,*
475 F. Supp. 2d 623 (S.D. Tex. 2007) .................................................... 17, 18

*Daniel v. Univ. of Texas Southwestern Medical Center,*
960 F.3d 253 (5th Cir. 2020) .................................................................... 17

*Parikh v. Citizens Medical Center,*
977 F. Supp. 2d 654 (S.D. Tex. 2013) ......................................................... 9

*United States v. Bollinger Shipyards, Inc.,*
No. 12-cv-920 SECTION: R(5), 2013 WL 393037, (E.D. La.
Jan. 30, 2013) ............................................................................................. 4

*United States v. Davis,*
132 F.3d 1092 (5th Cir. 1998) .................................................................. 12

*U.S. ex rel. Adrian v. Regents of Univ. of Cal.,*
363 F.3d 398 (5th Cir. 2004) .................................................................... 18

*U.S. ex rel. Foster v. Bristol-Myers Squibb,*
587 F. Supp. 2d 805 (E.D. Tex. 2008) ...................................................... 14

*U.S. ex rel. Gage v. Davis S.R. Aviation, LLC,*
623 Fed. App'x 622 (5th Cir. 2015) .......................................................... 20

*U.S. ex rel. Grubbs v. Kanneganti,*
565 F.3d 180 (5th Cir. 2009) ............................................................... 14, 15

*U.S. ex rel. Health Choice Alliance, LLC, v. Eli Lilly & Co.,*
No. 5:17-cv-123-RWS-CMC, 2018 WL 4026986 (E.D. Tex. July
25, 2018) .................................................................................................. 3, 12

*U.S. ex rel. Hendrickson v. Bank of Am., N.A.*,
   343 F. Supp. 3d 610 (N.D. Tex. 2018) ............................................................4

*U.S. ex rel. Integra Med Analytics, LLC v. Baylor Scott & White*
   *Health* (*Integra Med I*),
   No. 5:17-cv-886-DAE, 2019 WL 3713756 (W.D. Tex. Aug. 5,
   2019), *aff'd*, 2020 WL 2787652 (5th Cir. May 28, 2020) .......................... 3, 8

*U.S. ex rel. Jamison v. McKesson Corp.*,
   No. 208CV214 SA DAS, 2009 WL 3176168 (N.D. Miss. Sept.
   29, 2009) ............................................................................................. 15, 16

*U.S. ex rel. Kress v. Masonry Sols. Int'l, Inc.*,
   No. CIV.A. 12-2380, 2015 WL 365835 (E.D. La. Jan. 26, 2015)............... 16

*U.S. ex rel. Longhi v. Lithium Power Techs., Inc.*,
   575 F.3d 458 (5th Cir. 2009)..........................................................................3

*U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*,
   519 F. App'x 890 (5th Cir. 2013*)* ................................................................. 13

*U.S. ex rel. Parikh v. Brown*,
   587 Fed. App'x 123 (5th Cir. 2014) ........................................................ 10, 11

*U.S. ex rel. Ruscher v. Omnicare, Inc., et al.* (*Ruscher III*),
   663 F. App'x 368 (5th Cir. 2016) ...................................................................5

*U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.*,
   336 F.3d 375 (5th Cir. 2003)................................................................... 13, 20

*U.S. ex rel. Wismer v. Branch Banking & Trust Co.*,
   No. 3:12-cv-1894-B, 2013 WL 5989312 (N.D. Tex. Nov. 12,
   2013) ..............................................................................................................4

*Vermont Agency of Nat. Resources v. U.S. ex rel. Stevens*,
   529 U.S. 765 (2000)..................................................................................... 16

## Statutes

31 U.S.C. § 3729(b)(1) .......................................................................................3

42 U.S.C. § 1320a-7b(b)(1) ............................................................................... 11

**Rules**

Fed. R. Civ. P. 9(b) ........................................................................ *passim*

Fed. R. Civ. P. 12(b)(6) ............................................................... 1, 5

Fed. R. Civ. P. 12(h) .................................................................... 19

**Regulations**

42 C.F.R. § 411.354 ..................................................................... 9, 10

**Other Authorities**

*Baylor College of Medicine, About Us*, Statistics, *available at*
https://www.bcm.edu/about-us/diversity-equity-and-
inclusion/statistics, *last visited* Feb. 3, 2021 ............................... 17

## PROVIDER DEFENDANTS' CONSOLIDATED REPLY IN SUPPORT OF THEIR CONSOLIDATED MOTION TO DISMISS RELATOR'S SECOND AMENDED COMPLAINT

Relator's lengthy Opposition to the Provider Defendants' Motion to Dismiss fails to address the defects in the Second Amended Complaint ("SAC"). Instead, Relator claims he ***does not have to*** plead certain elements of his causes of action with respect to the Provider Defendants.  Relator is wrong. Rules 12(b)(6) and 9(b) require Relator to plausibly plead facts that support each element of his FCA claims.  Yet the SAC fails to allege well-pled facts as to the following:

