# IN THE U.S. DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

UNITED STATES OF AMERICA, the STATE
OF TEXAS, the STATE OF COLORADO, the
STATE OF INDIANA, the STATE OF IOWA,
the STATE OF MINNESOTA, the STATE OF
NEW MEXICO, the STATE OF TENNESSEE,
the STATE OF WASHINGTON, *ex rel.*
HICHEM CHIHI,

              Plaintiff-Realtor,

     v.

CATHOLIC HEALTH INITIATIVES, *et al.*,

           Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 4:18-cv-00123

## THE CHI DEFENDANTS' WRITTEN OBJECTIONS TO THE COURT'S MEMORANDUM AND RECOMMENDATION REGARDING THEIR MOTION TO DISMISS

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 1

II.   ARGUMENT ............................................................................................................. 2

    A.    Relator has not alleged a theory that the CHI Defendants are liable under the FCA because their employees or agents in the ISD *caused* false claims to be submitted. ......................................................................... 2

    B.    Relator fails to state an AKS-based claim against the CHI Defendants ............. 8

        1.    Relator fails to provide the particular details of an underlying fraud scheme .......................................................................................... 9

        2.    Relator fails to establish reliable indicia that false claims were actually submitted ......................................................................... 14

    C.    Relator does not state a claim against the CHI Defendants under the TMFPA ...................................................................................................... 17

III.  CONCLUSION ....................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................... 6

*United States ex rel. Beck v. St. Joseph Health Sys.*,
   5:17-CV-052-C, 2021 WL 7084164 (N.D. Tex. Nov. 30, 2021) ............................ 3, 7

*U.S. ex rel. Grubbs v. Kanneganti*,
   565 F.3d 180 (5th Cir. 2009) ................................................... 5, 15, 16, 17

*U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.*,
   498 F. Supp. 2d 25 (D.D.C. 2007) ................................................................... 8

*United States ex rel. Ruscher v. Omnicare, Inc.*,
   663 F. App'x 368 (5th Cir. 2016) ......................................................... 7, 9, 10

*U.S. ex rel. Tillson v. Lockheed Martin Corp.*,
   2004 WL 2403114 (W.D. Ky. 2004) ............................................................... 7

*Wady v. Provident Life and Accident Ins. Co. of Am.*,
   216 F. Supp.2d 1060 (C.D. Cal. 2002) ........................................................... 8

*U.S. ex rel. Wuestenhoefer v. Jefferson*,
   105 F. Supp. 3d 641 (N.D. Miss. 2015) ........................................................... 3

Defendants Catholic Health Initiatives ("CHI") and CHI-St. Luke's Health ("CHI-St. Luke's") (collectively, the "CHI Defendants") hereby submit their Written Objections to the Court's Memorandum and Recommendation (Dkt. 326) pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.

## I.    INTRODUCTION

The CHI Defendants agree with many findings in the Court's Memorandum and Recommendation addressing the defendants' motions to dismiss the Second Amended Complaint ("Complaint"), including the following:

- Hichem Chihi ("Relator") has not sufficiently stated a claim against any Defendants for concealing an obligation to pay the Government under § 3729(a)(1)(G) of the False Claims Act ("FCA") (Count III);

- Relator has not sufficiently stated a claim against the CHI Defendants and Dr. Hoffman for submitting false claims and making false statements under § 3729(a)(1)(A) and (B) of the FCA (Counts I and II) to the extent the claims are predicated on the Stark Law;

- Relator has not sufficiently stated a claim against any Defendants for conspiracy under § 3729(a)(1)(C) of the FCA (Count IV);

- Relator has not sufficiently stated a claim against any Defendants under § 36.002(12) of the TMFPA (Count VIII);

- Relator has not sufficiently stated a claim against 31 out of 32 Provider Defendants under § 36.002(1), (2), (4), and (13) of the Texas Medicaid Fraud Prevention Act ("TMFPA") (Counts V, VI, VII, IX);

- Relator should not be given a third opportunity to amend his complaint and all insufficiently pleaded claims should be dismissed with prejudice; and

- Relator has abandoned any theory of liability that would require piercing the corporate veil.