- That each of the 31 Provider Defendants received compensation from the CHI Defendants, creating a financial relationship (predicate Stark Law violation);

- That each Provider Defendant referred Medicare or Medicaid patients to the CHI Defendants for designated health services, which then led to a claim for reimbursement to a Government payor (predicate Stark Law violation);

- That each—or any—of the Provider Defendants had any intent to violate the AKS (predicate AKS violation);

- That each of the Provider Defendants "knew" (as defined by the FCA) that treating international patients referred by the CHI Defendants was a violation of the Stark Law or the AKS which led to the submission of false claims to the government (FCA violation);

- That each—or any—of the Provider Defendants knew of a purported scheme by the CHI Defendants to refer patients to "preferred" physicians, including whether they were on a purported "referral" roster (FCA violation);

- That each—or any—of the Provider Defendants knew that they were receiving unlawful compensation or benefit by treating international patients referred by the CHI Defendants (FCA violation); and

- That each—or any—of the Provider Defendants participated in an unlawful conspiracy to defraud the government (conspiracy to violate the FCA).

Without these necessary allegations, the SAC describes merely a program to ensure that international patients seeking services from a Houston hospital also would receive medically necessary health care services from Houston physician specialists. That is not a fraud scheme.

Moreover, Relator fails to plead his allegations with Rule 9(b) particularity, including failing to plead these allegations as to each Provider Defendant individually—something he must do. Rule 9(b)'s purpose is not merely to give a defendant notice of the claims against them, but also to act as a gatekeeper from discovery and to protect defendants from meritless fraud claims.

Lastly, the claims against Defendant BCM should be dismissed, because BCM has immunity from suit under the FCA as an arm of the state.

Because the SAC fails to plead a plausible scheme to defraud the government and fails to do so with the requisite particularity, the SAC should be dismissed.

# I.   ARGUMENT

## A.   Relator Fails to Plead a Fraudulent Scheme, because He Fails to Plead the Requisite Knowledge.

To plead an FCA violation, a complaint must allege a "scheme . . . to submit *false* claims." *U.S. ex rel. Integra Med Analytics, LLC v. Baylor Scott & White Health* (*Integra Med I*), No. 5:17-cv-886-DAE, 2019 WL 3713756 (W.D. Tex. Aug. 5, 2019), *aff'd*, 2020 WL 2787652 (5th Cir. May 28, 2020).   This requires Relator to allege that the Provider Defendants have the requisite scienter to participate in the scheme—either:   actual knowledge of falsity, or deliberate ignorance or reckless disregard of the truth or falsity of the information provided.   *See U.S. ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 468 (5th Cir. 2009); *see also* 31 U.S.C. § 3729(b)(1). The SAC fails to do so.

Relator is correct that he can allege knowledge generally, Fed. R. Civ. P. 9(b), but "simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)." *U.S. ex rel. Health Choice Alliance, LLC, v. Eli Lilly & Co.*, No. 5:17-cv-123-RWS-CMC, 2018 WL 4026986, at *5 (E.D. Tex. July 25, 2018) (quoting references omitted).   Further, Relator cannot allege knowledge through conclusory statements and opinions about the law; these are not well-pled facts, and the Court does not have accept them as true.   *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As an initial matter, Relator erroneously argues it is inappropriate to decide scienter at the pleading stage.  Opp'n at 76-77.  Courts in the Fifth Circuit have consistently dismissed cases where scienter is inadequately pled. *See, e.g., U.S. ex rel. Hendrickson v. Bank of Am., N.A.*, 343 F. Supp. 3d 610, 635-36 (N.D. Tex. 2018) (granting motion to dismiss because relator's vague group pleading that "the misconduct was routine, . . . each bank was a knowledgeable ACH participant, and . . . had a business in[c]entive to continue receiving payments" was insufficient to plead that the defendants knowingly violated an obligation); *United States v. Bollinger Shipyards, Inc.*, No. 12-cv-920 SECTION: R(5), 2013 WL 393037, at *6-8 (E.D. La. Jan. 30, 2013) (dismissing FCA claims because United States failed to adequately allege scienter); *U.S. ex rel. Wismer v. Branch Banking & Trust Co.*, No. 3:12-cv-1894-B, 2013 WL 5989312, at *7 (N.D. Tex. Nov. 12, 2013) (same).