But for the reasons stated below, the CHI Defendants disagree with and object to the following findings in the Court's Memorandum and Recommendation:

- The Complaint can be read as alleging a theory that the CHI Defendants are liable under the FCA because their own employees or agents in the International Services Department caused false claims to be submitted;

- Relator has sufficiently stated a claim against the CHI Defendants and Dr. Hoffman for submitting false claims and making false statements under § 3729(a)(1)(A) and (B) of the FCA (Counts I and II) to the extent the claims are predicated on a violation of the Anti-Kickback Statute;

- Relator has sufficiently alleged claims against the CHI Defendants and Dr. Hoffman for causing the submission of false claims and the making of false records or statements under § 3729(a)(1)(A);

- Relator has sufficiently stated a claim against the CHI Defendants and Dr. Hoffman under § 36.002(1), (2), (4), and (13) of the TMFPA (Counts V, VI, VII, IX).

The CHI Defendants respectfully request that this Court reject the Memorandum and Recommendation with respect to these findings, confirm that Relator has not, in fact, adequately stated a claim against the CHI Defendants, and dismiss the Complaint in its entirety and with prejudice.

## II. ARGUMENT

### A. Relator has not alleged a theory that the CHI Defendants are liable under the FCA because their employees or agents in the ISD *caused* false claims to be submitted.

The CHI Defendants object to the Court's finding that the Complaint "can be read as alleging a theory that CHI Defendants are liable under the FCA because their own employees or agents in the International Services Department [('ISD')] caused false claims to be submitted" to Federal health care programs. First, even if Relator sufficiently alleged

the presence of an employment or agency relationship between ISD personnel and the CHI Defendants – which the CHI Defendants do not concede – Relator still has not alleged with Rule 9(b) specificity that those ISD personnel engaged in wrongful conduct violating the AKS and leading to the submission of false claims. Second, the CHI Defendants disagree that Relator alleged sufficient facts to demonstrate that CHI or CHI St. Luke's (as entities) directed, oversaw, or encouraged any purportedly wrongful conduct leading to the submission of false claims.

As a threshold matter, the FCA's causation standard "employs traditional notions of proximate causation to determine whether there is a sufficient nexus between the conduct of the party and the ultimate presentation of the false claim." *United States ex rel. Beck v. St. Joseph Health Sys.,* 5:17-CV-052-C, 2021 WL 7084164 (N.D. Tex. Nov. 30, 2021). Under federal law, "an act will be deemed a proximate cause of a result if the act is a 'substantial factor in the sequence of responsible causation, and if the result is reasonably foreseeable or anticipated as a natural consequence.'" *Id.* To establish causation, a relator must show an "affirmative act" going beyond "mere passive acquiescence." *See U.S. ex rel. Wuestenhoefer v. Jefferson*, 105 F. Supp. 3d 641 (N.D. Miss. 2015). To "cause" the presentation of false claims under the FCA, some degree of participation in the claims process is required. *Id.*

The facts alleged in the Complaint fail to show that particular ISD staff – even if they were employees or agents of CHI or CHI St. Luke's – caused the submission of a false claim. In support of its position that the complaint can be "read as alleging a theory … that the CHI Defendants are liable under the FCA because their own employees or agents in

the [ISD] caused false claims to be submitted," the Court relies on the following allegations:

- The CHI Defendants "play a significant role in promotion, management, oversight, and/or operation of the International Services Department at Baylor St. Luke's Medical Center and supervision, management, oversight, and payment of ISD's employees."

- "The employees of the ISD receive paychecks and employment evaluations from CHI and are considered employees of CHI."

- "Mr. Chihi's 2016 Staff Performance evaluation … comes on CHI letterhead and refers to Mr. Chihi as an "employee of Catholic Health Initiatives," and "his paychecks likewise come from CHI."

- "Vice President Tania Matar, Associate Director Angelita Sanchez, and other representatives and agents of the [ISD] send emails using CHI-St. Luke's Health corporate email signature logo."

- Employees of the ISD also have email addresses ending in @stlukeshealth.org.

- "[O]n its website, CHI-St. Luke's Health promotes the ISD, refers to ISD employees as "our multilingual, professional team," and boasts that "we have cared for patients from more than 85 countries."

- "ISD's management and representatives, including Matar and Sanchez, sometimes document or distribute policies specific to the ISD on CHI-St. Luke's Health letterhead."

- "ISD management and representatives frequently send out routine correspondence and forms used by the ISD, such as patient information authorization forms for international patients, credit card authorization forms, and letters from the ISD to embassies and other recipients on CHI-St. Luke's Health letterhead."

- "ISD management and representatives also distribute other policies of the International Services Department, such as policies on billing and collections, including those described below, on CHI letterhead."