### 1.   Relator Fails to Plead Actual Knowledge.

Relator implicitly concedes he has not pled that the Provider Defendants had "actual knowledge."  Opp'n at 76-78.  The SAC fails to allege that the CHI Defendants told the Provider Defendants of any alleged scheme to generate patient referrals.  Relator tries to rectify this omission by alleging that "[o]n information and belief" the CHI Defendants told the Provider Defendants either directly or through their staff.  SAC ¶284.  The SAC cannot survive by offering rank speculation on the Provider Defendants' knowledge.  Relator

must plead facts. *See, e.g., U.S. ex rel. Ruscher v. Omnicare, Inc., et al.* (*Ruscher III*), 663 F. App'x 368, 375 (5th Cir. 2016). Relator attempts to distinguish *Ruscher III* because it was a summary judgment motion. Opp'n at 83-84. But Relator must still offer well-pled facts to survive a Rule 12(b)(6) motion. In *Ruscher III* the court found no **evidence** that the defendants were told about a scheme; here, Relator pleads no facts to support an **allegation** that the Provider Defendants were told about a scheme.

Relator includes one fact regarding one of the 31 Provider Defendants as a basis for knowledge for that Provider Defendant: that Dr. Hoffman attended some ISD staff meetings where ISD staff were allegedly instructed to refer "as many patients as possible" to Dr. Hoffman. Opp'n at 76-78; SAC ¶ 160, But even this allegation is lacking. Nowhere does Relator allege that Dr. Hoffman was ever told—or understood that instruction to mean—that he was expected to refer Medicare and Medicaid patients back to BSLMC. SAC ¶ 160. Rather, Relator states that Dr. Hoffman was already a "consistent source of referrals of Medicare and Medicaid patients." *Id.* It strains credulity that Dr. Hoffman would know that future referrals of international patients to him would be made for the purpose of inducing him to do something he was supposedly already doing.

Moreover, this single allegation regarding Dr. Hoffman is inadequate to support an allegation that **each** of the 31 Provider Defendants knew about the

referrals.  Relator does not allege that Dr. Hoffman discussed this meeting with the other Provider Defendants.   Accordingly,  this isolated allegation is insufficient to plausibly allege Dr. Hoffman's knowledge or that of any other Provider Defendant.  These are exactly the type of threadbare, incomplete, and conclusory allegations that *Twombly*, *Iqbal*, and their progeny have held insufficient.  *See Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

        2.    <u>Relator Fails to Plead Deliberate Ignorance or Reckless Disregard.</u>

Relator argues in his Opposition that his scienter allegations are sufficient under the FCA based on "deliberate ignorance" or "reckless disregard".  Opp'n 84.  But Relator fails to meet even these standards.  *See* Mot. at 21-25.

Relator alleges that the "extensive volume, high frequency, and significant value of remuneration coming from the ISD made [the scheme] obvious and apparent[,]" SAC ¶ 282, and that the Provider Defendants' knowledge of statutes and government guidance should have put them on notice of "likely AKS and Stark violations[,]" Opp'n at 77-79.  But these "facts" relate to the CHI Defendants' alleged actions or beliefs.  *See* Opp'n at 101; SAC ¶¶149-163, 280-84.  Relator does not allege that the Provider Defendants knew they were on a referral roster or were "preferred providers."  And the small frequency, volume, or value of benefits allegedly flowing from the CHI

Defendants to the Provider Defendants could not plausibly have put them on notice that they were expected to refer patients back to BSLMC.  *See* Mot. at 21-23, and App'x A.

This is particularly true in Texas, where the CHI Defendants must refer patients to outside physician specialists for certain medical treatment, because the CHI Defendants cannot and do not employ physicians—in compliance with Texas's Corporate Practice of Medicine Doctrine, a crucial point of law Relator fails to address.  *See* Mot. at 23; Opp'n at 76-84.  The Provider Defendants would have no reason to believe that these infrequent, legally-required referrals were intended to be rewards for past referrals or intended to induce future referrals.

Relator claims he has "explicitly alleged the extensive volume of the remuneration," citing to SAC ¶¶ 280-282.  Opp'n at 84.  These paragraphs, however, contain only conclusory statements that the volume was extensive. Relator references his exhibits and summarily concludes that they show the extensive volume of remuneration.  Opp'n at 38.  As shown in the chart, however, *see* Mot. at 21-23, and App'x A, the specific instances of alleged remuneration were *de minimis* at best and, accordingly, insufficient to give rise to a strong inference that the Provider Defendants would have known they were expected to refer Medicare and Medicaid patients to the CHI Defendants or that they were part of a purported fraud scheme.  Further, Relator fails to

plead that the Provider Defendants knew about the aggregate "extensive" volume before he compiled it in the SAC.

Relator asserts that the Provider Defendants cannot offer "alternate explanations" for their conduct at the motion to dismiss stage where facts must be construed in favor of Relator. *See, e.g.,* Opp'n at 48. The Provider Defendants are not offering alternate explanations but are, instead, articulating that, based on the facts pled in the SAC, Relator has only pled the existence of a program to ensure medical care is provided for international patients. Relator attempts to distinguish the *Integra Med* cases by saying that, because his allegations rely on the AKS and the one-purpose test, *Integra Med* is inapposite. Opp'n at 82. But *Integra Med* is on point. Like *Integra Med,* here, the CHI Defendants' referrals of the international patients to outside specialists is consistent with the legal requirements of the Texas Corporate Practice of Medicine Doctrine. *See* Mot. at 23.