- "[t]the ISD requests that international patients, their families and representatives, and embassies send checks for payment to CHI-St. Luke's Health."

- "ISD employees including Vice President of the ISD Tania Matar and the Associate Director of the ISD Angelita Sanchez act as representatives and agents of both CHI and CHI-St. Luke's Health."

While those allegations may speak to the existence of an employment relationship between ISD staff and the CHI Defendants, none establish that ISD staff caused the submission of false claims to Federal healthcare programs. *See U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188 (5th Cir. 2009) (holding that the "*sine qua non* [of False Claims Act liability] is the presentment of a false claim").

The Complaint includes only a handful of conclusory, ill-pled allegations designed to show that the CHI Defendants, acting through its employees and agents, knowingly and willfully provided remuneration to the Provider Defendants to induce referrals. *See e.g.,* Dkt. 273 ¶ 150 ("The Hospital Defendants rate and remunerate physicians based on the number of Medicare and Medicaid referrals they provide."); *Id.* ¶ 151 ("The Referring Physicians are valued by the Hospital Defendants based on the number of Medicare and Medicaid patient referrals they make to CHI-St. Luke's Health."); *Id.* ¶ 152 ("Relator attended regular ISD staff meetings where senior ISD officials made these referral criteria absolutely clear.").

These allegations – all of which were relied upon by the Court - fail to provide the level of detail necessary to satisfy the FCA's heightened pleading standard under Rule 9(b). For instance, Relator does not (and cannot) show a direct link between the number of ISD referrals and related administrative services or "perks" Dr. Hoffman received and the

number of Medicare and Medicaid referrals Dr. Hoffman purportedly sent back to Baylor St. Luke's Medical Center ("BSLMC"). In fact, Relator cannot point to even a *single* Medicare or Medicaid referral from Dr. Hoffman, let alone show that his referral volume ebbed and flowed based on the amount of ISD referrals or other perks he allegedly received. Beyond failing to meet Rule 9(b)'s specificity burden, this also casts serious doubt on the overarching plausibility of Relator's allegations of a remuneration-for-referrals scheme. *See Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) ("a claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

With respect to the ISD staff meetings Relator allegedly attended "where ISD officials made these referral criteria absolutely clear," Relator does not come close to alleging the "who, what, where, and when" of those meetings as required under Rule 9(b). Relator does not explain when during the relevant timeframe - which spans years - these meetings occurred, fails to attribute a specific statement to a particular "senior ISD official," and does not set forth which physicians purportedly referred federal program business to BSLMC and those who did not. Dkt. 273 ¶ 152.

Relator also alleges the "ISD maintained a selective roster of physicians to facilitate referrals by ISD staff of international patients to independent physicians approved by VP Matar and Associate Director Sanchez" and that "Matar and Sanchez placed physicians on this roster [because] they believed the physicians would refer back business to the hospital." Dkt. 273 ¶ 163. Leaving aside that the mere hope or desire for referral falls short of what the AKS requires, Relator provides absolutely no detail regarding this alleged

roster, such as its location, the manner the information was disseminated to ISD staff (if at all), or the full accounting of "reasons" to include a physician on the roster.  *See United States ex rel. Ruscher v. Omnicare, Inc*., 663 F. App'x 368, 374 (5th Cir. 2016) ("there is no AKS violation, however, where the defendant merely hopes or expects referrals from benefits that were designed wholly for other purposes.")

Instead, Relator puts himself inside the minds of Matar and Sanchez, alleging that they "believed the physicians would refer back business to the hospital," without providing a basis for his conjecture or plausibly explaining how Matar and Sanchez even knew which physicians referred Medicare and Medicaid business to BSLMC given their roles solely within the ISD. In the absence of well pled allegations, Relator cannot demonstrate that Matar or Sanchez, let alone CHI or CHI St. Luke's, took any actions that knowingly caused the submission of a false claim.