## B. Relator Fails to Plead that Any Submitted Claims Were False.

Relator not only fails to plausibly plead knowledge of a fraud scheme, he fails to sufficiently plead that any alleged claims were actually false. While his FCA cause of action rests entirely on a false certification theory arising from alleged violations of the Stark Law and AKS, Relator fails to plead facts to support that the Provider Defendants violated the Stark Law or AKS, or participated in a scheme to do so.

1.  **Relator fails to plead Provider Defendants' FCA liability due to a Stark Law violation.**

Relator fails to plausibly plead that any Provider Defendant violated the Stark Law.  *See* Mot. at 27-29; *Parikh v. Citizens Medical Center*, 977 F. Supp. 2d 654, 668 (S.D. Tex. 2013) (holding that to allege a Stark Law violation, relators must plead facts to support the existence of "financial relationships and referrals giving rise to Stark liability.").  Relator has not refuted—and cannot refute—that the Physician Group Defendants cannot violate the Stark Law, as Stark is intended to apply to referrals by individual physicians, not group practices.  *See* Mot. at 27-28; Opp'n at 93.  Moreover, he fails to plead facts to show that:

- Each of the 31 Provider Defendants had a "financial relationship" with the CHI Defendants.  *See* 42 C.F.R. § 411.354;

- Each Provider Defendant referred patients to the CHI Defendants for designated health services; and

- Claims were submitted to Government payors as a result.

Mot. at 28-29.

The absence of any allegations that the CHI Defendants paid physicians—such as Dr. Watters or any of the named Provider Defendants—who referred patients to BSLMC, is a substantive failure to plead a Stark violation.  It is not—as Relator would have the Court believe—cured by concepts of agency.  Relator concedes this defect by obliquely referencing an indirect compensation relationship between the CHI Defendants and the

individual physicians, Opp'n at 94, and by stating that the Physician Defendants "stand in the shoes" of their physician practices. *Id.* But that exception only matters if Relator alleges a prima facie Stark violation, which he does not. To demonstrate that the CHI Defendants compensated the Provider Defendants, Relator relies on two broad allegations: (1) CHI Defendants referred international patients to the Provider Defendants for medical treatment (which were legally required), and (2) the CHI Defendants provided a few concierge services for the international patients' benefits, (which were of *de minimis* value to any of the Provider Defendants). *See* SAC ¶¶ 145-46, 148, 167; Mot. at App'x A. Not only are these actions insufficient to constitute a "financial relationship" as defined by the Stark Law as to any of the Provider Defendants, *see* 42 C.F.R. § 411.354, Relator fails to allege with particularity that **each of the** Provider Defendants received this so-called "remuneration." Mot. at 29. Moreover, he generally pleads that such *de minimis* "remuneration" led to Medicare and Medicaid referrals without identifying referrals by **each of the** Provider Defendants, which is not sufficient. *See* Mot. at 29. To allege FCA liability for the Provider Defendants, Relator must allege facts to support that **each of the** Provider Defendants (1) violated the Stark Law and (2) knew they were referring patients that would lead to the submission of a false claim, despite any alleged Stark Law violation. *See, e.g., U.S. ex rel. Parikh v. Brown*, 587 Fed. App'x 123, 129 (5th

Cir. 2014) ("The FCA punishes 'knowingly' making a false claim").  Relator has
not done that.

Recognizing that his Stark allegations are insufficient, Relator claims
without any legal support that he does not have to plead that each Provider
Defendant violated the Stark Law, Opp'n at 92, 95, 97, and summarily
concludes that the Provider Defendants could have FCA liability based on CHI
Defendants' actions alone.  Opp'n at 90, 92.  Relator is wrong.  For Provider
Defendants to have FCA liability predicated on a Stark violation, Relator must
sufficiently plead that each Provider Defendant violated the Stark Law and
then knowingly referred patients in connection with the Stark violation that
led to the submission of a false claim to a government payor.  *U.S. ex rel.
Parikh*, 587 Fed. App'x at 129.  Relator has not pled and is unable to plead
those essential facts.

### 2.   Relator fails to plead Provider Defendants' FCA liability due to an AKS violation.

Similarly, Relator fails to plead sufficient facts to show that any Provider
Defendant violated the AKS.  *See* Mot. at 30-34.  Relator contends that he must
only plead that the Provider Defendants acted knowingly and willfully in
receiving remuneration in return for referrals, Opp'n at 88-90,  ignoring that
he has failed to plausibly allege facts that any of the Provider Defendants
received—or knew that they were receiving—remuneration in exchange for
referrals, as prohibited under the AKS.  42 U.S.C. § 1320a-7b(b)(1).  Relator

only vaguely alleges that the CHI Defendants referred a few international patients to the Provider Defendants (as legally required) and provided a few concierge services to those patients. Relator does not provide any details about why those concierge services would constitute remuneration to the Provider Defendants. The chart actually demonstrates just how little detail Relator pleads regarding the remuneration to each Provider Defendant. *See* Mot. at 21-23, and App'x A.