And while Relator's allegations may establish that CHI or CHI St. Luke's exercised some general degree of administrative oversight concerning the ISD's operations, or that the ISD (which is housed in a non-party hospital that is partly owned by CHI-St. Luke's) used their resources and corporate brands, that is a far cry from alleging with particularity that the CHI Defendants (as entities) directed, oversaw, or encouraged *the purportedly wrongful conduct* that Relator asserts caused the submission of false claims.  *United States ex rel. Beck*, 2021 WL 7084164 (holding that "affirmative act[s]" going beyond "mere passive acquiescence" are require for FCA liability under a "cause to submit" theory);  *See also U.S. ex rel. Tillson v. Lockheed Martin Corp.,* 2004 WL 2403114, *33 at *107 (W.D. Ky. 2004) (merely "[b]eing a parent corporation of a subsidiary that commits a FCA

violation, without some degree of participation by the parent in the claims process, is not enough to support a claim against the parent for the subsidiary's FCA violation."); *U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.,* 498 F. Supp. 2d 25, 59–60 (D.D.C. 2007) (a relator must demonstrate either that [defendant] is liable under a veil piercing or alter ego theory, or that it is directly liable for its own role in the submission of false claims); *Wady v. Provident Life and Accident Ins. Co. of Am.,* 216 F. Supp.2d 1060, 1068 (C.D. Cal. 2002) (the use of the parent corporation's letterhead by the subsidiary a does not establish an alter ego relationship).

For these reasons, the CHI Defendants respectfully disagree with and object to the Court's recommended finding that the "[Complaint] can be read as alleging a theory that CHI Defendants are liable under the FCA because their own employees or agents in the International Services Department caused false claims to be submitted." The Complaint's remaining counts against the CHI Defendants should therefore be dismissed in their entirety, with prejudice.

**B.    Relator fails to state an AKS-based claim against the CHI Defendants.**

A relator can meet Rule 9(b)'s requirements by pleading the "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." Dkt. 326 at 14, citing *Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009). In its in its Memorandum and Recommendation, the Court states that: (1) "Relator has provided more than enough detail to plausibly plead underlying violations of the AKS and the required who, what, when, where, and how of the alleged scheme"; and (2) "Relator's allegations … contain reliable indicia leading to a strong

inference that CHI Defendants and Dr. Hoffman caused false claims to be submitted to the Government in violation of the FCA." Dkt. 326 at 20, 22. For the reasons set forth below, the CHI Defendants object to these recommended findings.

1.    <u>Relator fails to provide the particular details of an underlying fraud scheme</u>

As the Court stated in its Memorandum and Recommendation, "to allege the particulars of a scheme to offer kickbacks, relator must sketch how it was that [participants] provided remuneration . . . , the form of that remuneration, how and why [participants] believed that remuneration would induce new business, and how [participants] benefited from the remuneration" as well as "the timeframe in which the scheme took place and which components of the [participant] organization were involved." Dkt. 273 at 15, citing *United States ex rel. Ruscher v. Omnicare, Inc.*, No. 08-CV-3396, 2014 WL 2618158, at *7 (S.D. Tex. June 12, 2014). For the reasons explained above, Relator does not sufficiently allege the CHI Defendants "participated in the scheme … knowingly and willfully under the AKS," as the Court contends. Dkt. 326 at 17.

Relator also fails to show how the CHI Defendants "believed that remuneration would induce new business, and how [the CHI Defendants] benefited from the remuneration." *See Ruscher,* at *7. For instance, the Complaint does not contain a single particularized detail about any alleged referral-tracking process, describe how specific physicians were "remunerated" based on their referral volume, allege that referrals increased or decreased based on alleged remuneration provided, or explain how a program focused on private-pay international patients (the ISD) could possibly be aware of Medicare and Medicaid referrals to different parts of the hospital. To the contrary, the

complaint reveals that ISD referred patients to non-referral sources and provided interpreters and administrative universally without regard for referral volume.

In perhaps his only attempt to satisfy the *Rushcer* criteria and show (1) that the CHI Defendants "believed that remuneration would induce new business"; and (2) how the [CHI Defendants] benefited from [providing] the remuneration, Relator alleges, with no support, that "senior ISD staff tracked the number of Medicare and Medicaid referrals to BSLMC" and that Matar and Sanchez "had access to such information due to their roles and through their regular meetings with management personnel of BSLMC." Dkt. 273 ¶ 153. But, in its Memorandum and Recommendations, the Court points out that this allegation "is conclusory and based only on 'information and belief' without supporting facts." Dkt. 326 at 17. Beyond this glaring deficiency, the Complaint also fails to show how the CHI Defendants would have benefited from the alleged kickback scheme. *See Ruscher,* at *7.