Further, Relator fails to assert facts that any of the Provider Defendants possessed the heightened level of scienter required to plead an AKS violation— that they acted knowingly and willfully—*i.e.*, with the intent to violate the law—in accepting any purported remuneration in exchange for referrals. *See United States v. Davis*, 132 F.3d 1092, 1094 (5th Cir. 1998). As discussed, Relator implicitly concedes that all of the Provider Defendants had no actual knowledge of any purported scheme—let alone the intent to violate the law, as required to plead an AKS violation—and relies on vague, conclusory allegations based on "information and belief" without a factual basis for such belief. *See, e.g.*, Opp'n at 76-78. That is not enough to plead an AKS violation; courts have routinely dismissed similar allegations as insufficient. *See, e.g.*, *Health Choice Alliance*, 2018 WL 4026986, at *46-47, 50 (holding that relator had not pled sufficient factual basis for "information and belief" allegations regarding an AKS violation); *U.S. ex rel. Foster v. Bristol-Myers Squibb*, 587 F.

Supp. 2d 805, 823-25 (E.D. Tex. 2008) (similar); *see also U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 385 (5th Cir. 2003) (affirming district court's dismissal of fraud claims pled on information and belief without any factual basis for that information and belief).

Finally, Relator mistakenly concludes that he need not allege that each Defendant violated the AKS, but then states that if the Provider Defendants "acted 'knowingly' in referring patients to the [CHI] Defendants . . . notwithstanding the [CHI] Defendants' [alleged AKS violation] [the Provider Defendants] are liable under the FCA[,]" for knowingly causing false claims to be submitted.  Opp'n at 89-90.  This is a contradiction.  "Knowing" referral of patients would violate the AKS.  Therefore, Relator must plead facts that the Provider Defendants violated the AKS, which requires some connection between the alleged kickbacks and the Provider Defendants' referrals (*e.g., quid pro quo*), *U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 894 (5th Cir. 2013)—that is, that they accepted alleged remuneration **_knowing_** that they were being induced to make referrals in return, Opp'n at 90, and that such referrals led to claims submitted to Government payors, *Id.* at 894.  As explained above, Relator has not done so. Mot. at 35-36; Section I.A, *supra*.

### C.     Relator Fails to Satisfy Rule 9(b)

Nothing in Relator's Opposition justifies his failure to plead his FCA claims with the required specificity.  Mot. at 16-35.  Relator asserts throughout his Opposition that his pleading satisfies Rule 9(b), because it gives the Defendants notice of the allegations.   But Rule 9(b) has an additional function—to protect defendants against spurious fraud claims.  *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) ("Rule 9(b) has long played that screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later.").   And the Fifth Circuit "appl[ies] Rule 9(b) to fraud complaints with 'bite' and 'without apology.'"  *Id.* at 185-86.

Despite Relators assertions, he must plead with specificity how each and every Provider Defendant violated the Stark Law, the AKS, and the FCA.  He has not done so.   He fails to allege: (i) remuneration for each Provider Defendant, Mot. at 33-34; (ii) that each Provider Defendant referred patients to the CHI Defendants (other than with conclusory statements)—and, in fact, only offers one representative example of a referral by a physician who is not even named as a Defendant, Mot. at 31-32; and (iii) details with specificity that any claims were submitted.  Relator claims that the Provider Defendants' chart in Appendix A indicates that he does not lump the Provider Defendants together.  Opp'n at 81.  To the contrary, the chart illustrates how seldom

Relator references and alleges specific facts and details as to each Provider Defendant in the SAC, and that the bulk of Relator's allegations are vague assertions about the Provider Defendants as a whole.   Mot. at App'x A. Relator's conclusory allegations lumping the Provider Defendants together are impermissible and fail to "establish more than a sheer possibility that [the Provider Defendants have] acted unlawfully."   *Iqbal,* 556 U.S. at 678.

### D.      The SAC Fails to Plead the Elements of a Conspiracy Claim.

Relator fails to plead the elements of an FCA conspiracy.   Relator pleads neither the existence of an unlawful agreement nor any act performed in furtherance of that agreement.   *See Grubbs*, 565 F.3d at 193-94.   While an express agreement may not be required, Opp'n at 100, Relator is required to show "there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that the overt act was committed in furtherance of the conspiracy[.]"   *See U.S. ex rel. Jamison v. McKesson Corp.*, No. 208CV214 SA DAS, 2009 WL 3176168, at *14 (N.D. Miss. Sept. 29, 2009), on reconsideration, No. 2:08CV214-SA-DAS, 2010 WL 1223876 (N.D. Miss. Mar. 25, 2010).   Relator concedes he has not pled an express agreement.   Opp'n at 100-01.   And he has not plausibly pled that any of the Provider Defendants shared in the conspiratorial objective—or for that matter, even knew about it. *See* Section I.A, *supra.*