The CHI Defendants also disagree with the Court's statement that a series of emails on October 2016 – "in which a manager expressed a preference that Relator refer a patient to Dr. Hoffman" – showed an "unlawful purpose" on the part of ISD staff or, by extension, the CHI Defendants. Dkt. 326 at 18, citing Dkt. 273, Ex. 3. Given the importance of Exhibit 3, the CHI Defendants once again provide the full content here.

On October 13, 2016 at 9:58 a.m., Dr. Eldin Nihad, Medical Advisor from the Consulate of the United Arab Emirates, emailed Relator saying:

> *Dear Hicham,*
>
> *Kindly schedule* ██████████ *for urgent IM appointment (Today if possible) for cough, fever mild dyspnea and family history of Asthma.*
>
> *She is covered by United heath care international*
>
> *D.O.B: 11/20/1980*
>
> *Regards,*
>
> *Nihad Eldin, MD*

On October 13, 2016 at 10:14 a.m., Relator responds to Dr. Nihad, copying Sanchez, Matar and others as follows:

> *Hello Dr. Nihad,*
>
> *I am working on it. I will let you know as soon as confirmed.*
>
> *Regards,*
>
> *Hesham Chihi*

Shortly thereafter, at 10:23 am, Relator sends the following update to Dr. Nihad, once again copying Sanchez, Matar and others:

> *12:30pm today at 6624 Fannin, suite 1240. The patient has been scheduled to see Dr. Stasicha. Please provide us with the UHC information.*
>
> *Regards,*
>
> *Hesham Chihi*

A few minutes later, Matar sends the following directly to Relator:

> *Hichem*
>
> *We have experienced many problems with this office (cancelling, changing last minute etc..) and they don't seem to accommodate our patients. Unless things have changed, I would like to use Dr*

> *Hoffman who pamper the international patients and is willing to go the extra mile for them.*
>
> *Tania*

Relator responds to Matar at 10:56 am as follows:

> *Tania,*
>
> *We always reach out to Dr. Hoffman for these requests, in this case the patient has UHC insurance, unfortunately Dr. Hoffman doesn't accept it. My only available option to accommodate he, the same day, was our IM department.*
>
> *Regards,*
>
> *Hesham Chihi*

Just six minutes later, Matar concludes the exchange with the following remarks:

> *Hichem*
>
> *Thank you for the clarification. Let me know if the patient was satisfied with the visit. If we continue having problem with them we might need to find an alternative who accept UHC.*
>
> *Tania*

*See* Dkt. 273, Exh. 3.

Far from the smoking gun Relator attempts to portray, Exhibit 3 merely reveals typical, law-abiding business discussions around patient satisfaction. The plain language of Exhibit 3 reveals that when Relator notified Matar he had scheduled an appointment with Dr. Stasicha, Matar did not attempt to "pressure Relator into referring the patient to Hoffman" (Dkt. 273, ¶ 158), but instead raised legitimate points regarding Dr. Stasicha's history of failing to accommodate ISD patients, including canceling or changing appointments at the last minute – which would be particularly problematic for foreign

patients in the country for only a short time – and failing to go the extra mile for patients. *See Id.,* Exh. 3. The email exchange does not support Relator's allegation that Matar or others made referral decisions "regardless of the circumstances or medical necessity." Dkt. 273, ¶ 157. To the contrary, the email establishes that Matar was acutely attuned to the circumstances, including the need to ensure patient satisfaction. *Id.,* Exh. 3.

The exchange also does not indicate that Matar was "attempt[ing] to thwart the referral of international patients to other doctors," but instead demonstrates that Matar was deferential to Relator and willing to consider whether he believed "things [had] changed" with respect to Dr. Stasicha's history of failing to accommodate ISD patients. *Id.* Relator did not disagree with Matar's concerns regarding Dr. Stasicha or respond to her request to let her know if "things [had] changed." *Id.* Relator informed Matar that Dr. Hoffman did not accept the patient's insurance. But Matar did not then block the referral to Dr. Stasicha or pull another name out of the supposed "preferred provider" hat. Matar instead thanked Relator for his clarification regarding the insurance issue, acknowledged the referral to Dr. Stasicha, asked Relator to inform her if the patient was satisfied with Dr. Stasicha, and stated that ISD "might need to find an alternative who accept[s] [the patient's insurance]," but only if ISD "continue[d] having problem[s] with [Stasicha]." *Id.,* Exh. 3.