Relator's cited cases do not compel a different conclusion. In *Jamison*, the conspiracy was based on a contract and written proposal between the co-conspirators. 2009 WL 3176168, *14. Likewise, in *U.S. ex rel. Kress v. Masonry Sols. Int'l, Inc.*, the co-conspirators formed a company together to perpetrate the alleged fraud. No. CIV.A. 12-2380, 2015 WL 365835, *6 (E.D. La. Jan. 26, 2015). These cases do not support liability against the Provider Defendants based on a complaint devoid of factual allegations about their knowledge of—much less participation in—an alleged conspiracy.

### E. Baylor College of Medicine Has Immunity from Relator's FCA Claims.

BCM should be classified as an arm of the state, and thus should have immunity. *See Vermont Agency of Nat. Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 765, 787-88 (2000) ("A private individual may not bring suit in federal court on behalf of the United States against a State (or state agency) under the FCA.").

The Fifth Circuit's six-factor test leads to the conclusion that BCM is entitled to immunity. *U.S. ex rel. Adrian v. Regents of Univ. of Cal.*, 363 F.3d 398, 401 (5th Cir. 2004).

- **Statutes and case law classify BCM as an arm of the state:** Relator concedes that BCM is classified as a state agency in statute and case law for at least a portion of its functions: the higher educational component of training medical and nursing students. Opp'n at 119-120. While case law does not necessarily address Eleventh Amendment Immunity head-on, this factor—whether case law classifies BCM as an arm of the state—is not dispositive

on its own.  *See Celanese Corp. v. Coastal Water Auth.*, 475 F. Supp. 2d 623, 632-34 (S.D. Tex. 2007).

- **Source of funding:**  Relator concedes that BCM gets some of its funding from the state and that the Fifth Circuit does not apply "a bright-line rule as to the amount of private funding necessary to hold an entity financially independent from the state."  Opp'n at 115, citing *Daniel v. Univ. of Texas Southwestern Medical Center*, 960 F.3d 253, 258 (5th Cir. 2020).

- **Limited autonomy:**  Relator concedes that BCM has limited autonomy in providing medical education due to its contracts with the State.  Opp'n at 120.  Since a significant part of BCM's operations relate to educating its students, residents, and staff through their provision of medical services, this affects a large portion of BCM's functions (see below).

- **Statewide concerns:**  Relator concedes that BCM is part of a statewide effort "to provide educated doctors in the State of Texas." Opp'n at 121.  BCM is a college of medicine that trains its students in a hospital setting.  BCM administers at least nine academic centers; nine educational programs; four degree programs; had over 3,600 enrolled students (including graduate students, residents, and fellows) and employed over 3,800 faculty and over 7,000 staff members for the 2019-2020 school year.  *See Baylor College of Medicine, About Us*, Statistics, *available at* https://www.bcm.edu/about-us/diversity-equity-and-inclusion/statistics, *last visited* Feb. 3, 2021.  A judgment against BCM could jeopardize its ability to provide this benefit to the State of Texas.

- **Ability to sue and be sued or hold property:**  In contravention of case law, Mot. at 45-46, Relator argues the Court should place greater import on the factors regarding whether BCM can sue or be sued and whether BCM can hold property, but cites no case law in support, *see* Opp'n at 117-18.  The Court should not credit Relator's assertions in the face of his failure to cite any supporting authority.

Applying the factors, BCM is entitled to immunity. *Celanese Corp.* is instructive. 475 F. Supp. 2d at 632-34. There, the plaintiff asserted that the Coastal Water Authority ("CWA") had intentionally covered up damage to a pipeline. *Id.*. Applying the six factors—and holding that no single factor was dispositive on its own—the court found that:

- **Statutes and case law:** Although courts had not considered this issue, the applicable statute had called such entities "governmental agencies."

- **Source of funding:** CWA received no state funding but was entirely self-sufficient. *See id.* at 633 (holding that there is no "blanket rule that a financially self-sufficient entity cannot qualify for Eleventh Amendment immunity.").

- **Autonomy:** CWA was "subject to a moderate degree of state control[,]" because three of its directors were appointed by the governor with consent of the Texas Senate. *Id.* at 634.

- **Statewide Concerns:** CWA's mission to protect water in its district was a statewide concern. *Id.*

- **The ability to hold and use property and to sue and be sued:** CWA did not dispute that it was authorized to hold property and to sue and be sued in its own name. *Id.*

Based on these factors, the court held that CWA was an arm of the state entitled to Eleventh Amendment Immunity. *Id.* Because BCM's position is analogous to *Celanese*, the Court should find that BCM is an arm of the state subject to immunity.