None of what Exhibit 3 actually says, or even that could be reasonably inferred from its contents, shows that Matar, let alone the CHI Defendants, considered or sought to induce Medicare referrals to BSLMC when deciding which physicians should care for international patients, or that they otherwise acted with an "unlawful purpose," as the Court suggests. Stated differently, a plain reading of Exhibit 3 shows that *not even "one*

*purpose"* was to provide illicit remuneration (though an ISD patient referral) in exchange for the receipt of federal program business from a physician.

For all these reasons, the CHI Defendants respectfully disagree with and object to the Court's recommended finding that "Relator has provided more than enough detail to plausibly plead underling violations of the AKS and the required who, what, when, where, and how of the alleged scheme." Dkt. 326 at 20.

2. <u>Relator fails to establish reliable indicia that false claims were actually submitted</u>

As explained by the Court, "a relator must also allege reliable indicia that lead to a strong inference that claims tainted by the AKS violations were submitted to the Government." Dkt. 326 at 20, citing *Grubbs,* 565 F.3d at 190. Central to that showing, Relator must plead the presence of Medicare or Medicaid referrals by physicians who allegedly received illegal remuneration in violation of the AKS. Without those referrals, no corresponding false claims can exist.

To support its finding that Relator has alleged the presence of federal program referrals to BSLMC by the defendant physicians, the Court claims that "several Defendants admit they did so." Dkt 326 at 17. But the Court's support for its statement is not tied to any actual admission by the CHI Defendants or the lone remaining physician defendant that federal program referrals were made. The Court instead relies on a statement by the CHI Defendants (in its Motion to Dismiss) noting that several physician defendants – including Dr. Hoffman – *have admitting privileges at BSLMC*. *Id*. The simple fact that a physician can admit patients to a particular hospital cannot possibly constitute "reliable

indicia" that the physician or hospital *actually submitted* false claims to a federal payor. Indeed, if admitting privileges were alone sufficiently "reliable indicia" of tainted claims, then every False Claims Act case alleging a kickback scheme involving a physician and a hospital where the physician has admitting privileges could survive a motion to dismiss.

The Court also points to Relator's threadbare, conclusory allegations in paragraphs 42 and 197 of the Complaint, which assert generally, with no support, that the defendant physicians referred patients to BLSMC, as somehow providing the required Rule 9(b) specificity around the existence of referrals. Dkt. 273 ¶¶ 42, 197; Dkt 326 at 17. Those allegations fare no better because they lack any details or well-pled facts and fail to meet the requirements of Rule 12(b)(6), much less the heightened standard under Rule 9(b).

Additionally, Relator's lone "representative example" of a purported Medicare referral offers no reliable indica that referrals occurred or that false claims were submitted. First, pleading a "representative example" of a false claim has nothing to do with the "reliable indicia" standard. To state an AKS-based claim with particularity under Rule 9(b), Relator can allege either the particular details of an actually submitted false claim *or* the specifics of a kickback scheme paired with reliable indicia that tainted claims were submitted. *Grubbs*, 565 F.3d at 190.

Second, the lone "representative example" is irrelevant here because it relates to a Medicare beneficiary who was allegedly referred by a provider that – according to the Court – should be dismissed from this case with prejudice. *See* Dkt. 273 ¶ 183 (alleging that Bone and Joint Clinic of Houston, through physician Dr. William Watters, referred a Medicare beneficiary to BSLMC). And how a purported referral by a party slated for

dismissal from this action can bear on liability for the CHI Defendants based on its purported kickbacks *to a different physician (Dr. Hoffman)*, is unclear and left unstated by the Court. Meanwhile, Relator has offered no information at all concerning alleged Medicare or Medicaid referrals by Dr. Hoffman to BLSMC, which on its own, decimates the notion that Relator has offered reliable indica that false claims were submitted.

Third, in its Memorandum and Recommendation, the Court made clear that the same allegations related to the "representative example" "fail[] to sufficiently allege other Provider Defendants [including Bone and Joint Clinic of Houston and Dr. Waters] received anything other than sporadic referrals or referrals during a limited timeframe." Dkt. 326 at 18. According to the Court, the limited number of ISD referrals undermines Relator's allegations that the CHI Defendants intended to induce Medicare or Medicaid referrals from Bone and Joint Clinic of Houston or Dr. Waters. And the Court further noted that the existence of a single referral from Houston Bone and Joint and Dr. Waters was alone insufficient to establish that Houston Bone and Joint and Dr. Waters willfully participated in an unlawful scheme. *Id.*

Thus, the "representative example" included in the Complaint is irrelevant to the question of whether Relator alleges reliable indicia that lead to a strong inference that claims tainted by AKS violations were submitted to the Government. The Court's finding seemingly results in disparate treatment of the same allegation where the "representative example" can be used against the CHI Defendants and Dr. Hoffman to demonstrate the presence of illicit referrals, but not against the remaining provider defendants, including those actually participating in the "representative example" referral.