### F.   The Provider Defendants Did not Waive or Concede any Arguments or Affirmative Defenses

Relator claims, without any legal support, that Defendants conceded that (1) any alleged remuneration does not qualify for a safe harbor under the AKS or Stark Law, (2) the misconduct was material, and (3) certain of Relator's claims are time-barred.  Opp'n at 9.  Relator is wrong.  Rule 12(h) instructs that only defenses listed in Rule 12(b)(2)-(5) can be waived if they are not included in a motion or responsive pleading.  Fed. R. Civ. P. 12(h).  None of the arguments Relator claims the Provider Defendants waived are listed in Rule 12(h); thus, all of those arguments are preserved.

### G.   Because Relator's Federal FCA Claims Fail, his State Law Claims Fail As Well and Should Be Dismissed or, Alternatively, The Court Should Decline to Exercise Supplemental Jurisdiction over Relator's State Law Claims

The Provider Defendants' arguments for dismissal of the FCA claims are applicable to the alleged violations of the Texas Medicaid Fraud Prevention Act ("TMFPA") and necessitate their dismissal.  Dkt. 211 at 1-3; Dkt. 310.  Although the TMFPA's language differs slightly from that of the FCA, this does not compel a different conclusion regarding Relator's TMFPA claims.   In this case, Relator's inability to allege well-pled facts to support an FCA violation results in Relator's inability to allege well-pled facts to support a TMFPA violation.  *See* Dkt. 211 at 4-5, Dkt. 310 (adopting and incorporating by reference here).

Regardless, the Court should decline to exercise supplemental jurisdiction over the state FCA claims brought on behalf of the Plaintiff States, and dismiss those claims without prejudice.  *See* Mot. at 48-40.

### H.    Dismissal of the Claims Should Be with Prejudice.

Despite Relator's protestations to the contrary, any amendment to the SAC would be futile and should be denied.  *See Willard*, 336 F.3d at 387 (district court's denial of leave to file a third amended complaint was not an abuse of discretion).

First, during the Court's December 4, 2019 hearing, Relator's counsel represented to the Court that Relator would not seek to amend the Complaint again, except for a very narrow purpose not applicable here.  Transcript of Dec. 4, 2019 Hearing, at 20:21–21:9; 24:13–25:2.

Second, Relator has already failed to plausibly and sufficiently plead this action three times.  There is no reason to believe Relator would have more facts to offer given a fourth attempt.  Mot. at 50.

Finally, Relator's request for limited discovery to link referrals to each Provider Defendant (in direct contradiction of Relator's representation in open Court) illustrates the deficiency of the SAC and would not cure the defect that he has not sufficiently pled that the Provider Defendants knew any referrals were linked to any alleged remuneration.  *See* Section I.A, *supra*.  Relator cannot be permitted a fishing expedition.  *U.S. ex rel. Gage v. Davis S.R.*

*Aviation, LLC*, 623 Fed. App'x 622, 623 (5th Cir. 2015) ("FCA suits are subject to the screening function of [Rule] 9(b)."). For these reasons, Relator's federal claims should be dismissed with prejudice.

## II.   <u>CONCLUSION</u>

For the foregoing reasons, the Provider Defendants' Motion to Dismiss should be granted with prejudice. Furthermore, the Court should decline to exercise jurisdiction over remaining state law claims and dismiss them because all federal law claims have been eliminated. Mot. at 50.

Dated:  February 12, 2021                    Respectfully submitted,

                                             By: /s/ *Sara A. Brinkmann*

                                             Sara A. Brinkmann
                                             Texas Bar No. 24069919
                                             Reed Smith LLP
                                             811 Main Street, Suite 1700
                                             Houston, Texas 770002
                                             (713) 469-3647
                                             Fax: (713) 469-3899
                                             sbrinkmann@reedsmith.com

                                             Frederick Robinson
                                             District of Columbia Bar No. 367223
                                             *Admitted Pro Hac Vice*
                                             **Attorney-in-Charge**

                                             Reed Smith LLP, of counsel
                                             1301 K Street, N.W
                                             Suite 1000--East Tower
                                             Washington, D.C. 20005-3373
                                             (202) 414-9259

Fax: (202) 414-9299
FRobinson@reedsmith.com

**Counsel for Defendants Baylor College of Medicine and Baylor College of Medicine Healthcare, d/b/a Baylor Medcare, Ramachandra Sista, M.D., Marcia Katz, M.D.**

By: */s/ Christopher D. DeMeo*
Christopher D. DeMeo
**Attorney-in-Charge**
Texas Bar No. 00796456
SEYFARTH SHAW LLP, of counsel
cdemeo@seyfarth.com
Kay J. Hazelwood, of counsel
Texas Bar No. 09310450
S.D. Texas I.D. No. 1002170
khazelwood@seyfarth.com
700 Milam, Suite 1400
Houston, TX  77002
Telephone:  (713) 225-0292
Facsimile:  (713) 225-2340