Finally, while the Court relies on documents "such as billing policies, invoices, and checks" in support of its finding that Relator offers reliable indicia that false claims were submitted, the materials cited by the Court concern private pay ISD patients, *and not Medicare or Medicaid beneficiaries that were allegedly referred by Dr. Hoffman or any other provider defendant to BSLMC*. Dkt. 326 at 21. These allegations, therefore do nothing to suggest that the CHI Defendants caused BSLMC to submit fraudulent claim to a federal health care program based on allegedly tainted referrals.

Relator has neither alleged the details of an actually submitted false claim nor the specifics of a kickback scheme paired with reliable indicia that a tainted claim was submitted. *Grubbs*, 565 F.3d at 190. As such, the CHI Defendants respectfully disagree with and object to the Court's recommended finding that "Relator has provided more than enough detail to plausibly plead underling violations of the AKS and the required who, what, when, where, and how of the alleged scheme." Dkt. 326 at 20.

## C. Relator does not state a claim against the CHI Defendants under the TMFPA

The CHI Defendants object to the Court's finding that Relator has sufficiently stated a claim under § 36.002(1), (2), (4), and (13) of the TMFPA (Counts V, VI, VII, IX). For the reasons set forth above in Section A and B, Relator has not pled a plausible violation of the AKS or FCA. While the CHI Defendants acknowledge that the language in the TMFPA does not mirror or may be broader than the FCA, as explained in its two responses to the State of Texas' Statements of Interest (Dkt. 211, 310), Relator's failure to plead a predicate-act violation of the AKS is also fatal to his TMFPA claims. Because the conduct

reached by the FCA and TMFPA is substantially similar, the CHI Defendants' arguments warranting dismissal of Relator's FCA claims, also apply to those under the TMFPA. Accordingly, the CHI Defendants respectfully disagree with the Court's recommendation. Relator's TMFPA claims should be dismissed with prejudice.

## III.    CONCLUSION

For the foregoing reasons, the CHI Defendants respectfully object to the aforementioned findings in the Court's Memorandum and Recommendation (Dkt. 326) under to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. The CHI Defendants respectfully request this Court dismiss the Complaint in its entirety, with prejudice.

Dated: April 15, 2022                           Respectfully submitted,

**POLSINELLI PC**

By: */s/ Asher D. Funk*
         Asher D. Funk
         Illinois State Bar No. 6295022
         Federal ID No. 3138175
         150 N. Riverside Plaza, Suite 3000
         Chicago, IL 60606
         (312) 819-1900
         (312) 819-1910 (Facsimile)
         afunk@polsinelli.com

         Kevin M. Coffey
         Illinois State Bar No. 6303073
         (Admitted *Pro Hac Vice*)
         150 N. Riverside Plaza, Suite 3000
         Chicago, IL 60606
         (312) 819-1900
         (312) 819-1910 (Facsimile)
         kcoffey@polsinelli.com

         Andrew J. Ennis
         Kansas State Bar No. 22445
         Federal ID No. 3137530
         900 West 48th Place, Suite 900
         Kansas City, Missouri 64112
         (816) 753-1000
         (816) 817-0175 (Facsimile)
         aennis@polsinelli.com

         **ATTORNEYS FOR THE**
         **CHI DEFENDANTS**

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the requirements set forth in Hon. Charles R. Eskridge III's Court Procedures. These Written Objections contains 4,727 words, excluding the case caption, table of contents, table of authorities, signature block, and certificates, and was prepared in 13-point Times New Roman font.

*/s/ Asher D. Funk*
**Attorney for CHI Defendants**


## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for Defendants has conferred in good faith with Ruth Brown, counsel for Relator, regarding the subject matter of these Written Objections. The parties are unable to agree on the disposition of these Written Objections.

*/s/ Asher D. Funk*
**Attorney for CHI Defendants**


## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of April 2022, a true and correct copy of the foregoing was electronically served on counsel for all parties properly registered to receive notice via the Court's CM/ECF system.

*/s/ Asher D. Funk*
**Attorney for CHI Defendants**