**Counsel for Defendant Bone and Joint Clinic of Houston**

By: */s/ Wayne Clawater*
Wayne Clawater
**Attorney-in-Charge**
SBN 04328500
Federal ID: 10151
Direct Dial: 713-579-1522
wclawater@schlawyers.com
Debra L. Elmore, of counsel
SBN 17531950
Federal ID: 612313
delmore@schlawyers.com

2727 Allen Parkway, Suite 500
Houston, Texas 77019
713.650.6600
713.599-1999 Fax

**Counsel for Defendants Surgical Associates of Texas, P.A. and James Livesay, M.D.**

By: */s/Ryan Wozny*
**Ryan Wozny**
**Attorney-in-Charge**
State Bar No. 24045265
**Quintairos, Prieto, Wood and Boyer, P.A., of counsel**
ryan.wozny@qpwblaw.com
**Megan Nguyen, of counsel**
State Bar No. 24092899
megan.nguyen@qpwblaw.com
1700 Pacific Avenue, Suite 4545
Dallas, Texas 75201
(214) 754-8755 (Telephone)
(214) 754-8744 (Telecopier)

**Counsel for Defendants Houston Thyroid & Endocrine Specialists, Medhavi Jogi, M.D., Fareed Elhaj, M.D., Lazaro Cherem, M.D., and Brian Douglas, M.D.**

By: */s/ R. Chad Geisler*
R. Chad Geisler
**Attorney-in-Charge**
James B. Hicks, of counsel
**Germer Beaman & Brown PLLC, of counsel**
One Barton Skyway
1501 S Mopac Expy, Suite A400
Austin, Texas 78746

- 23 -

(512) 472-0288
(512) 472-0721 Fax
cgeisler@germer-austin.com
jhicks@germer-austin.com

**Counsel for Defendants Leachman Cardiology Associates, Zvonimir Krajcer, M.D., Dewitt Leachman, M.D. and Alberto Lopez, M.D.**


By: */s/ Frank N. Luccia*
Frank N. Luccia
**Attorney-in-Charge**
SBN 12664400
SDBN 10384
**LUCCIA & EVANS, L.L.P., of counsel**
fnluccia@luccia-evans.com
Lauren M. Virene, of counsel
SBN 24087980
SDBN 2166180
lvirene@luccia-evans.com
8 Greenway Plaza, Suite 1450
Houston, Texas 77046
(713) 629-0002 / Fax (713) 629-0004

**Counsel for Defendants
Navneet Singh, M.D., Kidney and Hypertension Consultants, Kidney Associates, Greater Houston Gastroenterology, and Isaac Raijman, M.D.**


By: */s/ John P. Scott*
John P. Scott
**Attorney-in-Charge**
State Bar No. 17901900
Federal I.D. 1878

Direct telephone no. 713-579-1505
Email:  jscott@schlawyers.com
**SCOTT, CLAWATER &**
**HOUSTON, L.L.P., of counsel**
2727 Allen Parkway, Suite 500
Houston, Texas 77019
(713) 650-6600
(713) 579-1599 Fax

**Counsel      for      Defendants,**
**Pulmonary  Critical  Care  and**
**Sleep  Medicine  Consultants,  Inc.,**
**Carl   Dahlberg,   M.D.,   Alberto**
**Colomer,  M.D.,  Jose  Santacruz,**
**M.D. and Andres Mesa, M.D.**


By:  */s/ Sam Houston*
Sam Houston
**Attorney-in-Charge**
**Scott,   Clawater   &   Houston,**
**L.L.P., of counsel**
2727 Allen Parkway, Suite 500
Houston TX 77019
(713) 650-6600 ext. 117
(713) 579-1517 DIRECT
(713) 822-5262 MOBILE
(713) 579-1599 FAX
shouston@schlawyers.com

**Counsel  for  Alan  Hoffman,  M.D.,**
**Irving  Fishman,  M.D.,  Cristina**
**Boccalandro,      M.D.,      Texas**
**Endocrinology  Group,  P.A.,  Ron**
**Moses,  M.D.,  Richard  Hung,  M.D.,**
**and the Center for ENT.**

## <u>CERTIFICATE OF WORD COUNT</u>

I hereby certify that, pursuant to Judge Eskridge's Court Procedures § 18(c) and according to Microsoft Word's word count, the foregoing document contains 4,870 words, in accordance with the Order on the Briefing Protocol. Dkt. 261 (requiring Provider Defendants' consolidated reply to be "no longer than 5,000 words.")

*/s/ Sara A. Brinkmann*
Sara A. Brinkmann

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 12, 2021, pursuant to Local Rule LR 5.3 and Federal Rule of Civil Procedure 5(b), that the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF and served upon counsel of record pursuant to Local Rule LR 5.1.

*/s/ Sara A. Brinkmann*
Sara A. Brinkmann